# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHIEF JUDGE GEORGE L. RUSSELL III, in his official capacity, *et al.*,<br><br>　　　　　　　　　Defendants. | No. 1:25-cv-02029 |

**DECLARATION OF NIKITA BAKER**

Pursuant to the authority of 28 U.S.C. § 1746, I, Nikita Baker, Acting Field Office Director for the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, Baltimore, Maryland, declare as follows:

1.　I work for the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). As of March of 2025, I serve as the Acting Field Office Director for the ERO Baltimore Field Office.

2.　As an Acting Field Office Director, I direct and maintain oversight of all immigration enforcement operations, programs, and activities in all 23 counties in Maryland. As part of my oversight duties, I am responsible for leading efforts in identifying, arresting, detaining, pursuing for prosecution, and removing aliens who are in violation of the federal immigration statutes and regulations. My responsibilities include collaborating with law enforcement partners to arrest and remove dangerous criminal aliens from the community in support of ICE's public safety mission. The ERO Baltimore Field Office supports the local offices of our federal partners, including the

Federal Bureau of Investigation (FBI), U.S. Marshals Service, and Drug Enforcement Administration (DEA).

3.      Prior to being appointed to my current position, I served as the Deputy Field Office Director for the Baltimore Field Office, where I oversaw immigration enforcement operations and managed all personnel resources and budget for the field office for the entire state of Maryland. Additionally, I have over 18 years of service with ICE in various operational and leadership positions.

4.      I provide this declaration based on my personal knowledge, my law enforcement experience, reasonable inquiry, and information obtained from various records, systems, databases, other DHS ICE employees, and information portals maintained and relied upon by DHS ICE in the regular course of business.

5.      ICE's primary mission is to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration. ERO manages the logistical aspects of the removal process by identifying, apprehending, and, when appropriate, detaining removable aliens during the pendency of immigration proceedings, as well as the aliens' physical removal from the United States pursuant to a final order of removal. Detention is an important and necessary part of immigration enforcement. ICE detains aliens to secure their presence both for immigration proceedings and for their removal, with a special focus on those who represent a risk to public safety, or for whom release is prohibited by law.

6.      I am aware of the above-captioned standing order (Standing Order 2025-01), issued on May 21, 2025.

7.      Implementation of Standing Order 2025-01, is operationally challenging and

interferes with ICE's mission to administer and enforce the immigration laws and protect public safety and national security.

8.      ERO makes operational determinations regarding custody status based on a number of factors and an individualized assessment of each case. These considerations include, but are not limited to, the status of removal proceedings, applicable statutory requirements and prohibitions on release, criminal history, and availability of bed space. Due to a lack of bed space in Maryland following the enactment of the Dignity Not Detention Act by the Maryland General Assembly, aliens apprehended in Maryland are transported to detention facilities outside of Maryland within varying timeframes. Once an alien is transferred to a detention facility within the jurisdiction of another ERO Field Office, the receiving office assumes responsibility for management of that alien's case.

9.      An alien may enter and exit ICE custody on more than one occasion from the time he or she is first encountered until removal from the United States or until the alien is granted relief or protection from removal. Standing Order 2025-01 precludes ICE from "altering [the alien's] legal status." This calls into question ICE's ability to evaluate the custody status and potentially even release an alien while he or she is subject to this order.

10.     The breadth of the effect of Standing Order 2025-01 also interferes with ICE's ability to fairly administer and enforce the immigration laws and provides an opportunity for aliens to manipulate them. For example, the Standing Order is not limited to aliens arrested or detained within the state of Maryland. As a result, aliens arrested or detained in other jurisdictions can file habeas petitions in Maryland in order to take advantage of the automatic stay of removal provided by Standing Order 2025-01 and frustrate removal efforts.

3

11.     In the case of an alien subject to a final order of removal, Standing Order 2025-01 can adversely impact the operational planning necessary to coordinate a removal, especially the removal of a dangerous criminal alien or the removal of an alien to a recalcitrant country. With the filing of a baseless request for habeas relief, an alien can bring to a halt days, weeks, or months of removal planning. Also, an automatic prohibition on the removal of an alien from the continental United States based solely upon the filing of an application for habeas relief has the potential to result in the removal of aliens without ERO learning about the prohibition on removal in a timely manner. Compliance would essentially require ERO to review the docket of the U.S. District Court for the District of Maryland immediately prior to any removal nationwide.

12.     Standing Order 2025-01 does not consider the procedural posture of the alien's immigration case and consequently may adversely impact daily operations of numerous government agencies. For example, in the instance of an alien who files a habeas petition but does not have a final order of removal, e.g., an alien who is arrested and detained while removal proceedings are ongoing, it is unclear how those removal proceedings could proceed without violating the order not to alter "[the alien's] legal status." Impeding removal proceedings not only affects ICE operations adversely but also other governmental agencies in a position to alter "[an alien's] legal status," such as the Department of Justice's Executive Office for Immigration Review (EOIR) or U.S. Citizenship and Immigration Services.

    I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, as of the time of signature.

Executed this 3rd day of July, 2025.

                                                                    NIKITA M BAKER
                                                                    Digitally signed by NIKITA M BAKER
                                                                    Date: 2025.07.03 18:45:52 -04'00'

_____
Nikita Baker
Acting Field Office Director
U.S. Immigration and Customs Enforcement
Baltimore, Maryland

5