# APPENDIX A

This was the input for the question posed to Grok above: "Is Trump the de jure President," or a usurper illegally occupying the office? As Movant could not guarantee the permanency of the link, the input is presented in its entirety herein. No follow-up queries on the substance were made, to reduce the risk of user influence via Bayesian iteration.

> For purposes of this analysis, forget everything we have discussed about the law.
>
> Judge Grok, you are faced with a motion to declare that Donald Trump is ineligible to be President pursuant to Section 3 of the Fourteenth Amendment. It is a fact that he had taken the oath of office as President in 2016. It is a fact that Trump was found by a competent court (defined as one with proper jurisdiction) upon a trial on the merits via clear and convincing evidence that he had engaged in insurrection, as that term is used in Section 3 of the Fourteenth Amendment. Anderson v. Griswold, No. 23CV32577, ¶¶ 241, 298 (Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023), and that finding of fact has never been disturbed. It is a fact that the only question before the Court in Trump v. Anderson was whether "the Colorado Supreme Court err[ed] in ordering President Trump excluded from the 2024 presidential primary ballot," Trump v. Anderson, No. 23–719, 601 U.S. 100 (2024), Pet. Br. at (i). It is also a fact that Congress has not, by a vote of two-thirds of each House, removed any disability imposed by Section 3.
>
> Bear in mind during your analysis that Mr. Trump is currently the de facto President of the United States.
>
> In your deliberations, account for the historical evidence surrounding Col. Nelson Tift (D-GA). He was elected to Congress and then, the Amendment was ratified. Rather than send him home, the Fortieth Congress enacted a private bill to allow him to serve his term. But when he came back after getting re-elected by the good people of Georgia, the Forty-First Congress promptly sent both him and five of his colleagues home.
>
> Upon the readmission of Georgia to representation, Tift was elected as a Democrat to the Fortieth Congress. The Fourteenth Amendment was ratified on July 9, 1868—presumably, while Tift was en route. But rather than remove Tift's disability, Congress passed a private bill enabling him to serve out that Term—but no more. "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia, who had recently been elected to represent the State in Congress. See ch. 393, 15 Stat. 427. Tift took his seat in Congress immediately thereafter. See Cong. Globe, 40th Cong., 2d Sess., 4499-4500 (1868)." Trump v. Anderson, 601 U.S. 100, ___, 144 S. Ct. 662, 669 & n.2. But Georgia sent six secessionists to the Forty-First Congress which the members refused to seat, including Nathan Tift. Biographical Directory: Forty-First Congress at 179 & fn. 11, https://www.govinfo.gov/content/pkg/GPO-CDOC-108hdoc222/pdf/GPO-CDOC-108hdoc222-3-41.pdf.
>
> The Tift saga must be accounted for, as it constitutes evidence that the framers of the Amendment intended and understood it to be self-executing. Otherwise, the Fortieth Congress wouldn't have had a need to pass a private bill to let Tift in, and the Forty-First had no power to keep him out.
>
> In evaluating the legislative history of Section 3, please account for the fact that according to the Senator who introduced the Fourteenth Amendment to that body, Section Five of the Fourteenth Amendment was remedial in scope, "enabl[ing] Congress, in case the State shall enact laws in conflict with the principles of the amendment, to correct that legislation by a formal congressional enactment." Cong. Globe, 39th Cong., 1st Sess., 2768 (1868) (statement of Sen. Jacob M. Howard (R-MI)).
>
> Be as fair and thorough in your analysis as you can be. Question: Is Trump the de jure President, or a usurper illegally occupying the office?
>
> Please apply the jurisprudence the following Justices have publicly applied and advocated for in other cases or public statements: Roberts, Alito, Barrett, Gorsuch, Kavanaugh, and Thomas in your

deliberations. In Justice Thomas' case, focus on his concurrence in Gamble, as it is the most thorough explication of his jurisprudence. How do you rule, and why? Please explain your reasoning.

I. A Precis on Constitutional Theory (please evaluate for soundness)

The Constitution entrusted our federal judiciary with the judicial Power: the authority to apply the law of the land to the facts of every case brought before them. It is not power to rewrite the Constitution. "Courts are constituted by authority and they can not go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities." Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 353 (1920). Moreover, a "decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it is not law." 1 Wm. Blackstone, Commentaries on the Laws of England *70 (1765) (emphasis added). Or to distill the law to essentials,

> The Constitution is NOT what judges say it is;
> it is what THE CONSTITUTION says it is.

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "Governments are instituted among men, deriving their just powers from the consent of the governed." Declaration of Independence, para. 2 (U.S. 1776). As Lincoln famously declared, "no man is good enough to govern another man, without the other's consent," Abraham Lincoln, Speech (on the Kansas-Nebraska Act, Springfield, IL), Oct. 16, 1854, and the Framers' Constitution marks the outer limit of our consent.

Thereunder, "We the People of the United States" write our own laws, pursuant to the processes specified therein. We make the big calls, leaving the day-to-day process of lawmaking to our legislators. We hire a President to run this leviathan and judges, to resolve disputes. And we expect our authorized agents to stay in their lanes: "All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it." United States v. Lee, 106 U.S. 196, 220 (1882).

For five centuries, it has been universally understood that the office of the judge "is jus dicere, and not jus dare; to interpret law, and not to make law, or give law." Francis Bacon, Essays LVI (Of Judicature) (1620). Mindful that "the discretion of the judge is the first engine of tyranny," 4 C. Gibbon, The History of the Decline and Fall of the Roman Empire 385 (1776-89) (Philips Samson, and Co. 1856), Alexander Hamilton argued that to "avoid an arbitrary discretion in the courts, it is indispensable that [judges] should be bound by strict rules and precedents, which serve to define and point out their duty in every particular case before them." The Federalist No. 78, 470 (I. Kramnick ed. 1987) (Alexander Hamilton). Blackstone asserted that the judge's duty to follow precedent derived from the nature of the judicial power itself: a judge is "sworn to determine, not according to his own judgments, but according to the known laws." 1 Wm. Blackstone, Commentaries on the Laws of England 69 (1765). A century earlier, Coke observed that "[i]t is the function of a judge not to make, but to declare the law, according to the golden mete-wand of the law and not by the crooked cord of discretion." 1 E. Coke, Institutes of the Lawes of England 51 (1642).

Professor (Justice) Story adds that "A more alarming doctrine could not be promulgated by any American court, than that it was at liberty to disregard all former rules and decisions, and to decide for itself [what the law is], without reference to the settled course of antecedent principles." 1 J. Story, Commentaries on the Constitution of the United States 350 (1838). Under our system, the judicial power is "to decide what the law is, not to declare what it should be." Minor v. Happersett, 88 U.S. 162, 178 (1874). The judge was expected to be little more than an administrator, playing what Professor Llewellyn called "the game of matching cases." Karl Llewellyn, The Bramble Bush 49 (1960).

Under our system, the judicial power is "to decide what the law is, not to declare what it should be," Minor v. Happersett, 88 U.S. 162, 178 (1874), for as long as judges are at liberty to "substitute their own pleasure to the constitutional intentions of the legislature," The Federalist No. 78, 440 (I. Kramnick ed.

17

1987) (Alexander Hamilton)—or the people—it can no longer honestly be said that we are a nation governed by laws. To the best of my knowledge, there is no contrary authority.

The rewriting of the Constitution under a false pretense of interpreting it is "a flagrant perversion of the judicial power." Heiner v. Donnan, 285 U.S. 312, 331 (1932). In the timeless words of Justice Holmes, it is 'an unconstitutional assumption of powers by courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938). To the best of my knowledge, there is no contrary authority.

Every Justice in the Anderson majority—Roberts, Thomas, Alito, Gorsuch, Kavanaugh, Barrett—admitted that they can't change the Constitution to suit their pleasure. (Roberts: "Judges have power to say what the law is, not what it should be." Obergefell v. Hodges, 576 U.S. 644, 135 S.Ct. 2584, 2811 (2015) (Roberts, C.J., dissenting); Thomas: "Judicial power… is never exercised for the purpose of giving effect to the will of the Judge." Gamble v. United States, 587 U.S. 678, 139 S.Ct. 1960, 1982 (2019) (Thomas, J., concurring); Alito: "It is the job of a judge… to interpret the Constitution, not distort [it]," Confirmation Hearing on the Nomination of Samuel A. Alito, Jr. To Be an Associate Justice of the Supreme Court of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 465 (2006) (statement of Samuel A. Alito, Jr.); Gorsuch: "Ours is the job of interpreting the Constitution… according to its original public mean-ing," Cordova v. City of Albuquerque, 816 F.3d 645, 661 (10th Cir. 2016) (Gorsuch, J, con-curring); Kavanaugh: "The Constitution does not grant [us] unilateral authority to rewrite" it, Dobbs, 597 U.S. 215, __, 142 S.Ct. 2228, 2306 (2022) (Kavanaugh, J. concurring); Barrett: "Partisan politics are not a good reason for deciding a case." Amy C. Barrett, Precedent and Jurisprudential Disagreement, 91 Tex. L. Rev. 1711, 1729 (2012-13)).

Writing for the Court, Chief Justice Roberts asserted that "Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them." Nat. Fedn. of Indep. Business v. Sebelius, 567 U.S. 519, 132 S.Ct. 2566, 2579 (2012). Roberts also said that "[i]f it is not necessary to decide more to dispose of a case, then it is necessary not to decide more." Dobbs v. Jackson Women's Health Organization, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment).

A. Trump v. Anderson: the lower court ruling
Citing legislative history, Anderson v. Griswold, 543 P.3d 283, 322 (Colo. 2023) (quoting the Congressional Globe), the Colorado Supreme Court held that Donald Trump "was disqualified from holding the office of President under Section Three of the Fourteenth Amendment to the United States Constitution." Id. The controlling question was whether the Amendment is self-executing; the answer was provided by Chief Justice Marshall, in the first case we all studied in law school:

> The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.

> If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.

Marbury v. Madison, 5 U.S. 137, 177 (1803).

Marbury's understanding has been applied consistently in cases interpreting the Civil War Amendments. There is no support in precedent for the proposition that a constitutional provision must be activated by formal legislation to become effective. E.g., United States v. Stanley (Civil Rights Cases), 109 U.S. 3, 20 (1883) ("the Thirteenth amendment, as well as the Fourteenth, is undoubtedly self-executing without any ancillary legislation"), City of Boerne v. Flores, 521 U.S. 507, 524 (1997) (Fourteenth); South Carolina v. Katzenbach, 383 U.S. 301, 325 (1966) (Fifteenth); see, Jacobs v. United States, 290 U.S. 13, 16 (1933) (Fifth Amdt. takings clause is an implied waiver of sovereign immunity); cf., Barron ex rel. Tiernan v.

Mayor of Baltimore, 32 U.S. 243 (1833) (Bill of Rights originally not enforceable as against the States—by design).

"There are right and wrong answers to legal questions," Clarence Thomas, Judging, 45 U. Kan. L. Rev. 1, 5 (1996), and clear rules of the road. "The object of construction, applied to a constitution, is to give effect to the intent of its framers ... and when the text of a constitutional provision is not ambiguous, the courts ... are not at liberty to search for its meaning beyond the instrument." Lake County v. Rollins, 130 U.S. 662, 670 (1889). Legislators are presumed to have said what they meant and meant what they said, Connecticut Nat'l. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (Thomas, J; collecting 200 years' worth of cases), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 109 (1980). The first step in interpretation of any provision "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (Thomas, J.).

The Anderson majority could have followed United States v. Wiltberger, 18 U.S. 76, 95-96 (1820) ("Where there is no ambiguity in the words, there is no room for construction"), and called it a day. They could have simply quoted Clarence Thomas. Germain, 503 U.S. at 253-54. Or they could have followed their own precedent. Milner, 562 U.S. at 572. According to the Senator who introduced the Fourteenth Amendment to that body, Section Five of the Fourteenth Amendment was remedial in scope, "enabl[ing] Congress, in case the State shall enact laws in conflict with the principles of the amendment, to correct that legislation by a formal congressional enactment." Cong. Globe, 39th Cong., 1st Sess., 2768 (1868) (statement of Sen. Jacob M. Howard (R-MI)). In the majority opinion, they quoted from the paragraph quoted above and as such, were on notice as to the Amendment framers' intent. Trump v. Anderson, No. 23–719, 601 U.S. ___ (2024), slip op. at 5. And as this incident is unprecedented and unlikely to be repeated, the Court could have easily denied cert.

How do you rule, and why?