

case information apparently sealed or shielded for unknown reasons

# Attachment # 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br>               Plaintiffs, <br><br>    v. <br><br> CHIEF JUDGE GEORGE L. RUSSELL III, in his official capacity; JUDGE ADAM B. ABELSON, in his official capacity; JUDGE RICHARD D. BENNETT, in his official capacity; JUDGE CATHERINE C. BLAKE, in her official capacity; JUDGE DEBORAH L. BOARDMAN, in her official capacity; JUDGE JAMES K. BREDAR, in his official capacity; JUDGE DEBORAH K. CHASANOW, in her official capacity; JUDGE THEODORE D. CHUANG, in his official capacity; JUDGE STEPHANIE A. GALLAGHER, in her official capacity; JUDGE LYDIA KAY GRIGGSBY, in her official capacity; JUDGE ELLEN L. HOLLANDER, in her official capacity; JUDGE BRENDAN A. HURSON, in his official capacity; JUDGE MATTHEW J. MADDOX, in his official capacity; JUDGE JULIE R. RUBIN, in her official capacity; JUDGE PAULA XINIS, in her official capacity; CATHERINE M. STAVLAS, Clerk of Court, in her official capacity; and UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, <br><br>               Defendants. | No. _____ |

## COMPLAINT

Plaintiffs, the United States and the United States Department of Homeland Security, by and through their undersigned counsel, bring this action for declaratory and injunctive relief, and allege as follows:

## INTRODUCTION

1.     "[S]everal hundred years of history," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), teach that injunctive relief "is an 'extraordinary' equitable remedy that is 'never awarded as of right,'" even where a plaintiff claims or shows that he will suffer irreparable harm without one, *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024).  And injunctions against the Executive Branch are particularly extraordinary because they interfere with that democratically accountable branch's exercise of its constitutional powers—including, as relevant here, the core Article II powers to enforce the Nation's immigration laws and shape and manage its relationships with foreign nations.  *See United States v. Texas*, 599 U.S. 670, 679 (2023) (explaining that, in the context of immigration, the "Executive's enforcement discretion implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives'").

2.     Despite these elementary principles, in recent months and years, district courts have used and abused their equitable powers to interfere with the prerogatives of the Executive Branch to an unprecedented degree.  In the first 100 days of President Trump's current Term, district courts have entered more nationwide injunctions than in the 100 years from 1900 to 2000, requiring the Supreme Court to intervene again and again in recent weeks to pause the unlawful restraint of the President's exercise of core Article II powers.

3.     This lawsuit involves yet another regrettable example of the unlawful use of equitable powers to restrain the Executive. Specifically, Defendants have instituted an avowedly *automatic* injunction against the federal government, issued outside the context of any particular

2

case or controversy. They did so by promulgating a standing order ("Standing Order") and amended standing order ("Amended Standing Order"; together, "Orders") that require the court

clerk to automatically enter an injunction against removing, or changing the legal status of, any alien detained in Maryland who files a habeas petition.

4.      The challenged Orders here do precisely what the Supreme Court has forbidden: make equitable relief a "matter of right" in the District of Maryland. *Nken v. Holder*, 556 U.S. 418, 433 (2009).  Defendants' automatic injunction issues whether or not the alien needs or seeks emergency relief, whether or not the court has jurisdiction over the alien's claims, and no matter how frivolous the alien's claims may be. And it does so in the immigration context, thus intruding on core Executive Branch powers. *See I.N.S. v. Legalization Assistance Project of Los Angeles Cnty. Federation of Labor*, 510 U.S. 1301, 1304-06 (1993) (O'Connor, J., in chambers).

5.      The automatic injunction is admittedly motivated by Defendants' "frustrati[on]" with hearings related to the Administration's immigration enforcement actions and a desire to avoid handling cases outside regular business hours.  But a sense of frustration and a desire for greater convenience do not give Defendants license to flout the law. Nor does their status within the judicial branch.

6.      Defendants' "standing orders" defy the requirements for issuing a preliminary injunction or a temporary restraining order.  They violate congressional limits on district courts' jurisdiction over immigration matters.  And they disregard the procedural and substantive requirements for issuing what amounts to a local rule.  They are also fundamentally inconsistent with the judicial role to resolve only concrete and discrete "cases" and "controversies," and to do so without predetermining a case before it has been brought.

3

7.      In particular, district courts lack jurisdiction to hear challenges arising from removal proceedings or to issue orders that enjoin or restrain execution of removal orders.  Congress has instead expressly and intentionally channeled challenges to removal proceedings to a specific process in the courts of appeals and imposed various other bars on judicial review.  Defendants' automatic injunction thus extends relief as of right that district courts entirely lack jurisdiction to issue.

8.      Every unlawful order entered by the district courts robs the Executive Branch of its most scarce resource: time to put its policies into effect.  In the process, such orders diminish the votes of the citizens who elected the head of the Executive Branch.  Defendants' lawless standing orders are nothing more than a particularly egregious example of judicial overreach interfering with Executive Branch prerogatives—and thus undermining the democratic process.  *See Legalization Assistance Project*, 510 U.S. at 1305-06 (granting stay of district court order that required INS to engage in certain immigration procedures, as "an improper intrusion" upon a "coordinate branch").  Plaintiffs are entitled to prompt relief from Defendants' unlawful, antidemocratic Orders.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1361.

10.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants reside within the District of Maryland and because all of Defendants' acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

11.      The Court has the authority to provide the relief from the Orders requested here under 28 U.S.C. §§ 1651, 2201, and 2202, and the Court's inherent equitable powers.

4

## PARTIES

12.     Plaintiff United States of America regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Homeland Security (DHS) as well as its component agencies, which include U.S. Citizenship and Immigration Services (USCIS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP); and the United States Department of Justice (DOJ) as well as its component agencies, which include the Executive Office of Immigration Review (EOIR) and the United States Attorney's Office for the District of Maryland (USAO).  The USAO defends the United States, DHS, USCIS, ICE, and CBP in suits in which the Orders are entered.

13.     Plaintiff DHS is an executive agency that enforces federal immigration laws, including by arresting and detaining individuals in Maryland.  Its address is 2707 Martin Luther King Jr Ave SE, Washington, DC 20528.

14.     Defendant Chief Judge George L. Russell III is the chief judge of the U.S. District Court for the District of Maryland.  He issued and signed the Standing Order and Amended Standing Order that Plaintiffs challenge.  Chief Judge Russell is sued in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

15.     Judge Adam B. Abelson is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Abelson is sued in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

16.     Judge Richard D. Bennett is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Bennett is sued in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

5

17.      Judge Catherine C. Blake is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Blake is sued in her official capacity.  Her address is 101 West Lombard Street, Baltimore, Maryland 21201.

18.      Judge Deborah L. Boardman is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Boardman is sued in her official capacity.  Her address is 6500 Cherrywood Lane, Greenbelt, Maryland 20770 (Prince George's County).

19.      Judge James K. Bredar is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Bredar is sued in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

20.      Judge Deborah K. Chasanow is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Chasanow is sued in her official capacity.  Her address is 6500 Cherrywood Lane, Greenbelt, Maryland 20770 (Prince George's County).

21.      Judge Theodore D. Chuang is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Chuang is sued in his official capacity.  His address is 6500 Cherrywood Lane, Greenbelt, Maryland 20770 (Prince George's County).

22.      Judge Stephanie A. Gallagher is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Gallagher is sued in her official capacity.  Her address is 101 West Lombard Street, Baltimore, Maryland 21201.

23.      Judge Lydia Kay Griggsby is a judge of the U.S. District Court for the District of Maryland and has been or will be assigned cases in which the Orders apply.  Judge Griggsby is

6

sued in her official capacity.  Her address is 6500 Cherrywood Lane, Greenbelt, Maryland 20770

(Prince George's County).

24.      Judge Ellen L. Hollander is a judge of the U.S. District Court for the District of

Maryland and has been or will be assigned cases in which the Orders apply.  Judge Hollander is

sued in her official capacity.  Her address is 101 West Lombard Street, Baltimore, Maryland 21201.

25.      Judge Brendan A. Hurson is a judge of the U.S. District Court for the District of

Maryland and has been or will be assigned cases in which the Orders apply.  Judge Hurson is sued

in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

26.      Judge Matthew J. Maddox is a judge of the U.S. District Court for the District of

Maryland and has been or will be assigned cases in which the Orders apply.  Judge Maddox is sued

in his official capacity.  His address is 101 West Lombard Street, Baltimore, Maryland 21201.

27.      Judge Julie R. Rubin is a judge of the U.S. District Court for the District of

Maryland and has been or will be assigned cases in which the Orders apply.  Judge Rubin is sued

in her official capacity.  Her address is 101 West Lombard Street, Baltimore, Maryland 21201.

28.      Judge Paula Xinis is a judge of the U.S. District Court for the District of Maryland

and has been or will be assigned cases in which the Orders apply.  Judge Xinis is sued in her official

capacity.  Her address is 6500 Cherrywood Lane, Greenbelt, Maryland 20770 (Prince George's

County).

29.      Catherine M. Stavlas is the Clerk of Court for the U.S. District Court for the District

of Maryland.  As the Clerk, she is responsible for executing the Court's standing orders, and is

specifically responsible for directing court personnel to enter the Orders in all cases subject to their

terms. Stavlas is sued in her official capacity.  Her address is 101 West Lombard Street, Baltimore,

Maryland 21201.

Case 1:25-cv-02029-TTC    Document 20-1    Filed 07/14/25    Page 9 of 24
Case 1:25-cv-02029-CJC    Document 1    Filed 06/24/25    Page 8 of 23

7

30.    Defendant United States District Court for the District of Maryland is the federal court that adjudicates federal cases in the State of Maryland.  Its address is 101 West Lombard Street, Baltimore, Maryland 21201.

## FACTUAL BACKGROUND

### The Standing Order and Amended Standing Order

31.    On May 21, 2025, Defendants promulgated Standing Order 2025-01.  The Standing Order was "ORDERED by" Defendant "the U.S. District Court for the District of Maryland," and it was signed by Defendant Chief Judge Russell.

32.    The Standing Order applied to all cases filed on or after 5:00 p.m. on May 20, 2025—the day before it was issued.

33.    The Standing Order purported to invoke the All Writs Act and a "limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action."

34.    The Standing Order provided that "upon the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of an alien detainee, the Government/Respondents, including all those acting for them or on their behalf, are ENJOINED and RESTRAINED from removing Petitioners in such cases from the continental United States or altering their legal status, provided that Petitioner's full name and A# have been provided to the Court, either in the Petition or in a separate sealed filing."

35.    The Standing Order provided that an order to this effect "shall be entered in every such case upon its filing."

36.    The Standing Order provided that "its terms shall remain in effect until 4:00 p.m.

on the second business day following the filing of the Petition," unless extended by the judge assigned to the case.

8

37.     The Standing Order directed the Clerk to docket the Standing Order in each relevant case and to send a copy of the Standing Order, the habeas petition, and the petitioner's full name and A# to the Chief and Deputy Chief of the Civil Division of the U.S. Attorney's Office for the District of Maryland.

38.     The Standing Order stated that it was promulgated "in order to preserve existing conditions and the potential jurisdiction of th[e] Court over pending matters while the Court determines the scope of its authority to grant the request[ed] relief; to ensure Petitioners are able to participate in the adjudication of their requests for habeas relief, including participation in court proceedings and access to legal counsel for such purpose; to ensure the Court is able to evaluate their respective claims for relief based on their in-court testimony that may be offered; and to ensure the Government has a fulsome opportunity to brief and present arguments in its defense."

39.     On May 28, 2025, Defendants promulgated Amended Standing Order 2025-01. Like the Standing Order, the Amended Standing Order was "ORDERED by" Defendant "the U.S. District Court for the District of Maryland," and it was signed by Defendant Chief Judge Russell.

40.     The Amended Standing Order does not specify an effective date.

41.     The Amended Standing Order, like the Standing Order, purported to invoke the All Writs Act and a "limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action."

42.     The Amended Standing Order provides that, after the filing of "(1) a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of an alien detainee located in the District of Maryland, and (2) the Petitioner's full name and A#," the Clerk shall "docket this Order

in the case and simultaneously send a copy of this Order, the Petition, and the Petitioner's full

name and A# to the Chief and Deputy Chief of the Civil Division of the United States Attorney's

9

Office for the District of Maryland, and then file a Notice that the documents have been

transmitted."

43.    The Amended Standing Order then provides that, "effective upon the filing of the

Notice that these documents have been transmitted," "Government/Respondents, including all

those acting for them or on their behalf, are ENJOINED and RESTRAINED from removing

Petitioners from the continental United States or altering their legal status."

44.    The Amended Standing Order, like the Standing Order, provides that it "shall

remain in effect until 4:00 p.m. on the second business day following the filing of the Petition,"

unless extended by the judge assigned to the case.

45.    The Amended Standing Order also provides that "Government/Respondents shall

notify appropriate officials of this Order promptly and provide all necessary information and

documents to effectuate compliance with this Order."

46.    The Amended Standing Order, like the Standing Order, states that it was

promulgated "in order to preserve existing conditions and the potential jurisdiction of th[e] Court

over pending matters while the Court determines the scope of its authority to grant the requested

relief; to ensure Petitioners are able to participate in the adjudication of their requests for habeas

relief, including participation in court proceedings and access to legal counsel for such purpose; to

ensure the Court is able to evaluate their respective claims for relief based on their in-court

testimony that may be offered; and to ensure the Government has a fulsome opportunity to brief

and present arguments in its defense."

47.     The Amended Standing Order additionally states that "[t]he recent influx of habeas petitions concerning alien detainees purportedly subject to improper and imminent removal from the United States that have been filed after normal court hours and on weekends and holidays has

10

created scheduling difficulties and resulted in hurried and frustrating hearings in that obtaining clear and concrete information about the location and status of the petitioners is elusive."

48.     Plaintiffs have raised their concerns with the Orders to the Judicial Conference. Defendants have made apparent that they intend to keep the Amended Standing Order in place indefinitely.

## The Orders' Impact on Federal Immigration Enforcement

49.     The primary mission of ICE is to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration.

50.     Detention is an important and necessary part of immigration enforcement.  ICE detains aliens to secure their presence both for immigration proceedings and for their removal, with a special focus on those who represent a risk to public safety or for whom release is prohibited by law.

51.     An alien may enter and exit ICE custody on more than one occasion from the time he or she is first encountered until removal from the United States or until the alien is granted relief or protection from removal.

52.     Implementation of the Orders is operationally challenging and interferes with ICE's mission to administer and enforce the immigration laws and protect public safety and national security.

53. Within ICE, Enforcement and Removal Operations (ERO) manages the logistical aspects of the removal process by identifying, apprehending, and, when appropriate, detaining removable aliens during the pendency of immigration proceedings. It also manages the aliens' physical removal from the United States pursuant to a final order of removal.

11

54. ERO makes operational determinations regarding custody status based on a number of factors and an individualized assessment of each case. These considerations include, but are not limited to, the status of removal proceedings, applicable statutory requirements and prohibitions on release, criminal history, and availability of bed space.

55. Due to a lack of bed space in Maryland, aliens apprehended in Maryland must be transported to detention facilities outside of Maryland.

56. The Orders do not afford ERO any opportunity to contest the alien's assertion of being "located in the District of Maryland" at the time of a habeas filing before the Orders automatically enjoin and restrain ERO.

57. Moreover, the Orders invite aliens to allege that they were in Maryland at the time of filing in order to take advantage of the Orders. The Orders exacerbate this problem by permitting filings "on behalf of" an alien, even though the filer may not know the alien's location at the time of filing.

58. This problem has already materialized in practice. The Court has applied the Amended Standing Order in a case in which the habeas petition, filed on June 6, alleged that the petitioner was detained in Maryland, but the petitioner had already arrived at a detention facility in Texas on the previous day, June 5. *Hernandez Escalante v. Noem*, No. 25-1799 (D. Md.). Despite this undisputed fact, the Court entered and later extended the Amended Standing Order.

*Id.*, ECF No. 4, 9, 11.

59.     The Orders also interfere with ICE's ability to fairly administer and enforce the immigration laws because the Orders tie the alien's location in the District of Maryland to the filing of the habeas petition, but they do not require the alien to be in Maryland when the Clerk files the

12

required Notice that triggers the Order's protections.  This increases the likelihood that the alien will already have been removed before ERO learns that the automatic stay has been triggered.

60.     The Orders can also adversely impact the operational planning necessary to coordinate a removal, especially a removal of an alien to a country that is recalcitrant about accepting the alien.  Removals can take months of sensitive diplomacy to arrange and often do not completely come together until the last minute.  A delay can undo all of those arrangements and require months of additional work before removal can be attempted again.

61.     Similarly, aliens often have travel documents with expiration dates.  An automatic stay can cause removals to be delayed until after those travel documents have expired and removal is thus no longer possible without securing new travel documents.

62.     In addition to restricting movement of covered aliens, the Orders also preclude "Government/Respondents" from "altering [the alien's] legal status."

63.     The Orders thus bar ICE from implementing final orders of removal by removing the alien.

64.     The Orders even bar immigration judges from proceeding in the alien's immigration proceedings, including by entering a removal order or adjudicating any applications for immigration relief, such as asylum, withholding of removal, protection under the Convention

Against Torture, voluntary departure, and other forms of immigration relief. The Orders likewise may bar courts of appeals from acting on a pending petition for review, which could change the alien's legal status, and similarly preclude DHS from implementing an order resolving a petition for review.

13

65.     The Orders also bar the alien from receiving other immigration-related benefits that would change the alien's legal status, including temporary protected status, discretionary parole, work authorization, and the like.

66.     The Standing Order and Amended Standing Order have already been entered in multiple cases, and the Amended Standing Order is certain to be entered in additional cases in the future, disrupting immigration operations and interfering with Plaintiffs' sovereign prerogative to enforce immigration laws.

67.     Plaintiffs would face barriers in seeking review of any individual case in which the Standing Order or Amended Standing Order is entered. Such barriers include questions of appellate jurisdiction that turn on whether an order is a preliminary injunction or temporary restraining order and, in the event the order is dissolved before an appeal can be concluded, mootness. Even if the Orders are later held to have been improperly entered in individual cases, appeal will not restore to Plaintiffs the time they will have already lost while the Orders were in effect in the case.

68.     Piecemeal appeals of cases in which the Orders are entered, similarly, may not present a sufficient opportunity to determine the Orders' facial validity. Instead, "the proper

method for mounting a facial challenge to the validity of" the Orders "is through an action for declaratory and/or injunctive relief filed in the district court." *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 11 (1st Cir. 2000); *see also, e.g., Russell v. Hug*, 275 F.3d 812, 816-23 (9th Cir. 2002) (lawsuit alleging invalidity of local "general order"); *Whitehouse v. U.S. Dist. Ct. for Dist. of R.I.*, 53 F.3d 1349, 1353 (1st Cir. 1995); *Thaw v. Lynch*, No. 2:15-CV-01703 JWS, 2016 WL 1045527, at *1 (D. Ariz. Mar. 16, 2016); *Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Roberts*, 180 F. Supp. 3d 46, 55-56 (D.D.C. 2015).

14

69.    "[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF REQUIREMENTS FOR INJUNCTIONS

70.    Plaintiffs hereby incorporate paragraphs 1 through 69 of the Complaint as if fully stated herein.

71.    Courts have long recognized that even absent an express statutory cause of action, the United States may sue in equity to vindicate its sovereign interests and enjoin interference with its activities. *See, e.g., Arizona United States*, 567 U.S. 387 (2012); *In re Debs*, 158 U.S. 564 (1895); *United States v. California*, 921 F.3d 865 (9th Cir. 2019).

72.    Standing orders are permissible only if they are consistent with federal law and the Federal Rules of Civil Procedure. Fed. R. Civ. P. 83(b).

73.     Courts must consider the four-factor test set forth by the Supreme Court before issuing temporary restraining orders or preliminary injunctions in a particular case. *See, e.g.*, *Nken*, 556 U.S. 418; *Winter v. NRDC*, 555 U.S. 7 (2008).

74.     The test requires courts to consider the movant's likelihood of success on the merits, whether the movant will suffer irreparable harm absent an injunction, the balance of harms to the movant and the opposing party, and the public interest.

75.     The Orders purport to issue a preliminary injunction or temporary restraining order automatically, without consideration of the four-factor test prescribed by Supreme Court precedent in any particular case.  They are therefore unlawful.


15

76.     The Supreme Court has further held explicitly that "[a]lthough removal is a serious burden for many aliens, *it is not categorically irreparable*." *Nken*, 556 U.S. at 435 (emphasis added).  But by allowing the potential for removal to create an automatic entitlement to an injunction against removal, the Orders necessarily do what *Nken* prohibits—treating removal as "categorically irreparable" harm. *Id.*

77.     In addition, injunctions and temporary restraining orders must comply with procedural and substantive requirements set forth in Federal Rule of Civil Procedure 65.

78.     To the extent the Orders direct entry of a temporary restraining order, they are procedurally deficient.  Temporary restraining orders may be issued without pre-order notice to the opposing party only if certain requirements are met.  An *ex parte* temporary restraining order may be issued only upon (1) the court's receipt of specific facts in an affidavit or verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) certification in writing by the movant's

attorney of any efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). An *ex parte* temporary restraining order must state the date and hour it was issued, describe the injury and state why it is irreparable, and state why the order was issued without notice.

79.     The Orders purport to issue an *ex parte* temporary restraining order without meeting any of those requirements. They do not require any specific showing of immediate and irreparable harm, let alone set out in an affidavit or verified complaint; do not require a written certification about efforts to provide pre-order notice and why notice should not be required; and do not provide for any description by the court of the injury or reasons for issuing the order without notice.

16

80.     The Orders do not satisfy the requirement of a description by the court of the immediate and irreparable injury the movant would incur without the order and reasons for issuing the order without notice. Nor can the Orders constitute a case-specific finding that an irreparable injury is imminent and notice is not required. The Orders are therefore unlawful.

81.     If the Orders were instead understood to direct entry of a preliminary injunction, they would likewise be unlawful. Preliminary injunctions may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). They must be supported by a statement of reasons for the injunction. *Id.* R. 65(d)(1). Preliminary injunctions bind only the parties to the case, together with the parties' officers, agents, servants, employees, attorneys, and others who are in active concert or participation with them—but only if those persons receive actual notice of the preliminary injunction by personal service or otherwise. *Id.* R. 65(d)(2). And preliminary injunctions must require movants to provide security. *See id.* R. 65(c).

82.     The Orders purport to issue a preliminary injunction without meeting any of those requirements.  They do not provide for pre-injunction notice to the adverse party; do not provide for a statement of reasons for the injunction before it issues; purport to bind everyone in the government as soon as the Clerk has emailed the underlying documents to two individuals in the U.S. Attorney's Office; and do not provide for security.  The Orders are therefore unlawful.

83.     Inconvenience to the Court is not a basis to enter an injunction, and filings outside normal business hours, scheduling difficulties, and the possibility of hurried and frustrating hearings are not irreparable harms.

84.     The All Writs Act does not provide authority to circumvent the requirements for issuing a preliminary injunction or a temporary restraining order.

17

85.     Courts lack authority to create novel forms of equitable relief, under the All Writs Act or otherwise.

**COUNT TWO – VIOLATION OF JURISDICTIONAL BARS**

86.     Plaintiffs hereby incorporate paragraphs 1 through 85 of the Complaint as if fully stated herein.

87.     Congress has stripped lower federal courts of "jurisdiction or authority to enjoin or restrain the operation of" many provisions of the Immigration and Nationality Act (INA), including removal proceedings and procedures for removal of aliens ordered removed, with an exception for orders "with respect to the application of [covered] provisions to an individual alien." 8 U.S.C. § 1252(f)(1); *see, e.g.*, 8 U.S.C. §§ 1229a (removal proceedings), 1231 (removal).

88.     The Orders purport to bar entry and execution of removal orders for all aliens detained in Maryland who file a habeas petition in the District of Maryland. They thus purport to enjoin and restrain provisions covered by the INA, in a non-individualized, quasi-class manner. The Orders therefore exceed the Court's jurisdiction and authority and are invalid and unlawful.

89.     Separately, the Orders purport to exercise judicial power over all habeas petitions filed under 28 U.S.C. § 2241 for an alien located in Maryland at the time of filing, even though the Court lacks jurisdiction over many, most, or all such petitions.

90.     Congress has stripped federal courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien" under the INA, other than in a petition for review under § 1252, "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code." 8 U.S.C. § 1252(g). Section 1252(g) thus deprives district courts of jurisdiction to issue orders that stay the execution

18

of removal orders and to hear cases challenging the execution of removal orders. *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir. 1999).

91.     Section 1252(b)(9)—known as the "zipper clause"—channels all review of "any action taken or proceeding brought to remove an alien from the United States" under subchapter II of the INA into a petition for review of a final order of removal and expressly strips district courts of jurisdiction to review final orders of removal, or otherwise review "such questions of law or fact," including "by habeas corpus under section 2241 of title 28" or under the All Writs Act. *See also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999)

Case 1:25-cv-02029-JRC Document 1 Filed 06/24/25 Page 21 of 23

(explaining that Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from removal proceedings]" to a court of appeals in the first instance).

92.     Yet another provision, 8 U.S.C. § 1226(e), bars judicial review of many "discretionary judgment[s]" regarding release and detention of aliens. A habeas petition seeks judicial review of detention—so the Orders again transgress this limitation on judicial review.

93.     Additionally, 8 U.S.C. § 1252(e)(2) "limits the review that an alien in expedited removal may obtain via a petition for a writ of habeas corpus" to just three narrow grounds. *See Dep't of Homeland Security v. Thuraissigiam*, 592 U.S. 103, 111 (2020). The Orders will operate to halt expedited removals without regard to these circumstances.

94.     Despite all of these restrictions, the Orders purport to stay the execution of removal orders upon filing of a habeas petition under 28 U.S.C. § 2241, without any consideration of whether there is even a colorable basis for argument that the Court has jurisdiction over the matter. They expressly provide that Defendants are "ENJOINED and RESTRAINED" from "removing Petitioners from the continental United States." The Orders accordingly exceed the Court's jurisdiction and are invalid and unlawful.

19

**COUNT THREE – VIOLATION OF REQUIREMENTS FOR LOCAL RULES**

95.     Plaintiffs hereby incorporate paragraphs 1 through 94 of the Complaint as if fully stated herein.

96.     In function and effect, the Orders are local rules governing "the conduct of the[] court's business," 28 U.S.C. § 2071(a), by directing the entry of an injunction in all relevant cases.

97.     The Orders apply to all habeas petitions filed under § 2241 on behalf of alien detainees located in the District of Maryland, regardless of the judge assigned to the case.

98. Local rules may be adopted only via notice-and-comment rulemaking. *See* 28 U.S.C. § 2071(b); Fed. R. Civ. P. 83(e); *Hollingsworth v. Perry*, 558 U.S. 183, 193-94 (2010).

99. Plaintiffs would have participated in the rulemaking process if Defendants had conducted notice-and-comment rulemaking.

100. Local rules proposed by the U.S. District Court for the District of Maryland must be submitted to a rules advisory committee, the judicial council of the Fourth Circuit, and the Judicial Conference. 28 U.S.C. §§ 2071(c), 2077.

101. The Orders were not adopted via notice-and-comment rulemaking, and they have not been submitted to a rules advisory committee, the judicial council of the Fourth Circuit, or the Judicial Conference. They are therefore unlawful and invalid.

20

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

1. That this Court enter a judgment declaring that the Standing Order and Amended Standing Order violate the requirements for issuing injunctions, violate the limitations on district courts' jurisdiction and remedial authority in 8 U.S.C. § 1252, and violate the requirements for local rules;

Case 2:25-cv-02029 Document 1 Filed 06/24/25 Page 23 of 23

2.  That this Court issue preliminary and permanent injunctions that prohibit the Defendants as well as their successors, agents, and employees from implementing or effectuating the Standing Order and Amended Standing Order and from enforcing their terms in any case; and

3.  That this Court award any other relief it deems just and proper.

21

| | |
|---|---|
| Dated: June 24, 2025 | Principal Deputy Assistant Attorney General |
| BRETT A. SHUMATE | Civil Division |
| Assistant Attorney General | |
| Civil Division | DREW C. ENSIGN |
| | Deputy Assistant Attorney General |
| | Civil Division |
| YAAKOV M. ROTH | ELIZABETH HEDGES |
| | SARAH WELCH |
| | Counsel to the Assistant Attorney General |

Civil Division                          22

*/s Brendan Moore*
BRENDAN
MOORE  (Il.  Bar
No. 6293415)
ZACHARY
CARDIN (Md. Bar
No. 21091)
Trial Attorneys
Office              of
Immigration
Litigation
Civil Division, U.S.
Department          of
Justice
P.O. Box 878, Ben
Franklin Station
Washington,     D.C.
20044
Phone:          (202)
616.4900
Fax: (202) 307.8781
Brendan.T.Moore@
usdoj.gov

*Attorneys for
Plaintiffs*