## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-02029 |
| | ) | |
| CHIEF JUDGE GEORGE L. RUSSELL III, | ) | Hon. Judge Thomas T. Cullen |
| *in his official capacity, et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF OF LAWYERS DEFENDING AMERICAN DEMOCRACY AND ITS
MARYLAND CHAPTER, MD-LDAD; LAWYERS SOCIETY FOR THE RULE OF LAW
INSTITUTE; AND JUDGE J. MICHAEL LUTTIG, AS *AMICI CURIAE*
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

H. Mark Stichel (D. Md. Bar. No. 02939)
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
Phone: (443) 379-8987
Fax:    (443) 379-4013
hmstichel@rkwlawgroup.com

M. Natalie McSherry (D. Md. Bar No. 00144)
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Phone: (410) 752-6030
nmcsherry@kg-law.com

Counsel for Amici Curiae

# TABLE OF CONTENTS

LOCAL RULE 105.12(h) DISCLOSURE STATEMENT ............................................................... 1

IDENTITY AND INTEREST OF AMICI CURIAE ................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................................... 2

ARGUMENT ................................................................................................................................... 3

The District Court Properly Exercised Its Inherent Authority in Response to
Governmental Conduct Likely to Deprive the Court of Jurisdiction ........................................ 3

   1.   The Government Deports Detainees Before They Have the Opportunity
to File Habeas Petitions ............................................................................................................ 4

   2.   The Government's Frequent Removal of Habeas Petitioners From the
Jurisdiction in Which They Filed Their Habeas Petitions Shows That This
Court Could Not Expect the Government to Refrain From Deporting Detainees
Even After They Have Filed Habeas Petitions .......................................................................... 5

      i. The Rumeysa Ozturk Case ............................................................................................. 5

      ii. The Badar Khan Suri Case .......................................................................................... 7

   3.   The Government's Failure to Disclose Timely, Accurate Information
Regarding the Location of Detainees Makes it Difficult for a Court to
Determine Whether it Possesses Jurisdiction to Hear a Habeas Case ...................................... 9

CONCLUSION .............................................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................................... 11

**LOCAL RULE 105.12(h) DISCLOSURE STATEMENT**

Amicus Curiae Lawyers Defending American Democracy (LDAD) is a non-partisan, tax-exempt 501(c)(3) organization. LDAD is not owned by any parent corporation nor does any publicly held company own 10 percent or more ownership in LDAD. Amicus Curiae Maryland Lawyers Defending American Democracy (MD-LDAD) is an LDAD affiliate state chapter whose purpose is to promote and advance the mission of LDAD in Maryland.

Amicus Curiae Lawyers Society for the Rule of Law Institute (SRLI) is a non-partisan, tax-exempt 501(c)(4) organization. SRLI is not owned by any parent corporation nor does any publicly held company own 10 percent or more ownership in SRLI.

**IDENTITY AND INTEREST OF AMICI CURIAE**

LDAD, its Maryland chapter, MD-LDAD, SRLI and Judge J. Michael Luttig file this amicus brief in support of defendants' motion to dismiss and in opposition to plaintiffs' motion for preliminary injunction. LDAD is a non-profit, non-partisan organization devoted to encouraging the legal profession to enforce and uphold principles of American democracy and the rule of law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them. LDAD has a significant interest in this case because plaintiffs' complaint and motion for preliminary injunction undermine basic principles of American democracy and the rule of law.

SRLI is a non-profit, non-partisan organization dedicated to the defense of the rule of law, the Constitution, and American democracy, from a traditionally conservative perspective. Upholding the authority and independence of the federal judiciary, as a vital check and balance in

our Constitutional system, lies at the heart of SRLI's mission. SRLI has a significant interest in this case because it raises a direct challenge to the essential role of federal courts.

Judge J. Michael Luttig is a former United States Court of Appeals Judge for the Fourth Circuit, whose jurisdiction includes the District of Maryland. As such, Judge Luttig has a particular interest in seeing that his former colleagues are not subjected to frivolous litigation by the U.S. Department of Justice and the Attorney General whose only purpose is to further harass, intimidate, and threaten the federal courts because they have, under the Constitution, ruled against the president and his administration.

A motion for leave to file this amicus brief is attached.

## SUMMARY OF ARGUMENT

The Standing Order is a modest exercise of this Court's inherent authority to manage its dockets and exercise its constitutional responsibilities. This authority is particularly important in cases challenging governmental action, where separation-of-powers considerations are paramount. The government's attempt to invalidate the Standing Order represents an assault on these considerations and the rule of law.

The nature of this assault is confirmed by the government's pattern of conduct in recent immigration cases. Through precipitous deportations and concealment of information about where it is confining detainees, the government seeks to prevent detainees and deportees from accessing the courts and the courts from adjudicating their claims. The Standing Order provides a brief window during which this Court can inquire into the relevant facts, nothing more. It is a necessary element of the judiciary's constitutional role as an equal branch of government.

## ARGUMENT

**The District Court Properly Exercised Its Inherent Authority in Response to Governmental Conduct Likely to Deprive the Court of Jurisdiction**

Courts have the inherent authority to issue administrative orders to manage their dockets. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This proposition would be unremarkable and uncontested in litigation between private parties. It is no less so when the government is a party. Such judicial authority in no way impinges on executive authority under Article II of the Constitution; rather, it is simply a recognition of the judicial authority of the courts as an equal branch of government under Article III of the Constitution. The defendant district court here exercised that authority by adopting a Standing Order that effectively imposes a brief administrative stay prohibiting the government from removing any non-citizen habeas petitioner located in Maryland from the continental United States for two business days after the filing of the petition.  Rather than abide by this Standing Order, the government brought this extraordinary action in an attempt to defeat the ability of the district court to determine its jurisdiction by conducting a preliminary review of such habeas petitions. At bottom, the government asserts the right  to preempt this Court's jurisdiction over habeas petitions by summarily deporting detainees before this Court even has time to determine whether it has jurisdiction, much less to consider the merits of the habeas petition.

The government's position in this case, and the underlying conduct that gave rise to the Standing Order, threaten the separation of powers and the rule of law by depriving non-citizen detainees of access to the courts and the courts of their constitutional authority to adjudicate cases and controversies.

As shown below, the Standing Order provides a brief but necessary period of breathing room so that the court can determine whether a habeas case may proceed. The Order does not

decide any case on the merits or even whether the court does have jurisdiction. A habeas petitioner's right to be heard, of course, does not mean the right to win. But the government does not have the right to avoid any judicial scrutiny of the petition.

Defendants' memorandum of law comprehensively addresses the inherent authority of the courts to enter administrative orders such as the one at issue here. Amici therefore focus on the government's conduct that created the need for the Standing Orders: playing what amounts to a shell game to prevent courts from reviewing its actions.

1. **The Government Deports Detainees Before They Have the Opportunity to File Habeas Petitions**

In the Kilmar Abrego Garcia case, the facts of which are well known and need not be recounted here, the Fourth Circuit addressed precisely this point. The court of appeals rejected the government's emergency request for a stay pending appeal of this Court's order that the government take all available steps to "facilitate" Abrego Garcia's return from El Salvador as soon as possible. Writing for a unanimous panel, Judge Wilkinson began by stating that the government was "asserting the right to stash away residents of this country in foreign prisons without the semblance of due process that is the foundation of our constitutional order." *Garcia v. Noem*, 2025 LX 202536, at *2 (4th Cir. Apr. 17, 2025). Further, he opined that "[t]his should be shocking not only to judges, but to the intuitive sense of liberty that Americans far from courthouses still hold dear." *Id*. Specifically regarding habeas, Judge Wilkinson wrote that "'[f]acilitation' does not sanction the abrogation of habeas corpus through the transfer of custody to foreign detention centers in the manner attempted here." *Id*. at *4. The government's position, he continued, "would reduce the rule of law to lawlessness and tarnish the very values for which Americans of diverse views and persuasions have always stood." *Id*. Finally, Judge Wilkinson warned that such clashes between the Executive and the Judiciary would leave both weaker, stating: "The Judiciary will

4

lose much from the constant intimations of its illegitimacy, to which by dent of custom and detachment we can only sparingly reply. The Executive will lose much from a public perception of its lawlessness and all of its attendant contagions." *Id*. at 8.

> **2. The Government's Frequent Removal of Habeas Petitioners From the Jurisdiction in Which They Filed Their Habeas Petitions Shows That This Court Could Not Expect the Government to Refrain From Deporting Detainees Even After They Have Filed Habeas Petitions**

Although the government deported Abrego Garcia before he sought habeas relief, the government's conduct in other cases provides no assurance that it would refrain from deporting a detainee even after they filed a habeas petition. The cases discussed below show that the government transferred detainees from jurisdiction to jurisdiction within the United States after they had filed habeas petitions.

### i. The Rumeysa Ozturk Case

Rumeysa Ozturk, a Turkish national, was a student at Tufts University when her student visa was revoked on March 21, 2025. The Department of Homeland Security's Immigration and Enforcement (ICE) arrested her near her residence in Somerville, Massachusetts at 5:25 p.m. on March 25, 2025; took her to Methuen, Massachusetts, arriving at 6:22 p.m.; then departed with her to Lebanon, New Hampshire. From there, at 9:03 pm,  ICE began transporting her to an ICE facility in St. Albans, Vermont. At 10:02 p.m. – while Ozturk was en route to St. Albans – Ozturk's attorney, who had unsuccessfully attempted to locate and speak with her, filed a habeas petition in the District of Massachusetts. At 10:55 p.m., the Massachusetts court ordered that Ozturk not be moved outside Massachusetts without advance notice. The court stated that "[i]n order to give the court an opportunity to consider whether it has subject-matter jurisdiction, and if so to determine the validity of the habeas petition, the court may order [the] respondent to preserve the status quo." *Ozturk v. Trump*, – F. Supp. 3d –, 2025 WL 1145250, at *2 (D. Mass. Apr. 18, 2025). The next

morning, March 26, 2025, ICE transported Ozturk to an airport in Burlington, Vermont. From there she was placed on a plane to Alexandria, Louisiana. After landing there at 2:35 p.m., Ozturk was transported by ICE to the South Louisiana Correctional Facility.

Ozturk's attorney had checked ICE's Online Detainee Locator System (ODLS) (locator.ice.gov) several times between the evening she was first detained and the next afternoon, to no avail. *Id*. at *3. Ozturk's attorney's inquiries to ICE's Enforcement and Removal Operations division in Burlington, Massachusetts, and Homeland Security's Investigations unit in Boston, Massachusetts, about Ozturk's location went unanswered. *Id*. That same day, a representative of the Turkish consulate went in person to ICE's offices in Burlington, Massachusetts to inquire about her whereabouts, but was told that ICE had no responsive information. *Id*. Later that same day, Ozturk's attorney called the Chief of Defensive Litigation in the Civil Division at the United States Attorney's Office in the District of Massachusetts and emailed an Assistant U.S. Attorney (AUSA) in that office to ask about Ozturk's location (and to inform them that Ozturk did not have the asthma medication she needed with her when she was detained). Both responded they did not know where she was. *Id*. Ozturk's attorney emailed them again that afternoon and was told they were still attempting to obtain information about Ozturk's location. *Id*.

Faced with the government's failure to tell her where it was holding her client, Ozturk's attorney filed an emergency motion with the district court to order the government to disclose Ozturk's location and allow her to speak with her attorney. The motion noted that the attorney had just been informed by a U.S. Senator that Ozturk was in Louisiana, but had not received confirmation from ICE or the government's counsel. At 3:27 p.m. on the day after Ozturk was first detained, the AUSA informed Ozturk's attorney that she had been transferred to Louisiana that morning and was en route to a detention facility. After several emails were exchanged between the

AUSA and Ozturk's attorney, Ozturk finally was able to speak with her attorney at 9:45 p.m. –
more than 24 hours after she had first been detained. *Id*. By that time, she was over 1,500 miles
away from her residence.

The District of Massachusetts transferred Ozturk's habeas petition to the District of
Vermont. Although the government opposed jurisdiction in both districts, the latter ordered the
government to return Ozturk to Vermont. The government appealed to the Second Circuit and
asked for an emergency stay of the transfer order pending appeal. The Second Circuit rejected the
stay request, ruling that "any confusion about where habeas jurisdiction resides arises from the
government's conduct during the twenty-four hours following Ozturk's arrest." *Ozturk v. Trump*,
136 F.4th 382, 390 (2d Cir. 2025).

The same pattern of conduct by ICE is seen in *Khalil v. Joyce*, – F. Supp.3d –, 2025 WL
972959 (D.N.J. Apr. 1, 2025), and *Suri v. Trump*, 2025 LX 18922 (E.D. Va. May 6, 2025). The
*Suri* case is particularly relevant because it arose in the Fourth Circuit, which issued a decision in
the case.

### ii. The Badar Khan Suri Case

Suri, an Indian national, is in the United States on an exchange visa to study at Georgetown
University. ICE arrested him outside his apartment in Rosslyn, Virgina, on March 17, 2025, and
the same pattern of government conduct described above in *Ozturk*, and described in the court's
decision in *Khalil*, ensued. Suri ultimately landed in a detention center in Texas. *Suri*, *supra*, at
*6-13. The district court for the Eastern District of Virginia ordered ICE to release Suri from
detention in Texas on his personal recognizance and return him to Virginia pending disposition of
his habeas petition. The government appealed to the Fourth Circuit and requested that the district

court's order be stayed pending appeal. The Fourth Circuit rejected the stay request. *Suri v. Trump*, 2025 LX 287836 (4th Cir. July 1, 2025).

The Fourth Circuit noted that the ODLS did not show Suri's location in Texas until the day after his habeas petition was filed in Virginia. *Id*. at 13. The court opined that the government's "apparent goal in moving [Suri] was to make it difficult for his counsel to file the [habeas] petition and to transfer him to the Government's chosen forum." *Id*. at *24-25. Based on the principle that an equitable remedy should not be given if the moving party has not acted equitably, the majority concluded "that is the situation here." *Id*. at 25. But for the district court's decision, the Fourth Circuit opined, the government's "deliberate choice would have deprived the petitioner of any meaningful opportunity to contest his detention prior to removal to a distant jurisdiction." *Id*. at *26. Permitting the government to "undermine habeas jurisdiction by moving detainees without notice or accountability reduces the writ of habeas corpus to a game of jurisdictional hide-and-seek." *Id*. at *26.

In dissent, Judge Wilkinson conceded that "Mr. Suri has significant equitable factors in his favor." *Id*. at *32. He dissented, however, based primarily on the potential for duplicative litigation occurring simultaneously before an immigration court and a federal district court, noting that "direct appeals are often thought a more desirable route to justice than collateral attacks." *Id*. at *31.

The *Ozturk*, *Khalil*, and *Suri* cases illustrate that the government has transferred detainees to locations far from where they were arrested and originally detained. And the government has argued that those transfers deprived the courts where habeas was originally filed of jurisdiction. Thus, a court presented with a habeas petition cannot expect the government to refrain from deporting the petitioner any more than it could expect the government to refrain from transporting

a habeas petitioner located in Maryland to Texas. Moreover, in *Trump* v. *J.G.G.*, 145 S. Ct. 1003, 1006 (2025), the Supreme Court held that detainees under the Alien Enemies Act, such as Abrego Garcia, are entitled to notice that they are subject to deportation under the Act "within a reasonable time and in such manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs."

The Standing Order simply facilitates implementation of the Supreme Court's decision. This is particularly important given the rise in immigration arrests in Maryland, from approximately 3.7 per day in 2024 to 9.8 per day since January 2025, according to data from the Deportation Data Project.

### 3. The Government's Failure to Disclose Timely, Accurate Information Regarding the Location of Detainees Makes it Difficult for a Court to Determine Whether it Possesses Jurisdiction to Hear a Habeas Case

If the cases described above were not enough to show the need for the Standing Order, the gaps and deficiencies in ICE's policies and procedures, which frustrate attorneys' best efforts to locate detainees, certainly do. Some detainees held by ICE "may not be entered into the ODLS immediately after they are detained, depending on processing and upload time," and some detainees in custody less than 48 hours may not even be in the system. locator.ice.gov. Further, ICE's ODLS website cautions that "ODLS does not provide information about transfers that are planned or in progress. Once a person is transferred and booked into another ICE detention facility, ODLS will be updated with that information." Thus, the ODLS may show that a detainee is located in Maryland even though the detainee may already be en route to another state--or country. Moreover, ODLS "does not reveal whether a person was removed [from the United States];" the system "will only reveal information if a person is currently in ICE custody." And as for how current that information is, the website states that it "may be anywhere from 20 minutes to eight

hours old." Therefore, as shown in the cases discussed above, it can be difficult if not impossible for attorneys to obtain accurate – or any – information about a detainee's location on a timely basis. As a result, attorneys, despite all due diligence, may sometimes file a habeas petition in the wrong jurisdiction.

The Court's Standing Order allows a brief time for the parties and the Court to ascertain the jurisdictional facts necessary in this class of habeas proceedings, and to correct any jurisdictional errors before deportation renders any such efforts moot.

## CONCLUSION

The Standing Order is a necessary and proper exercise of this Court's authority under Article III and a vital aspect of its constitutional duty as an equal branch of government. For that reason and the others stated above and in defendants' memorandum of law, LDAD, SRLI, and Judge Luttig urge the Court to uphold the separation of powers and the rule of law by denying plaintiffs' motion for preliminary injunction and granting defendants' motion to dismiss.

Respectfully submitted,

/s/ H. Mark Stichel
H. Mark Stichel  (D. M. Bar No. 02939)
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
(443) 379-8987 (t)
(443) 379-4013 (f)
hmstichel@rkwlawgroup.com

/s/M. Natalie McSherry
M. Natalie McSherry (D. M. Bar No. 00144)
750 E. Pratt St., Suite 1100
Baltimore, MD 21202
(410) 752-6030 (t)
nmcsherry@kg-law.com
Counsel for Amici Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025, I electronically filed this amicus brief with the Chief Deputy Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/H. Mark Stichel
H. Mark Stichel (MD Bar No. 02939)