# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

UNITED STATES OF AMERICA, *et al.*,

                    Plaintiffs,

    v.

CHIEF JUDGE GEORGE L. RUSSELL III, in his
official capacity, *et al.*,

                  Defendants.

No. 1:25-cv-02029

---

## COMBINED REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    This Court Has Jurisdiction, and This Lawsuit is the Appropriate Vehicle for Challenging the Orders. ............................................................................................... 2

II.   Defendants' Immunity Arguments Are Unsupported by Precedent. ...................................... 9

   A.   Sovereign Immunity Does Not Bar the Claims Against the Court. ................................... 9

   B.   Judicial Immunity Does Not Bar the Claims Against the Judges and Clerk. .................... 11

III.  The Complaint States a Claim, and the Government is Likely to Succeed on the Merits. .... 12

   A.   The Government Has a Cause of Action Under *In re Debs*. ......................................... 13

   B.   The Orders Cannot Be Justified As Directing Entry Of Administrative Stays. ................ 15

   C.   The Orders Are Procedurally Invalid. ...................................................................... 19

   D.   The Orders Exceed District Courts' Authority in Immigration Matters. ......................... 21

IV.   The Equitable Factors Favor a Preliminary Injunction. ..................................................... 24

CONCLUSION .................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025) ................................................................................................... 21

*Abbott v. Perez*,
  585 U.S. 579 (2018) ....................................................................................................... 24

*Akinro v. Blake*,
  2007 WL 3020186 (D. Md. June 8, 2007) ..................................................................... 12

*Alam v. Nielsen*,
  312 F. Supp. 3d 574 (S.D. Tex. 2018) ........................................................................... 23

*All. for Hippocratic Med. v. FDA*,
  78 F.4th 210 (5th Cir. 2023) .......................................................................................... 15

*Arizona v. United States*,
  567 U.S. 387 (2012) ....................................................................................................... 13

*Ass'n of Am. RRs. v. Hudson*,
  --- F.4th ---, 2025 WL 2011675 (4th Cir. July 18, 2025) ............................................... 8

*Atchison v. U.S. Dist. Cts.*,
  190 F. Supp. 3d 78 (D.D.C. 2016) ................................................................................. 10

*Attorney-General v. Corp. of Poole*,
  (1838) 41 Eng. Rep. 7 (High. Ct. Ch.) ............................................................................ 5

*Baylson v. Disciplinary Bd. of Sup. Ct. of Pa.*,
  764 F. Supp. 328 (E.D. Pa. 1991) ................................................................................... 6

*Bolin v. Story*,
  225 F.3d 1234 (11th Cir. 2000) ...................................................................................... 12

*Brown v. Crawford Cnty.*,
  960 F.2d 1002 (11th Cir. 1992) ........................................................................................ 6

*Butz v. Economou*,
  438 U.S. 478 (1978) ........................................................................................................11

*Carter v. Clark*,
  616 F.2d 228 (5th Cir. 1980) ............................................................................................ 2

*Custer v. Pan Am. Life Ins. Co.*,
   12 F.3d 410 (4th Cir. 1993) ......................................................................... 6

*CX Reinsurance Co. Ltd. v. Johnson*,
   977 F.3d 306 (4th Cir. 2020) ....................................................................... 6

*In re Debs*,
   158 U.S. 564 (1895) ................................................................................... 13

*Demore v. Kim*,
   538 U.S. 510 (2003) ................................................................................... 22

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ................................................................................... 22

*Efstathiadis v. Holder*,
   752 F.3d 591 (2d Cir. 2014) ....................................................................... 17

*Forrester v. White*,
   484 U.S. 219 (1988) ....................................................................................11

*Gonzalez-Pablo v. Mason*,
   2025 WL 1648366 (S.D. W. Va. June 10, 2025) ....................................... 23

*Heckman v. United States*,
   224 U.S. 413 (1912) ................................................................................... 13

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) ............................................................................ 20, 21

*Mack Trucks, Inc. v. EPA*,
   682 F.3d 87 (D.C. Cir. 2012) ..................................................................... 20

*Miranda v. Garland*,
   34 F.4th 338 (4th Cir. 2022) ...................................................................... 24

*M.P.S.C. v. U.S. Customs & Border Protection*,
   60 F. Supp. 3d 1156 (D.N.M. 2014) ........................................................... 22

*Myers v. United States*,
   272 U.S. 52 (1926) ..................................................................................... 24

*N.C. Growers' Ass'n v. UFW*,
   702 F.3d 755 (4th Cir. 2012) ..................................................................... 20

*Newsome v. Merz*,
  17 F. App'x 343 (6th Cir. 2001) ........................................................... 12

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................. *passim*

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ...........................................................................11

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................ 4

*Russell v. Hug*,
  275 F.3d 812 (9th Cir. 2002) ........................................................ 2, 10

*Sanitary Dist. of Chi. v. United States*,
  266 U.S. 405 (1925) .......................................................................... 13

*Scripps-Howard Radio, Inc. v. FCC*,
  316 U.S. 4 (1942) .............................................................................. 19

*Sheldon Whitehouse v. U.S. Dist. Ct. for Dist. of R.I.*,
  53 F.3d 1349 (1st Cir. 1995) ........................................................ 2, 10

*S.L.V. v. Rosen*,
  2021 WL 243442 (W.D. Tex. Jan. 25, 2021) ................................... 23

*Smith v. Scalia*,
  44 F. Supp. 3d 28 (D.D.C. 2014) ...............................................10, 11

*Stern v. Supreme Jud. Ct. for Com. of Mass.*,
  16 F. Supp. 2d 88 (D. Mass. 1998) ...................................................11

*Stern v. U.S. Dist. Ct. for Dist. of Mass.*,
  214 F.3d 4 (1st Cir. 2000) ............................................................ 2, 10

*Strickland v. United States*,
  32 F.4th 311 (4th Cir. 2022) ......................................................... 9, 10

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) .................................................................. 5, 24

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .......................................................................... 24

*Trump v. J.G.G.*,
145 S. Ct. 1003 (2025).................................................................................. 21

*United States v. Am. Bell Tel. Co.*,
128 U.S. 315 (1888).................................................................................. 13

*United States v. City of Jackson*,
318 F.2d 1 (5th Cir. 1963).......................................................................... 13

*United States v. Mitchell*,
463 U.S. 206 (1983).................................................................................. 10

*United States v. San Jacinto Tin Co.*,
125 U.S. 273 (1888).................................................................................. 13

*United States v. Texas*,
143 U.S. 621 (1892).................................................................................. 13

*United States v. Texas*,
144 S. Ct. 797 (2024)................................................................................ 19

*United States v. Zingsheim*,
384 F.3d 867 (7th Cir. 2004)........................................................................ 7

*Vijender v. Wolf*,
2020 WL 1935556 (D.D.C. Apr. 22, 2020)...................................................... 23

*Williams v. United States*,
50 F.3d 299 (4th Cir. 1995)........................................................................ 10

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967).................................................................................. 13

**<u>Statutes</u>**

5 U.S.C. § 553(b)(B)................................................................................... 20

8 U.S.C. § 1252(a)(5)................................................................................. 22

8 U.S.C. § 1252(b)(9)................................................................................. 22

8 U.S.C. § 1252(e)(2)................................................................................. 22

8 U.S.C. § 1252(f)(1)................................................................................. 21

28 U.S.C. § 1345......................................................................................... 3

28 U.S.C. § 2071 ........................................................................................... 5, 6

28 U.S.C. § 2071(a) ........................................................................................ 5

28 U.S.C. § 2071(c)(1) .................................................................................. 5, 6

28 U.S.C. § 2071(e) .................................................................................... 19, 21

28 U.S.C. § 2071(f) ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 83 ........................................................................................... 6

**Other Authorities**

33 Fed. Prac. & Proc. Judicial Review § 8355 (2d ed.) ............................................. 10

## INTRODUCTION

For hundreds of years, the federal courts have employed a handful of traditional remedies to protect parties' rights while litigation is pending. Those traditional tools—temporary restraining orders, preliminary injunctions, and stays—are few but powerful. They have sufficed in all manner of cases and throughout emergencies, upheavals, and times of war.

In May, the District of Maryland added a new remedy to that short list: an automatic, unsolicited injunction of potentially indefinite duration that—as its defense of the rule only confirms—violates time-honored standards for the entry of equitable relief. That innovation was supposedly prompted (according to Defendants' brief) by the Executive Branch's use of the Alien Enemies Act to remove aliens from the country. That does not explain the Orders, which apply to *all* immigration-related habeas petitions. Nor does it come close to justifying them. American history has seen more sweeping executive actions and more pronounced surges in litigation, but none of those developments justified an impulse to automate emergency injunctive relief. To take just one example: courts faced a surge of fast-paced, high-stakes emergency litigation at the beginning of the COVID-19 pandemic—a truly "unprecedented" period, to borrow Defendants' favorite word—but injunctions were not automatically issued to every plaintiff. Indeed, if *any* district court in the nation has ever adopted a standing order approximating those at issue here, Defendants are silent about it.

None of Defendants' arguments against the government's request for relief or for dismissing this lawsuit can overcome the Orders' invalidity. The form of this lawsuit enjoys substantial support in precedent and represents the cleanest way to resolve the government's legal challenges to the Orders. The justiciability and immunity concerns raised by Defendants have not posed barriers to past challenges (on which this suit is modeled) to local rules and standing orders.

And Defendants, tellingly, make little more than a perfunctory effort to defend the Orders' substantive legality.

Lastly but critically, the ongoing harms caused by the Orders outweigh any alleged harms to Defendants from granting the government's requested relief. Even after this lawsuit commenced and the government moved for injunctive relief, Defendants continued to enter the Amended Standing Order in new cases. Those actions add to the government's and public's ongoing harms. The Court should enter a preliminary injunction and deny the motion to dismiss.

## ARGUMENT

I.    **This Court Has Jurisdiction, and This Lawsuit is the Appropriate Vehicle for Challenging the Orders.**

Defendants' lead response to this lawsuit is to exclaim that it is "unprecedented." ECF No. 25 (Opp.) 1, 9-10. Setting aside that "unprecedented" does not entail "improper" or "non-justiciable," that criticism might merit consideration if it were accurate. It is not. Defendants cannot dispute that Department of Justice officials, U.S. Attorneys, and others have, over the years, brought numerous facial challenges to local rules and standing orders of district courts. *See, e.g.*, *Russell v. Hug*, 275 F.3d 812, 816-23 (9th Cir. 2002); *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 11 (1st Cir. 2000); *Sheldon Whitehouse v. U.S. Dist. Ct. for Dist. of R.I.*, 53 F.3d 1349, 1353 (1st Cir. 1995); *Carter v. Clark*, 616 F.2d 228, 231 (5th Cir. 1980); *see generally* ECF No. 14 (PI Mot.) 11 (collecting cases). They also cannot dispute that no Fourth Circuit precedent disagrees that "the proper method for mounting a facial challenge to the validity of [a local rule] . . . is through an action for declaratory and/or injunctive relief filed in the district court." *Stern*, 214 F.3d at 11 (alterations in original) (quoting *Sheldon Whitehouse*, 53 F.3d at 1353). And Defendants cite no authority holding that such a facial challenge is non-justiciable. Although they try out a few theories for why this Court should go out on a limb and so hold, none has merit.

2

**1.** The premise of Defendants' "vehicle" theory of non-justiciability, *id.* at 14, is not clear. Defendants do not argue that the government lacks standing; nor could they, because the government is "ENJOINED" each time one of the Orders is entered. ECF No. 14-3 (Ex. C) at 2. Defendants do not argue that this case is not ripe; nor could they, because the Orders harm the government by interfering with sovereign prerogatives and by impeding immigration enforcement on the ground. Defendants also do not argue that this Court lacks subject-matter jurisdiction; any such argument would be precluded by Congress's express grant of jurisdiction over "all civil actions . . . commenced by the United States." 28 U.S.C. § 1345. And although Defendants invoke the phrase "case or controversy" here and there, they do not seriously dispute that Article III's concreteness requirement is met; nor could they, given the clear existence of a ripe dispute brought by a plaintiff with standing. Moreover, Defendants cite no authority discrediting the many cases on which this lawsuit is modeled, which found the specter of advisory opinions no impediment to suits facially challenging local rules and standing orders.

Defendants' attempts to factually distinguish those cases fail. They argue that *Stern* and *Sheldon Whitehouse* "were brought by particular officers to whom the [challenged] rule was specifically directed." Opp. 18. That is no distinction from this case: the Orders here specifically direct that the "Government/Respondents, including all those acting for them or on their behalf, are ENJOINED and RESTRAINED from removing Petitioners," and they require the "Government/Respondents" to "notify appropriate officials of this Order promptly." Ex. C at 2. As explained in the Complaint and the government's preliminary-injunction motion, Plaintiff United States carries out immigration enforcement through Plaintiff DHS. PI Mot. 2. The Orders are directed at both Plaintiffs. What is more, Defendants' purported distinction based on other cases' addressing "formal rules purporting to directly regulate the actions of nonjudicial actors, rather

3

than standing orders aimed at internal judicial management," Opp. 17, go to the merits question of whether the Orders are properly considered administrative stays—they are not, as explained in Section III.B. below—and not to justiciability.

Defendants next claim that this case is meaningfully different from *Stern* and *Sheldon Whitehouse* because the "United States" is in the caption. Opp. 17-18. That argument is not serious. Defendants identify no authority holding that the United States may not sue when one of its officers or divisions could undisputedly sue or that the presence of the United States in the caption "raises distinct justiciability concerns," *id.* at 18—much less authority holding that the United States may not sue in its own behalf to protect its sovereign interests. Indeed, the United States' sovereign interests are uniquely harmed by the repeated—and continued—entry of facially unlawful orders against it. Those harms give the United States a heightened basis to sue in its own behalf. Whether it has been a named plaintiff in a similar previous case is no meaningful distinction. If the presence of the United States as a named party is unprecedented, that is because the Orders' extraordinary overreach demands an extraordinary response.

The caselaw Defendants cite about "[t]he failure of prior Administrations to attempt to wield" the "highly attractive power" of bringing a suit like this one, Opp. 23, does not apply, either. This lawsuit is no more an exercise of "power" than any litigant's suit for an adjudication of his rights. The government has come to Court as an aggrieved party seeking to settle differences. *Raines v. Byrd*, which Defendants cite as an example of disapproved "inter-branch" litigation, is not to the contrary. Opp. 15. There, the Supreme Court held that individual legislators lacked standing to challenge the Line Item Veto Act through a suit against the Treasury Secretary and Director of the Office of Management and Budget. 521 U.S. 811, 814, 818 (1997). It did not hold

that the lawsuit was improper merely because members of different branches were on opposite sides of the "v."[1]

Defendants' suggestion that the government has not shown enough harm from the Orders and should espouse an intention to violate them in particular cases, Opp. 18, is meritless. The government plainly has standing. Defendants appear to misunderstand the nature of the government's harm in this case: the harm is not the threat of contempt or other enforcement; it is the ongoing incursion on the government's sovereign interest in enforcing the nation's immigration laws. More strikingly, Defendants' theory betrays an upside-down view of the world in which filing an affirmative lawsuit is a bridge too far, but intentionally violating court orders is little more than a teeing-up exercise.

**2.** Other than their immunity arguments (which are meritless, as discussed in Section II below), the only concrete manifestation of Defendants' otherwise amorphous justiciability concern is their argument that 28 U.S.C. § 2071 "appear[s]" to bar this lawsuit. Opp. 16. But that halfhearted assertion lacks support in any authority. Start with what Section 2071 says. "No rule may be prescribed by a district court other than under this section." 28 U.S.C. § 2071(f). And rules "for the conduct of" the court's "business" "shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072." *Id.* § 2071(a). True, rules "prescribed under subsection (a) shall remain in effect unless modified or abrogated by the judicial council of the relevant circuit." *Id.* § 2071(c)(1). But the Orders were not properly "prescribed under

---

[1] On the contrary, tradition reflects that courts may entertain equitable actions brought by governmental actors to prevent other governmental actors from acting unlawfully. *See, e.g.*, *Attorney-General v. Corp. of Poole*, (1838) 41 Eng. Rep. 7 (High. Ct. Ch.) (equitable action by Crown against local officials), *aff'd sub nom. Parr v. Attorney-General*, (1842) 8 Eng. Rep. 159 (H.L.); *cf. Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025) (holding that "the statutory grant" of equitable authority in the Judiciary Act of 1789 "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception").

5

subsection (a)" because they did not go through the required pre-promulgation review. Thus, they are not valid exercises of local rulemaking authority (as further discussed in Section III.C. below and in the government's motion, PI Mot. 18-19). *Baylson v. Disciplinary Bd. of Sup. Ct. of Pa.*, 764 F. Supp. 328, 333 (E.D. Pa. 1991) ("Local rules that are not drafted pursuant to the notice and comment procedure are invalid."), *aff'd*, 975 F.2d 102 (3d Cir. 1992); *see also, e.g.*, *CX Reinsurance Co. Ltd. v. Johnson*, 977 F.3d 306, 315 (4th Cir. 2020) (noting that Federal Rule of Civil Procedure 83 "confers on district courts the authority to adopt local rules but only within stated parameters, and no local rule that falls outside those parameters 'may be prescribed by a district court'"); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (similar); *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009 n.10 (11th Cir. 1992) ("We are cognizant that *properly adopted* local rules are effective 'unless modified or abrogated by the judicial council of the relevant circuit'" (emphasis altered)). And, therefore, Section 2071's own terms do not require modification or abrogation by the judicial council here.

Equally important, neither Section 2071 nor other relevant provisions say anything that takes judicial review off the table. Indeed, the district court in *Baylson* considered and thoroughly rejected the argument that it could not "pass on the procedural validity of . . . local rules" because "the Judicial Improvements Act and the Federal Rules vest exclusive authority to do so in the Judicial Council of the Circuit." 764 F. Supp. at 334. The court noted that "[c]ourts regularly have entertained challenges to local rules on a variety of grounds." *Id.* at 335 (collecting cases). And "[n]othing in the language of the Federal Rules or section 332 [of the Judicial Improvements Act, authorizing judicial councils to review and abrogate local rules] evinces a newly devised intent to divest the judiciary of that long-standing authority." *Id.* The court then cited another textual clue for judicial review's continued availability. Specifically, "section 2073, which establishes the

method for promulgating Rules of Procedure and Evidence under section 2072, states that procedural deficiencies do not render such Rules invalid." *Id.* "The absence of a parallel provision regarding district court rulemaking under section 2071 is additional proof that Congress did not immunize local rules from judicial examination for procedural regularity." *Id.* The Court should follow *Baylson*'s reasoning. Indeed, Defendants' own brief seems to be internally inconsistent regarding Section 2071's text: it argues that facial review is foreclosed but that a district court may "refus[e] to apply a rule in a particular case" and the Fourth Circuit may "invalidat[e] the rule on appeal." Opp. 16. Why those exercises of judicial review—equally unmentioned by Section 2071(c)—would be available if facial review is not is left unexplained.

Although Defendants also rely on *United States v. Zingsheim*, that case does not support their Section 2071 theory. 384 F.3d 867 (7th Cir. 2004). It held that mandamus was not the proper vehicle for addressing a facial challenge to a standing order where the government could (and did) appeal the district court's adverse decision applying the standing order. *Id.* at 870. Although also noting that the Judicial Council "could evaluate . . . concerns on application by the Executive Branch," the court did not hold that was the only route to challenge the rules. *Id.* In any event, this case does not arise in the mandamus posture, and the *Zingsheim* court did not opine at all on the propriety of a facial suit for declaratory and injunctive relief brought in the district court. If Defendants' reading of that case were correct, the many courts that have entertained facial challenges to local rules and standing orders should not have done so. Yet they did.

**3.** With no valid doctrinal argument that this lawsuit is improper, Defendants argue that the government should challenge the Orders only on defense—through piecemeal motions practice in individual cases where the Orders are entered. But although such challenges would certainly be meritorious, they might face justiciability headwinds and would disserve judicial economy. *See* PI

Mot. 21. In addition to those discussed in the government's motion, two hurdles might frequently arise. First, in many cases subject to the Orders, Title 8's jurisdictional bars strip the district court of authority to act at all, which could complicate the presiding judge's ability to provide a definitive ruling on the Orders' validity. Second, in any given case, the alien petitioner may have little incentive to litigate the Orders' validity because the time and effort required to do so could as easily be spent litigating a traditional motion for equitable relief and because, if and when the alien petitioner is removed, he will no longer have a motivation (or even ability) to litigate the injunction entered under the Orders. Not to mention that the injunction's validity would likely be moot by that time. Meanwhile, the government's sovereign interests are being irreparably harmed each time one of the Orders is entered.

Appellate challenges would also pose significant difficulties. Defendants' assertion that such challenges would qualify "for the capable-of-repetition-yet-evading-review exception to mootness," Opp. 15, may have merit but glosses over a separate potential appealability problem. Specifically, Defendants lift the lid on a likely response to any individual appeal when they argue elsewhere in their brief that the Orders require the entry of mere administrative stays—which, they contend, are unreviewable. *E.g.*, *id.* at 31-32. Although wrong about the classification of the Orders (as discussed in Section III.B. below), that argument nonetheless points up a key reason why serial challenges are not a practicable option: litigating reviewability issues may well prevent courts considering such challenges from expeditiously reaching the merits. Finally, even if as-applied challenges in particular cases were a realistic alternative, the availability of such challenges would not foreclose this facial challenge. *Cf. Ass'n of Am. RRs. v. Hudson*, --- F.4th ---, 2025 WL 2011675, at *6 (4th Cir. July 18, 2025) (holding that although many claims under the Interstate Commerce Commission Termination Act "proceed on an as-applied basis," "nothing in our

caselaw should be understood to foreclose the possibility of a facial challenge" in an appropriate case). Defendants cite no authority to the contrary.

**4.** As a last effort to paint this lawsuit as untenable, Defendants argue that it has caused "disruption" that will only get worse if the suit proceeds. Opp. 24. Of course, that is not a legal argument. To the extent the Court considers it, though, it is baseless. One version of the argument—that this Court should dismiss the case to avoid the prospect of depositions or trial testimony—merits little discussion. *See id.* at 24-25. This case raises pure questions of law. Defendants' motives are not at issue; thus, even if limited discovery took place, it would bear no resemblance to the inquisition that Defendants foretell. As for a potential suit against "a court of appeals," *id.* at 25, no such suit is contemplated. In any event, such suits also have precedent. *See, e.g.*, *Strickland v. United States*, 32 F.4th 311, 320 (4th Cir. 2022). They do not "invert" the judiciary, *contra* Opp. 25; judges consider arguments that other judges acted beyond their authority on a regular basis, such as in habeas, mandamus, and en banc proceedings. And although Defendants argue that this case has "disrupted" operations, their only apparent basis for that argument is that it required recusals and required the Court, judges, and clerk to retain counsel. *Id.* at 24. The Fourth Circuit has a process for such occasions—followed in *Strickland* and followed here—and, though fortunately rarely required, that process exists for a reason: sometimes it is necessary. In sum, Defendants' non-legal arguments about "disruption" should not sway the Court.

## II.    Defendants' Immunity Arguments Are Unsupported by Precedent.

### A.    Sovereign Immunity Does Not Bar the Claims Against the Court.

Defendants raise a sovereign-immunity defense only as to one Defendant: the United States District Court for the District of Maryland. Opp. 25. Thus, even if the defense were meritorious—

and it is not—it would at most knock one Defendant out of the case. It would not resolve the pending motions or any of the government's claims against the remaining Defendants.

The sovereign-immunity argument lacks merit in any event. Defendants cannot dispute that the courts in *Hug*, 275 F.3d at 816-23, *Stern*, 214 F.3d at 11, *Sheldon Whitehouse*, 53 F.3d at 1353, and numerous other facial challenges did not find those challenges barred by sovereign immunity. And they cannot dispute that the Fourth Circuit held in *Strickland* that the court itself and its chief judge did not enjoy sovereign immunity from claims that they had "acted beyond the scope of their powers and/or in an unconstitutional manner." 32 F.4th 366. Like *Strickland*, this lawsuit asserts that Defendants acted outside the scope of their authority—here, the scope as delineated both by Congress and by the Federal Rules. *See id.* Immunity does not apply.

Defendants' cases are not to the contrary. *United States v. Mitchell*, 463 U.S. 206 (1983) and *Williams v. United States*, 50 F.3d 299 (4th Cir. 1995), did not involve claims against courts; they involved claims for damages brought by private parties under the Tucker Act and Federal Tort Claims Act, respectively. Defendants' next two cases, *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 (D.D.C. 2014), *aff'd*, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015), and *Atchison v. U.S. Dist. Cts.*, 190 F. Supp. 3d 78, 88 (D.D.C. 2016), *reconsideration denied*, 240 F. Supp. 3d 121 (D.D.C. 2017), held that suits against courts for damages—not injunctive relief—were barred by sovereign immunity. *See also* 33 Fed. Prac. & Proc. Judicial Review § 8355 (2d ed.) ("Immunity, as developed by the courts, generally protects officials from claims for money damages, and not, notably, from injunctive relief or criminal prosecution."). Finally, "concern[s]" about the justiciability of lawsuits against courts that Defendants say *Stern* acknowledged, Opp. 17 n.2, were actually passing comments by the court about how "the *plaintiffs apparently became concerned* about whether the 'United States District Court for the District of Massachusetts' was an entity

that could be sued." *Stern v. Supreme Jud. Ct. for Com. of Mass.*, 16 F. Supp. 2d 88, 90 (D. Mass. 1998) (emphasis added). "To avoid an unnecessary problem, the plaintiffs moved, with the assent of the other parties, to amend the complaint by joining individually as defendants each of the active District Judges of the Court." *Id.* "That approach had the sanction of precedent." *Id.* And that approach is what the government followed here.

**B.    Judicial Immunity Does Not Bar the Claims Against the Judges and Clerk.**

Judicial immunity does not bar "prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Although Defendants argue that *Pulliam* should be read to apply only to suits against state-court judges, Opp. 27, its reasoning applies equally to the federal-defendant context. Indeed, in *Scalia*, then-Judge Jackson relied on *Pulliam* to hold that "absolute judicial immunity [did] not dispose of" claims for injunctive relief against federal judges. 44 F. Supp. 3d at 43; *cf. Butz v. Economou*, 438 U.S. 478, 500 (1978) ("There is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983.").

None of Defendants' cases holds that judicial immunity bars suits against judges to invalidate a local rule or standing order. Indeed, the nature of the challenged action—rulemaking— does not implicate the concerns underlying immunity doctrine. The Supreme Court has explained that a "'functional' approach" applies "to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Forrester v. White*, 484 U.S. 219, 224 (1988). Under this approach, judicial immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* at 227. Unlike issuing rulings in particular cases, promulgating standing orders and local rules that violate procedural and substantive

11

requirements is not a "function[]" traditionally protected by judicial immunity. Thus, courts have often ruled on challenges to local rules with nary a peep about immunity. *See* PI Mot. 11 (collecting cases). Such challenges do not implicate "core" adjudicatory functions. *See* Opp. 17. On the other hand, in the cases cited by Defendants that did recognize judicial immunity against injunctive suits, the relief sought pertained to the defendant judges' adjudicatory decisions in particular cases. *See Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001); *Bolin v. Story*, 225 F.3d 1234, 1237 (11th Cir. 2000); *Akinro v. Blake*, 2007 WL 3020186, at *1 (D. Md. June 8, 2007).

Those three cases are distinguishable in other ways as well. For example, *Newsome* was a *Bivens* suit for damages as well as injunctive relief. 17 F. App'x 343, 345 (6th Cir. 2001). Of course, this lawsuit does not seek damages, and it was not brought under *Bivens*; it is a lawsuit in which the Executive Branch seeks to vindicate unique and uniquely harmed sovereign interests in the most procedurally straightforward manner available. Moreover, *Newsome*, *Bolin*, and *Akinro* all emphasized the availability of an alternative remedy through appeal in reaching their conclusions that immunity applied. *See Newsome*, 17 F. App'x at 354; *Bolin*, 225 F.3d at 1240; *Akinro*, 2007 WL 3020186, at *1. Here, for reasons already discussed, appeal is not a realistic avenue for challenging Defendants' actions.

In sum, Defendants cite no precedent for applying judicial immunity in this case.

## III. The Complaint States a Claim, and the Government is Likely to Succeed on the Merits.

Any one of the three categories of substantive defects that the government describes in the Complaint and preliminary-injunction motion would warrant a ruling for the government on the merits. The government has proven all three. Indeed, Defendants do not even attempt to square the Orders with Rule 65's requirements, arguing instead that they are not subject to those requirements at all. As explained below, that argument is incorrect because the automatic equitable relief entered

12

under the Orders cannot be characterized as an administrative stay. Defendants' arguments regarding the Orders' compliance with the law governing local rules and with applicable immigration statutes also fail.

**A.    The Government Has a Cause of Action Under *In re Debs*.**

Under long-settled law, the government does not need a statutory cause of action to bring this lawsuit because it has an equitable one. The "general rule" is that "the United States may sue to protect its interests." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). That rule dates back to *In re Debs*, wherein the Supreme Court held that the federal government may obtain an injunction to "enforce in any part of the land the full and free exercise of all national powers." 158 U.S. 564, 582 (1895). Although *Debs* itself drew from public-nuisance cases, *see id.* at 592-93, its holding was not limited to such cases. Instead, "whenever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the Constitution are entrusted to the care of the Nation, and concerning which the Nation owes the duty to all the citizens of securing to them their common rights," then the United States may sue for equitable relief. *Id.* at 586.

The Supreme Court has recognized time and again that the United States may seek injunctions to protect its sovereign interests. Indeed, the United States has frequently done so when those interests were threatened or harmed. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012) (preemption of state immigration law); *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405 (1925) (fulfillment of treaty obligations); *Heckman v. United States*, 224 U.S. 413 (1912) (protection of tribes); *United States v. Texas*, 143 U.S. 621 (1892) (dispute over boundary); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315 (1888) (invalidation of patent); *United States v. San Jacinto Tin Co.*, 125 U.S. 273 (1888) (invalidation of land grant); *United States v. City of Jackson*, 318 F.2d 1, 15

(5th Cir. 1963) (protection of interstate commerce). Here, the United States has a sovereign interest in its ability to uniformly and expeditiously enforce the nation's duly enacted immigration laws. It may sue in equity to vindicate that interest.

Defendants' counterarguments take an erroneously miserly view of the *Debs* paradigm. The authorities they cite for the proposition that "even the United States needs 'a right of action given by some statute' (or 'a common-law right of action')," Opp. 19, arose in very different contexts or predated several relevant Supreme Court decisions countenancing *Debs*-style suits. Then, Defendants argue that the United States needs a statutory cause of action in this case because it argues in other cases that other litigants need a statutory cause of action in those other cases. Opp. 22. But whether an "implied cause of action," *id.*, is available in any given case turns on the legal context of that case. The government naturally opposes implying rights of action in many cases where the legal context precludes them. The *Debs* line of cases, however, applies uniquely to the federal government as a plaintiff or petitioner. And the government has long argued (across administrations) that it may sue under that line of cases to protect sovereign interests. *See, e.g.*, Brief for the United States as Petitioner, *United States v. Texas*, No. 21-588, 2021 WL 5029058, at *15. No statute or governing principle limits that right to sue here.

Defendants also argue that *Debs* and progeny do not apply because previous lawsuits were not brought against another branch of the federal government. Opp. 21-22. They identify no authority holding that the *Debs* cause of action is unavailable in such cases, however, and the government is aware of none. Core sovereign interests are no less implicated when another branch of government—rather than a private party—is violating them.

**B.     The Orders Cannot Be Justified As Directing Entry Of Administrative Stays.**

Defendants do not attempt to defend the Orders as lawfully directing the entry of temporary restraining orders (TROs) or preliminary injunctions. They are correct to tacitly admit that the Orders are indefensible as TROs or preliminary injunctions: The Orders do not meet the procedural or substantive requirements for either one. Instead, Defendants try to justify the Orders only as administrative stays, pointing to several courts of appeals that Defendants say have similar practices. But the orders cannot be conceived of as administrative stays, and the practices of the courts of appeals cut sharply against the Orders. Unlike the District of Maryland, those courts do not automatically issue injunctions.

**1.** The Orders do not purport to direct the entry of stays—administrative or otherwise—nor can Defendants reconceive them as stays. Most obviously, the Orders are crystal clear that they "ENJOIN[]" and "RESTRAIN[]" the government. Ex. B at 1; Ex. C at 2. They do not claim to enter a stay, and indeed never so much as use the word "stay." Defendants' defense of them as administrative stays is entirely a post hoc justification.

Even if rebranding the Orders as administrative stays were permissible, it would fail because it is incompatible with the way the Orders operate. A stay functions by "temporarily suspending" a source of legal authority. *Nken v. Holder*, 556 U.S. 418, 428 (2009). In other words, it "temporarily divest[s] an order of enforceability." *Id.* That is what distinguishes stays from injunctions and temporary restraining orders, which function *in personam* by commanding or prohibiting an action. *Id.* at 429 (injunctions "direct[] an actor's conduct"); *see, e.g.*, *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 254 (5th Cir. 2023) ("[A] stay temporarily voids the challenged authority," and "unlike with a preliminary injunction, a stay does not actively prohibit conduct").

The Orders do not function by suspending any source of legal authority. Instead, they operate by barring people from taking actions. They identify the actors on whom the Orders operate: "Government/Respondents, including all those acting for them or on their behalf." Ex. B at 1; Ex. C at 2. And they identify the actions that are prohibited: "removing Petitioners from the continental United States or altering their legal status." Ex. C at 2; *see* Ex. B. at 1 ("removing Petitioners in such cases from the continental United States"). That is "a coercive order against the Government"—a preliminary injunction, *Nken*, 556 U.S. at 429—not a stay that suspends some source of legal authority. In form and function, the orders cannot be justified as administrative stays.

**2.** The circuit rules or practices that Defendants identify as supporting the Orders in fact emphasize that the Orders are not administrative stays and lack a parallel in any other court.

First, unlike the Orders, the relevant circuit rules are actually stays. When an alien files a petition for review of a final order of removal *and* moves for a stay of removal, the First, Third, Fourth, and Ninth Circuits issue an administrative stay. 1st Cir. Loc. R. 18.0 ("When a first motion for stay of removal is timely filed"); Standing Order Regarding Immigr. Cases (3d Cir. Aug. 15, 2015) ("Upon receipt of a motion for stay of removal"); Standing Order 19-01 (4th Cir. Oct. 21, 2019) ("Upon the filing of an initial motion for stay of removal"); 9th Cir. Gen. Ord. 6.4(c)(1) ("Upon the filing of an initial motion or request for stay"). A stay of removal functions by temporarily suspending the final order of removal, which is the legal authority for removing the alien. That is a classic stay—indeed, it is the context in which *Nken* explained the distinction between stays and injunctions. As the Supreme Court made clear, a "stay of removal pending adjudication of a petition for review" is "properly termed a 'stay' because it suspends the effect of the removal order." *Nken*, 556 U.S. at 429 & n.1. "[T]emporary relief from an administrative

[removal] order—just like temporary relief from a court order—is considered a stay." *Id.* The Orders, by contrast, do not operate on a final order of removal. Final orders of removal cannot be challenged in district court, as the jurisdiction-stripping statutes make clear. *See* Section III.D.

Defendants suggest that the Second and Sixth Circuits have similar practices, but that is not accurate. The Second Circuit does not have a relevant rule and does not enter stays or other similar orders to prevent removal of an alien. Instead, "the Government's forbearance policy," not an action by the court, is what "assures that the filing of a motion to stay removal" in a pending petition for review of a final order of removal "will suffice to prevent removal." *Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014); *see* Opp. 5 (acknowledging that the Second Circuit practice involves a "forbearance agreement," not a stay or injunction). The Sixth Circuit's rule also does not resemble the Orders. Under its rule, the Sixth Circuit will *consider* expediting briefing and granting an administrative stay of removal only upon a motion for a stay and a response from the Government. *See* 6th Cir. Loc. R. 18 ("The court will decide . . . whether to administratively stay the order of removal pending resolution of the motion.").

Second, none of the circuit rules Defendants identify provides for *automatic* issuance of a stay when a petition is filed. Instead, each circuit rule applies only when an alien requests a stay of removal. 1st Cir. Loc. R. 18.0 ("When a first motion for stay of removal is timely filed"); Standing Order Regarding Immigr. Cases (3d Cir. Aug. 15, 2015) ("Upon receipt of a motion for stay of removal"); Standing Order 19-01 (4th Cir. Oct. 21, 2019) ("Upon the filing of an initial motion for stay of removal"); 6th Cir. Loc. R. 18 ("When filing a motion for a stay of removal"); 9th Cir. Gen. Ord. 6.4(c)(1) ("Upon the filing of an initial motion or request for stay"). That is unlike the Orders, which provide for an automatic injunction upon the filing of a habeas petition, whether the alien requests immediate relief or not. And it underscores that no other court has (to

17

the best the government can determine) found anything like the Orders to be necessary, either in the past or now.

Third, experience with the circuit rules reflects both that they invite improper filings seeking to take advantage of the rules and that basic screening before issuing a stay is feasible. The First, Third, and Sixth Circuits expressly provide for basic screening of a motion or petition for review before an administrative stay issues. 1st Cir. Loc. R. 18.0 (requiring a "timely" stay motion); Standing Order Regarding Immigr. Cases (3d Cir.) (requiring evaluation of whether "(1) the petition for review is timely filed; (2) venue is proper in the Third Circuit; (3) the order appealed is arguably final; and (4) the Court has authority to review the challenged order"); 6th Cir. Loc. R. 18 (requiring a response from the government regarding contemplated timing of removal before the court "decide[s] … whether to administratively stay the order of removal"). Those screening provisions are critical for avoiding manipulation of the automatic stay. The Third Circuit regularly screens out plainly meritless petitions, for example. *See, e.g.*, *Cedant v. U.S. Att'y Gen.*, No. 25-1918 (3d Cir. May 16, 2025) (denying administrative stay because "the petition for review appears both to have been filed in the wrong venue and to be grossly untimely"). In the Ninth Circuit, where no comparable screening occurs, aliens file frivolous petitions for review to trigger a stay and disrupt imminent removal. In one week last September, for example, the Government was forced to move to dissolve not one but *two* stays. *See Melendez-Ayala v. Garland*, No. 24-5774 (9th Cir. Sept. 24, 2024) (granting emergency motion to dismiss petition for review that belonged in the Fifth Circuit); *Flores-Enriquez v. Garland*, No. 24-5878 (9th Cir. Sept. 30, 2024) (same). Far from preventing fast-paced emergency litigation, the Orders invite it by creating a demonstrable risk of abuse and refusing to conduct even the basic screening that other courts have successfully employed.

Lastly, administrative-stay authority in courts of appeals and the Supreme Court does not justify administrative stays in the district courts, which present distinct questions. The Supreme Court has explained that stays are a traditional part of "[a]n *appellate* court's power." *Nken*, 556 U.S. at 426 (emphasis added); *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942) ("[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment *pending the outcome of an appeal*" (emphasis added)); *see also United States v. Texas*, 144 S. Ct. 797, 798 (2024) (observing that the Supreme Court and "[t]he courts of appeals" issue administrative stays, with no mention of district courts). It is telling that Defendants do not identify a single district court that has ever adopted a similar practice, or cite a single source suggesting that *district courts* have traditional equitable authority to enter automatic relief that no party has requested and with no consideration of the court's jurisdiction, the merits, or traditional equitable factors.

In sum, the Orders cannot be justified as administrative stays or by the practices of any other circuit. Defendants identify no similar rules, practices, or orders that could justify the entry of automatic orders, injunctive in nature, without consideration of the traditional standards and without a request by any party as a matter of traditional equitable principles. And they attempt no defense of the Orders as TROs or preliminary injunctions. The Orders are unlawful.

### C.    The Orders Are Procedurally Invalid.

The Orders are also procedurally invalid, as local rules adopted without mandatory notice and comment. Mot. 18-19. Defendants do not contest that the Orders were adopted without notice and comment. They instead argue that the Orders were permissibly promulgated without notice and comment under the "immediate need" exception to that requirement. 28 U.S.C. § 2071(e); Opp. 36-37.

That argument fails. The Orders did not invoke the "immediate need" exception. *Cf. N.C. Growers' Ass'n v. UFW*, 702 F.3d 755, 768 (4th Cir. 2012) (stating that "the contemporaneous agency record must manifest plainly the agency's reliance on the exception in its decision to depart from the required notice and comment procedures"). And even if they could invoke the exception after the fact, Defendants do not identify anything that "qualif[ies] as an immediate need that justifies dispensing with the notice and comment procedures required by federal law" for the Orders. *Hollingsworth v. Perry*, 558 U.S. 183, 194 (2010). The Supreme Court has analogized the "immediate need" exception to the APA's good-cause exception. *Id.* (citing 5 U.S.C. § 553(b)(B)). That exception is "narrowly construed." *N.C. Growers' Ass'n*, 702 F.3d at 767. The only "immediate need" Defendants invoke (in their brief, not in the Orders) is the use of the Alien Enemies Act (AEA) to remove aliens, but the Orders apply in *all* habeas cases filed by aliens detained in Maryland, not just in AEA cases. Courts have used the ordinary tools of equity to afford emergency relief for centuries. They could have sufficed for a few more weeks during a comment period, too.

Tellingly, Defendants never argue otherwise. Instead, the Amended Standing Order says that the "recent influx" of habeas petitions "has created scheduling difficulties and resulted in hurried and frustrating hearings." Ex. C at 1. Scheduling difficulties and hurried and frustrating hearings do not amount to an "immediate need" that could justify a departure from the statutory mandate of notice and comment. *See, e.g.*, *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (rejecting invocation of good-cause exception that did not "stave off any imminent threat to the environment or safety or national security," or "remedy any real emergency at all"). Courts have often faced tremendous volumes of litigation without needing to invoke the "immediate need" exception.

Even if there were an immediate need and the Orders had invoked it, "the issuing court must 'promptly thereafter afford . . . notice and opportunity for comment.'" *Hollingsworth*, 558 U.S. at 191 (quoting 28 U.S.C. § 2071(e)). As far as the government is aware, Defendants have not done even that in the two-plus months that the Orders have now been in effect. They have not provided a "prompt[]" opportunity for comment.

### D.    The Orders Exceed District Courts' Authority in Immigration Matters.

The Orders are also facially invalid because they violate the prohibition on issuing non-individualized relief that interferes with the execution of a litany of immigration statutes. *See* 8 U.S.C. § 1252(f)(1). And they are invalid as applied in nearly every case because interlocking jurisdictional bars and channeling provisions leave district courts with authority to hear vanishingly few immigration matters via habeas petitions. Mot. 16-18 (collecting these provisions).

Defendants argue that *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) (per curiam), refutes the government's jurisdictional-bar arguments, but their theory is wrong on multiple levels. First, it attacks a strawman: the government did not argue that district courts may not "'intervene in immigration matters' through habeas petitions *at all*." Opp. 35. More importantly, *J.G.G.* does not salvage the Orders. *J.G.G.* involved deportations under the AEA—outside the context of the comprehensive statutory immigration scheme on which the government's arguments here are based. (*A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1366 (2025) (per curiam), on which Defendants also rely, was also an AEA case.) As the Supreme Court held, habeas is available to challenge the legality of detention in that context. But AEA deportations represent a tiny number of removals and a tiny fraction of immigration litigation. Defendants barely defend the Orders' consistency

with the Immigration and Nationality Act (INA)—which governs the vast majority of cases—underscoring that the Orders should at absolute minimum be narrowed to apply only to AEA cases.

The traditional primary role for the immigration courts—with review in courts of appeals—in protecting the interests of aliens highlights the Orders' extraordinary nature. *See* PI Mot. 17. So does the Orders' apparent application to expedited removals—the process in which efficiency is generally most important and judicial review generally least available. *See* 8 U.S.C. § 1252(e)(2) (habeas petition limited to "determinations of . . . whether the petitioner is an alien"; whether the petitioner was ordered removed under [section 1225(b)(1)]"; and "whether the petitioner" is lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum). When the Supreme Court upheld this regime, it explained that an alien subject to expedited removal could not invoke habeas to seek broader procedural protections than those provided by statute. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). But the Orders will operate to scramble and delay expedited removal by serving as a magnet for those seeking to delay execution of expedited-removal orders. *See Demore v. Kim*, 538 U.S. 510, 530 n. 14 (2003) (noting that under a prior statutory scheme, "when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation").

Defendants' remaining arguments do not move the needle. Although Defendants seek to leverage a concession at a district-court hearing eleven years ago into a for-all-time agreement that courts may enter stays while considering their own jurisdiction, Opp. 24, that concession says nothing about whether the automatic equitable relief contemplated by the Orders is authorized. It is not. In the case Defendants cite, *M.P.S.C. v. U.S. Customs & Border Protection*, the petitioner had at least moved for a stay of removal. 60 F. Supp. 3d 1156, 1160 (D.N.M. 2014). And the other

purportedly "routine[]" stays issued by district courts in immigration cases and cited by Defendants, Opp. 28-29, were predicated on requests for emergency relief or other factors specific to those cases; they were not issued automatically. *See Gonzalez-Pablo v. Mason*, 2025 WL 1648366, at *1 (S.D. W. Va. June 10, 2025) (noting that court entered stay after petitioner filed emergency motion for TRO); *S.L.V. v. Rosen*, 2021 WL 243442, at *1 (W.D. Tex. Jan. 25, 2021) (noting that court entered stay "following a brief hearing addressing the motion and jurisdiction"); *Vijender v. Wolf*, 2020 WL 1935556, at *1 (D.D.C. Apr. 22, 2020) (noting that court entered stay after asylum seeker "filed a motion for an emergency stay of removal"); *Alam v. Nielsen*, 312 F. Supp. 3d 574, 577 (S.D. Tex. 2018) (noting that court entered stay "[i]n recognition of [a] jurisdictional question's complexity").[2]

By contrast, the Orders require relief automatically whether or not the petitioner requests it—and whether or not any facts in the record satisfy the mandatory equitable factors. More fundamentally, sweeping authority to halt immigration enforcement whenever jurisdiction is in question flies in the face of *Nken*, which requires probability of success—not possibility of jurisdiction—for injunctive relief. 556 U.S. at 426. Finally, that district courts have "limited habeas jurisdiction . . . to resolve factual disputes about" a narrow set of questions in the context of expedited removal, Opp. 35, does not help Defendants: the Orders require stopping removals regardless of whether a given petition raises any of those questions.

For these reasons and those stated in the government's preliminary-injunction motion, the Orders are invalid under jurisdictional bars in Congress's comprehensive immigration system.

---

[2] To the extent those district courts characterized the equitable relief they entered as "administrative stays," they were simply incorrect, for the reasons discussed in Section III.B.

IV.    **The Equitable Factors Favor a Preliminary Injunction.**

As explained in the government's motion, the public interest and the equities favor entering a preliminary injunction. PI Mot. 19-23. Most saliently, the balance of harms heavily favors an injunction. Even a small delay as a result of an unlawful order is irreparable harm to sovereign interests and the public interest in enforcement of duly enacted immigration law. *See, e.g.*, *CASA*, 145 S. Ct. at 2562; *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *Miranda v. Garland*, 34 F.4th 338, 365-66 (4th Cir. 2022). Also, the Orders intrude on core foreign-policy and diplomatic concerns. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 702 (2018). And despite Defendants' effort to minimize the interests of the voters, those interests matter too in the context of elected officeholders like the President, who holds "the mandate of the people to exercise his executive power." *Myers v. United States*, 272 U.S. 52, 123 (1926). Appeal or alternative modes of relief are not adequate remedies for those harms, for reasons already explained. *See* PI Mot. 21.

Defendants argue that removing detainees in "48 hours is plenty prompt." Opp. 39. But that is a policy judgment and not a call for courts to make. It also suggests that an invalid order is acceptable as long as it does not remain in effect too long. Defendants surely would never adopt that position as to Executive action they believe unlawful. Moreover, Defendants' hand-waving at what they view as a short delay does not account for the disruption *any* delay can cause for complicated removal operations. *See generally* ECF No. 14-1 (Baker Decl.). And although Defendants seek to discredit the government's claim of harm based on its not having challenged administrative-stay practices or similar measures in appellate courts, those measures are fundamentally different than the extra-jurisdictional relief occasioned by the Orders—as explained above. In addition, the District of Maryland presents unique circumstances because of factors like limited bed space. *See* Baker Decl. ¶¶ 7-8.

Defendants' dismissive attitude toward the delay also ignores that the Orders often remain in place longer than 48 hours. That can occur because the Orders dictate that the automatic injunction remain in place until "4:00 p.m. on the second *business* day after the filing of the Notice." Ex. C at 3 (emphasis added). If the Notice is filed on a Friday, the injunction could be in place until Tuesday at 4:00 p.m. Additionally, the "terms of th[e] Order" can be—and have been— "further extended by the presiding judge." *See id.*

Although Defendants point to examples of cases in which the Orders were entered but later lifted or in which removal within 48 hours may not have been sought, Opp. 38, those arguments ignore the inherent injury to sovereign interests that occurs every time the Orders are entered. Moreover, Defendants cannot dispute that the Orders have been entered—and extended—in at least one case in which the petitioner was outside the District of Maryland at the time of the Order's entry. *Hernandez Escalante v. Noem*, No. 25-1799 (D. Md.). Nor can they dispute that the Orders have been entered in over a dozen cases by now, including cases initiated after this case commenced. *See* PI Mot. 9 n.1 (collecting cases as of July 3, 2025); *Guzman Cruz v. Noem*, No. 25-2256 (D. Md.), ECF No. 2 (Amended Standing Order entered July 11, 2025); *Douglas v. Baker*, No. 25-2243 (D. Md.), ECF No. 2 (same); *Ageo v. Baker*, No. 25-2287 (D. Md.), ECF No. 2 (Amended Standing Order entered July 15, 2025); *Paun v. Castro*, No. 25-2351 (D. Md.), ECF No. 2 (Amended Standing Order entered July 18, 2025).[3] Those cases represent compounding

---

[3] Although Defendants argue that neither of the Orders was entered in *Cordon-Salguero v. Noem*, No. 25-1626 (D. Md.), Defendant Chief Judge Russell entered an order in that case on May 21 addressing a petition that appears to have been filed after 5:00 p.m. on May 20—and that, therefore, fell within the class of cases to which the original Standing Order applied. The *Cordon-Salguero* order contained much of the language from the original Standing Order and granted relief without including analysis of required equitable factors or awaiting a response from the government. No. 25-1626, ECF No. 2. The *Cordon-Salguero* order is an example of the same faulty brand of relief as the Orders, and it appears that Defendants have recently entered slightly modified versions of the Amended Standing Order in other cases as well. *E.g.*, *Cardona v. Noem*, No. 25-2262 (D. Md.),

irreparable harm to the Executive Branch and the public interest. Defendants' bold suggestion that the government should simply "hav[e] at the ready a filing explaining to the presiding judge the pressing need to lift the stay immediately" in any given case, Opp. 38, gets it backwards: the burden to justify equitable relief has always been on the movant. At least until now.

On the flip side, any harms to Defendants from a preliminary injunction would be minimal. Beyond alleged separation-of-powers and docket-management concerns refuted above, Defendants identify no irreparable harms of their own; they rely on alleged harms to alien detainees. But *Nken* discredits the notion that the "relative consequences of erroneously removing an alien are worse than those of erroneously staying removal." Opp. 40; *see* 556 U.S. at 435 (holding that removal is "*not* categorically irreparable" harm (emphasis added)). Moreover, the examples of erroneously entered stays in appellate courts like the Ninth Circuit, described above, make crystal clear that automatic relief lends itself very easily to abuse.

In sum, the equitable factors resoundingly support entry of an injunction.

## CONCLUSION

The Court should enter a preliminary injunction prohibiting the Defendants as well as their successors, agents, and employees from implementing or effectuating the Standing Order and Amended Standing Order going forward. And the Court should deny Defendants' motion to dismiss.

---

ECF No. 3. This Court's intervention is needed to make clear that any such practice is substantively invalid.

Dated: August 1, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Civil Division

SARAH WELCH
Counsel to the Assistant Attorney General
Civil Division

BRENDAN MOORE
ZACHARY CARDIN
Trial Attorneys
Office of Immigration Litigation

*/s Elizabeth Hedges*
ELIZABETH HEDGES
Counsel to the Assistant Attorney General
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone: (202) 616-0929
Fax: (202) 307-8781
Elizabeth.T.Hedges@usdoj.gov

*Attorneys for Plaintiffs*

27