**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA et al.,

    *Plaintiffs*,

    v.

CHIEF JUDGE GEORGE L. RUSSELL III, in his official capacity et al.,

    *Defendants*.

Case No. 1:25-cv-2029

**REPLY MEMORANDUM OF LAW SUPPORTING
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

REPLY MEMORANDUM ................................................................................................................. 1

I.      This Case Is Nonjusticiable. ................................................................................................ 1

          A.      This Suit Is Unprecedented and Unnecessary. ......................................................... 1

          B.      The Executive Lacks a Cause of Action to Bring This Suit. ................................... 4

          C.      Defendants Are Immune From Suit. ........................................................................ 6

II.     The Executive's Claims Fail As A Matter Of Law. ............................................................. 6

CONCLUSION .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
  145 S.Ct. 1364 (2025) .................................................................................................... 7

*Abrego Garcia v. Noem*,
  2025 WL 1021113 (4th Cir. Apr. 7, 2025) ................................................................... 10

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
  501 U.S. 1301 (1991) .................................................................................................... 8

*Belbacha v. Bush*,
  520 F.3d 452 (D.C. Cir. 2008) ...................................................................................... 9

*Carter v. Clark*,
  616 F.2d 228 (5th Cir. 1980) ........................................................................................ 2

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................................................ 2

*Dellinger v. Bessent*,
  2025 WL 561425 (D.C. Cir. Feb. 12, 2025) ................................................................. 8

*Ex parte Fahey*,
  332 U.S. 258 (1947) ...................................................................................................... 3

*In re Debs*,
  158 U.S. 564 (1895) .................................................................................................. 4, 5

*In re McDonald*,
  489 U.S. 180 (1989) ...................................................................................................... 6

*Lane v. Pena*,
  518 U.S. 187 (1996) ...................................................................................................... 6

*Morrison v. Olson*,
  487 U.S. 654 (1988) ...................................................................................................... 3

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................... 7, 8

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ................................................................................................... 3, 5

*Russell v. Hug*,
  275 F.3d 812 (9th Cir. 2002) ........................................................................................ 2

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................. 6

*Stern v. U.S. Dist. Ct. for the Dist. of Mass.*,
    214 F.3d 4 (1st Cir. 2000) ...................................................................................... 1

*Trump v. CASA, Inc.*,
    145 S.Ct. 2540 (2025) ............................................................................................ 5

*United States v. Salerno*,
    481 U.S. 739 (1987) ............................................................................................. 10

*United States v. Texas*,
    144 S.Ct. 797 (2024) ........................................................................................ 7, 8

*United States v. Zingsheim*,
    384 F.3d 867 (7th Cir. 2004) ................................................................................. 2

*United Steelworkers of Am. v. United States*,
    361 U.S. 392 (1959) ............................................................................................... 5

*Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I.*,
    53 F.3d 1349 (1st Cir. 1995) ................................................................................. 1

**Statutes**

8 U.S.C. §1252(f)(2) .................................................................................................... 7

28 U.S.C. §1651(a) .................................................................................................. 8, 9

28 U.S.C. §2071(c)(1) ............................................................................................. 3, 5

**Other Authority**

Order, *Alam v. Nielsen*, No. 4:18-cv-680 (S.D. Tex. Mar. 9, 2018) ............................ 9

**REPLY MEMORANDUM**

The Executive's opposition only confirms the obvious: This suit is an unprecedented and disruptive affront to the separation of powers. The Executive's handful of supposed precursors are readily distinguishable, and the Executive has no answer to the ready alternatives of appeal or Judicial Council review. This suit is not just novel, but deeply flawed. It is non-justiciable; the Plaintiffs lack a cause of action; and the Defendants have immunity. And even if the Executive could clear all those hurdles, the suit would fail on the merits. Every court has the inherent authority to issue administrative orders to ensure that it can do its job. That includes district courts, where such temporary relief typically preserves the status quo by directing a party not to take precipitous action, rather than by delaying a mandate as is typical of appellate courts. The exercise of that inherent authority here—a modest, two-business-day hold to allow the court to open a case and assess its jurisdiction—is eminently reasonable, entirely lawful, and far less of an imposition on the Executive than comparable appellate-court stays. In short, there is no basis for the extraordinary remedy the Executive seeks, and there is every reason to deny it.

**I.      This Case Is Nonjusticiable.**

   **A.      This Suit Is Unprecedented and Unnecessary.**

   1. The Executive insists that its extraordinary lawsuit is not entirely unprecedented—because it knows that when it comes to interbranch disputes, the failure of its predecessors to employ such a powerful and disruptive tool is a sure sign that the tool is unlawful. *See* MTD.23. But the Executive's handful of supposed precursors are readily distinguishable. *Stern v. U.S. District Court for the District of Massachusetts*, 214 F.3d 4 (1st Cir. 2000), and *Whitehouse v. U.S. District Court for the District of Rhode Island*, 53 F.3d 1349 (1st Cir. 1995), both involved suits that initially targeted state ethical rules and state authorities along with federal judicial districts that had formally incorporated state ethical rules into their local rules. The presence of those state

1

defendants may explain why the First Circuit did not even pause to consider questions of justiciability. As for *Russell v. Hug*, 275 F.3d 812 (9th Cir. 2002), and *Carter v. Clark*, 616 F.2d 228 (5th Cir. 1980), those cases are even further afield, as both were suits by private litigants, and the latter named only the clerk of the court as a defendant. And all four of the Executive's supposed precursors involved administrative practices, rather than standing orders involving an exercise of the court's inherent judicial power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

Equally important, all four cases pre-dated the Seventh Circuit's decision in *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004)—which, unlike the Executive's cases, actually involved a standing order (rather than a local rule or plan for assigning CJA cases) and expressly considered the proper way for the Executive to challenge one. There, the court made clear that the Executive has two valid options, neither of which involves an unprecedented suit by the United States against an entire district court bench or a non-existent "Writ of Erasure." *Id.* at 870. The first option is to treat the standing order as a formally promulgated local rule and file an administrative challenge with the circuit Judicial Council. That administrative-review route obviates all the theoretical and practical problems of naming a United States District Court and all its judges as the defendants in an Article III lawsuit. The second option—and the one the Seventh Circuit actually employed in *Zingsheim*—was a good-old-fashioned appeal in an individual case where the standing order was applied to the Executive's detriment. *Id.* Because the rule was applied to the Executive's detriment in a plain-vanilla case or controversy, no exotic theories of executive standing or questions about the Executive's cause of action or the Judiciary's immunity arose.

An appeal here would plainly be a valid and available option for the Executive to challenge

2

the standing orders.[1]  While the Executive vaguely references "justiciability headwinds," Opp'n.7, this context is the posterchild for the capable-of-repetition-yet-evading-review rule, *see* MTD.8-9. And it is hard to credit the Executive's professed concerns with the lack of incentive for an individual habeas petitioner to litigate the question through appeal.  A habeas petitioner will have ample incentive to litigate the question when the standing orders were integral to preserving jurisdiction over her valid habeas petition.  And even if an individual petitioner is disinclined to litigate vigorously, appointing an amicus to ensure an adequate adversarial presentation on appeal is a tried-and-true option that is radically less disruptive than suing an entire district court bench, requiring recusal, the hiring of private counsel, and the assignment of an out-of-district judge.

The Executive is dismissive of all this disruption, but the Supreme Court has not been. Even in the mandamus context—another potentially less disruptive option for the Executive—the Supreme Court has emphasized the need for "limitations … to prevent harassment of judges," because "mandamus has 'the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel.'"  *Pulliam v. Allen*, 466 U.S. 522, 538 (1984) (quoting *Ex parte Fahey*, 332 U.S. 258, 260 (1947)).  Here, of course, the disruption of naming every judge in the district, the clerk of court, and the district court itself dwarfs the potential harassment and unfortunate consequences of mandamus.  And the disruption would be that much greater if the next suit targets an entire circuit court.  The Executive denies any present intention to file such a suit, but nothing in its theory limits it to suing district courts, and "Trust us" is not a comforting response when it comes to broad assertions of executive power.  *See Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting).  If this suit is allowed to be the first of its kind, it will not be the last.

---

[1] There is likewise no obstacle to the Executive pursuing relief from the Judicial Council.  Not only did *Zingsheim* involve a standing order, but to the extent the Executive believes the standing order here is an improperly promulgated local rule, 28 U.S.C. §2071(c)(1) provides a remedy.

3

The bottom line is that this suit is without precedent and wreaks unprecedented havoc on the Judiciary. Indeed, not even the Executive can identify a single case in which it has sued in the name of the United States against an entire court, district, circuit, or otherwise. The prior suits by a U.S. Attorney are distinguishable on other grounds, *see* MTD.17-18; *supra* pp.1-2, but they avoid the affront of the Executive suing the Judiciary in the name of the United States. The difference is not just formal. When the Executive sues in the name of the United States, it is seeking not to vindicate any normal injury-in-fact (as in an appeal), but to vindicate the sovereign interests of the United States. But in our system of separated and divided powers, the sovereignty of the United States is not reposed in any one branch. It is shared among three branches—and disputes among them are not mediated by having the Legislature sue the Executive or the Executive sue the Judiciary. Disputes are instead mediated, and the law is developed, in the context of ordinary cases and controversies, which this extraordinary lawsuit is decidedly not.

### B. The Executive Lacks a Cause of Action to Bring This Suit.

Among the many fatal defects with this suit, no statute creates a cause of action to bring it. *See* MTD.20-25. The Executive does not dispute that. It instead insists that *In re Debs*, 158 U.S. 564 (1895), obviates the need for the Executive to identify a cause of action. But *Debs*—a case in which the Executive enlisted the aid of the courts to ensure that its own exercise of executive power was valid—is miles removed from this case. Indeed, the Court there upheld an injunction against individuals obstructing the mails and rails only after first holding that the Executive had the authority to remove such obstructions unilaterally. That is the opposite of the situation here, where the Great Writ prohibits the exercise of wholly unilateral executive action, and the Executive is trying to interfere with steps the Judiciary thinks necessary to protect its own constitutional prerogatives and the liberty of individuals. Thus, *Debs* provides no authority for the proposition that the Executive can sue the Judiciary for injunctive relief without a cause of action. The absence

4

of a statutory cause of action exacerbates the separation-of-powers problems with this suit because the Executive lacks any imprimatur from Congress, and Congress had no opportunity to limit such suits to narrow contexts or specialized fora, as with 28 U.S.C. §2071(c)(1).

Nor is this a context where the Executive can fall back on some cause of action implied from the common law or long practice.[2] The one thing all nine Justices could agree on in *Pulliam* was that there was no action available to enjoin the King's Bench at common law, *see Pulliam*, 466 U.S. at 529 ("At the common law itself, there was no such thing as an injunction against a judge."); *id.* at 549 (Powell, J., dissenting) ("suits for injunctive relief against a judge could not be maintained either at English common law or in the English courts of equity"), and, as demonstrated, there is zero historical tradition of allowing suits to enjoin federal judges for their judicial actions, *see* MTD.22-25. Indeed, the Executive cannot come close to mustering the precedents and antecedents found insufficient to justify universal injunctions in *Trump v. CASA, Inc.*, 145 S.Ct. 2540 (2025). There can be an interesting debate over whether the complete absence of comparable suits is best explained by the absence of a cause of action to seek an injunction in this setting or by the presence of judicial immunity. But, either way, this suit cannot proceed.

There is one last problem with the Executive's reliance on *Debs*. The Supreme Court there made clear, as it has before and since, that, "[a]s a rule, injunctions are denied to those who have adequate remedy at law." *Debs*, 158 U.S. at 583. As noted, *see supra* pp.2-3, the Executive has ample alternative avenues to challenge the standing orders beyond this uniquely disruptive bid for injunctive relief against the U.S. District Court for the District of Maryland and its entire bench.

---

[2] *Debs* can also be understood as grounded in the government's traditional authority to seek the abatement of public nuisances. *See, e.g.*, *United Steelworkers of Am. v. United States*, 361 U.S. 392, 186 (1959) (Frankfurter, J., concurring) (describing this as "[t]he crux of" *Debs*). But that alternative understanding cannot aid the Executive here. Effectuating the Great Writ is hardly a public nuisance, and there is no comparable history of enjoining or abating judicial acts.

### C. Defendants Are Immune From Suit.

The Executive all but admits that the court itself has sovereign immunity from being subjected to this suit. The Executive cites no "statutory text" "unequivocally" waiving the Court's sovereign immunity, *see Lane v. Pena*, 518 U.S. 187, 192 (1996), and instead points only to *Stern* and *Whitehouse*, *see* Opp'n.10. But those cases never grappled with the sovereign immunity issue, so their "drive-by jurisdictional rulings … have no precedential effect" even within the First Circuit, let alone elsewhere. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

As for the individual Defendants' judicial immunity, the Executive insists the "reasoning" of *Pulliam* (allowing injunctions against state-court judges under §1983) "applies equally to the federal-defendant context." Opp'n.11. But court after court has disagreed after *Pulliam*, *see* MTD.28 (collecting cases), and with good reason. The whole point of the majority opinion was to distinguish between the ability of a superior court (like the King's Bench, or a federal court) to enjoin an inferior court (like ecclesiastical courts, or state courts), but not vice-versa. Moreover, as noted, every member of the *Pulliam* Court (the majority plus the four dissenters favoring *full* judicial immunity) recognized that there was no such thing as an injunction against judges of the King's Bench, whose decisions could only be overturned via the normal appellate process. That is why federal courts have consistently recognized that federal judges have immunity from suits that seek to enjoin their judicial acts. This Court should not break from that long line of precedent.

## II. The Executive's Claims Fail As A Matter Of Law.

Even if this suit could proceed, it would fail as matter of law on the merits, as the standing orders are a mine-run exercise of the federal courts' "inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re McDonald*, 489 U.S. 180, 184 n.8 (1989). The Executive argues that the orders cannot be justified as administrative stays because they technically function as injunctions against

6

action, not stays of orders. *But cf.* Complaint ¶61 (complaining about effect of "[a]n automatic stay"). But any technical difference just reflects the difference between trial courts (which typically act in the absence of some prior, status-quo-altering order or mandate) and appellate courts. In either court, the *sine qua non* of valid administrative relief is what it seeks to accomplish—*i.e.*, to "buy[] the court time to deliberate," *United States v. Texas,* 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay), before issuing even a preliminary assessment of the merits—not whom or what it addresses to buy that brief interval. The Supreme Court made that plain in *A.A.R.P. v. Trump*, where it concluded that it could "properly issue temporary *injunctive* relief" barring the removal of a putative class of aliens "to preserve [its own] jurisdiction pending appeal" without "address[ing] the underlying merits of the parties' claims regarding the legality of removals." 145 S.Ct. 1364, 1368-69 (2025) (per curiam) (emphasis added). Here, too, the standing orders "simply ensure[] that the Judiciary can decide *whether* … detainees may be lawfully removed … *before* they are in fact removed." *Id.* at 1370 (Kavanaugh, J., concurring). Whether they are best understood as imposing a stay, an injunction, or some combination of the two makes no difference, as the All Writs Act does not confine courts to entering one or the other "to preserve [their] jurisdiction." *Id.* at 1369 (per curiam).[3]

That distinguishes the All Writs Act from the statutory provision in *Nken v. Holder*, 556 U.S. 418 (2009), the principal case on which the Executive relies, which restricted only efforts to "enjoin the removal of any alien," 8 U.S.C. §1252(f)(2). That statutory text forced the Court to confront whether the term "enjoin" should be read narrowly to exclude a stay pending appeal in

---

[3] As a practical matter, the relief the standing orders entail actually is more akin to a stay, as it will have a real-world impact only in cases where the Executive has issued *some* sort of order or directive to remove the petitioner or change his or her status, which the temporary relief effectively "hold[s] … in abeyance pending review." *Nken*, 556 U.S. at 427.

7

that particular context. *See Nken*, 556 U.S. at 427. The All Writs Act, by contrast, preserves federal courts' inherent power to "issue *all* writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. §1651(a) (emphasis added)—a power long understood to encompass both stays and injunctions, *see, e.g.*, *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J.). Moreover, the whole point of drawing the distinction in *Nken* was *to preserve* the power of courts to maintain the status quo to give themselves an interval to deliberate. *Nken* thus is a uniquely poor precedent to support the Executive's effort to deny Defendants of precisely that interval.

The issue is thus not whether the standing orders are classified as stays or injunctions, but whether their effects "linger for so long" that they can no longer be justified as administrative efforts to preserve the status quo to allow the courts to deliberate. *Texas*, 144 S.Ct. at 800 (Barrett, J.); *see also Dellinger v. Bessent*, 2025 WL 561425, at *2 (D.C. Cir. Feb. 12, 2025) (Katsas, J., concurring) (whether relief becomes a functional preliminary injunction turns on "how intrusive the interim order is and how long it runs"). Whatever the outer bound of appropriate administrative relief, the Executive cannot seriously claim that two business days exceeds it—especially when the Executive itself frequently requests administrative relief of much longer duration. *See, e.g.*, *Texas*, 144 S.Ct. at 800. Indeed, the much longer periods allowed by comparable provisions in appellate courts nationwide underscores the reasonableness of the orders here. *See* MTD.3-5.

The Executive tries to distinguish the appellate orders on the ground that they "appl[y] only when an alien requests a stay." Opp'n.17. But that just reflects that petitions for review do not necessarily involve a removal proceeding at all; they could involve a status change, a visa denial, or any number of other issues where a stay would be superfluous. A stay request in that context thus serves to alert the court to the prospect of imminent removal. Habeas petitioners, by contrast,

8

have already been detained and are almost invariably seeking habeas relief precisely because they want to challenge their impending removal. Making them request a stay to alert the court of that fact would be redundant. The Executive complains that the appellate standing orders are not really "automatic" because some (but not all) entail minimal venue, and occasionally timeliness, inquiries. Opp'n.17. But they still grant relief without considering the four-factor test, which seems to be the Executive's real gripe, and there is no comparable timeliness inquiry to conduct in the habeas context (the relief sought is triggered by current custody, not resolution of another proceeding), and the Amended Standing Order contemplates the same minimal venue screening, as it applies only to a petition filed "on behalf of a[] detainee located in the District of Maryland," Amended Standing Ord. 2025-01 at 2. It also requires prompt notice to the U.S. Attorney's Office, *id.*, thus allowing a quick objection to a factually inaccurate or plainly abusive petition.

The Executive is thus left suggesting that district courts lack the power to issue any administrative relief *at all*. Opp'n.19. That argument is impossible to reconcile with the All Writs Act or the long historical tradition underlying it, both of which make plain that *all* federal courts, not just appellate courts, can issue relief as "necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. §1651(a); *see also, e.g.*, *Belbacha v. Bush*, 520 F.3d 452, 455-46 (D.C. Cir. 2008) ("under the All Writs Act, 28 U.S.C. §1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction"); MTD.28-29.[4] To be sure, standing orders of this nature have been more common in the courts of appeals. But that is because district courts did not have to confront a high volume of fast-paced removal proceedings until the

---

[4] *See also, e.g.*, Order, *Alam v. Nielsen*, No. 4:18-cv-680 (S.D. Tex. Mar. 9, 2018), ECF 9 ("Finding its jurisdiction in question, and finding an order necessary to maintain the status quo until that question is resolved, this Court ORDERS that Defendants are hereby temporarily enjoined and prohibited from removing or transferring Plaintiff.").

Executive began invoking a statute that the Supreme Court has now held requires detainees to proceed via habeas petitions in district court. *See* MTD.5-7. The Executive briefly suggests that the orders could "be narrowed to apply only to AEA cases," Opp'n.22, but the orders' validity in AEA cases would mean the dismissal of this facial challenge, not a narrowing of relief. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). And to the extent the Executive complains about the orders' application to specific contexts where it thinks district courts lack *any* jurisdiction, *see* Opp'n.21-22; *but see* MTD.35-36, that just underscores why the Executive should proceed through an as-applied challenge in an individual case or controversy, rather than through a broadscale facial attack that requires a showing that the orders are invalid in *all* their applications.

Finally, because the standing orders are an exercise of inherent powers preserved by the All Writs Act, not of delegated rulemaking authority, they were not required to undergo notice and comment. *See* MTD.16. But even if they were, the "immediate need" exception would be readily satisfied. The Amended Standing Order explains that it was issued in response to a "recent influx of habeas petitions" challenging "imminent removal" proceedings "filed after normal court hours and on weekends and holidays." Amended Standing Ord. 2025-01 at 1. And the entire premise of this suit is that the Executive has an "immediate need" to remove certain aliens, which makes it rather rich for the Executive to insist that courts must undergo a full-blown notice-and-comment proceeding before they can take even modest steps to respond to that professed urgency in kind. Surely "reciprocal respect for the roles of the Executive and the Judiciary," *Abrego Garcia v. Noem*, 2025 WL 1021113, at *8 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring), entitles *both* branches to take prompt action to ensure that they can fulfill their constitutionally assigned roles.

## CONCLUSION

The Court should dismiss this unprecedented and uniquely disruptive lawsuit.

        Respectfully submitted,

        s/Andrew C. Lawrence
        PAUL D. CLEMENT*
        ERIN E. MURPHY*
        MATTHEW D. ROWEN*
        ANDREW C. LAWRENCE
        CLEMENT & MURPHY, PLLC
        706 Duke Street
        Alexandria, VA 22314
        (202) 742-8900
        paul.clement@clementmurphy.com

        *Counsel for Defendants*

        * admitted *pro hac vice*

August 11, 2025

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the service required by Federal Rule of Civil Procedure 5(a) has been made on August 11, 2025, by filing this document with the Court's electronic-filing system.

s/Andrew C. Lawrence
ANDREW C. LAWRENCE
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
andrew.lawrence@clementmurphy.com

*Counsel for Defendants*
