```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                         NORTHERN DIVISION

 3   UNITED STATES OF AMERICA, et al., )
                                       )
 4             Plaintiffs,             )
          vs.                          )
 5                                     ) CIVIL NO.:
     CHIEF JUDGE GEORGE L. RUSSELL III,) 1:25-cv-02029-TTC
 6   in his official capacity, et al., )
                                       )
 7             Defendants.             )
     _____)
 8

 9                                     Baltimore, Maryland
                                       August 13, 2025
10                                     9:30 a.m.

11               TRANSCRIPT OF PROCEEDINGS
                        MOTIONS HEARING
12          BEFORE THE HONORABLE THOMAS T. CULLEN

13   For the Plaintiffs:

14        ELIZABETH T. HEDGES, Esquire
          SARAH WELCH, Esquire
15          Department of Justice - Civil Division
            950 Pennsylvania Ave NW
16          Washington, DC 20530

17        ZACHARY A. CARDIN, Esquire
            Department of Justice - Civil Division
18          405 5th Street NW
            Washington DC, DC 20001
19
     For the Defendants:
20
          PAUL D. CLEMENT, Esquire
21        ANDREW LAWRENCE, Esquire
          MATTHEW D. ROWEN, Esquire
22        ERIN E. MURPHY, Esquire
          KEVIN WYNOSKY, Esquire
23          Clement & Murphy, PLLC
            706 Duke Street
24          Alexandria, VA 22314

25
          (Computer-aided transcription of stenotype notes)
```

1           P R O C E E D I N G S

2       (9:32 a.m.)

3           THE COURT:  Good morning.  You-all may be seated.

4   Mr. Carrick, would you call the case for us.

5           THE CLERK:  Yes, Your Honor.  Calling the case of the

6   United States of America, et al., versus Russell, et al., case

7   number TTC-25-cv-2029.  The case is called for a preliminary

8   injunction hearing.

9       If plaintiff counsel would put their appearance on the

10  record, please.

11          MS. HEDGES:  Thank you.  Elizabeth Hedges from the

12  Department of Justice on behalf of the United States.

13          MR. CLEMENT:  Paul Clement for the defendants.

14          THE COURT:  All right.  Good morning, Counsel.

15      I thought it would be helpful for the Court to briefly

16  summarize why we're all here today and then we'll go from

17  there.  In terms of relevant procedural history, I'll note that

18  on June 24th, the plaintiffs, the United States of America and

19  the Department of Homeland Security, filed suit against Chief

20  U.S. District Judge Russell, all of the active and senior

21  district judges in the District of Maryland, the Clerk of

22  Court, and the District of Maryland, the court itself.

23      The plaintiffs seek declaratory and injunctive relief from

24  two standing orders entered by Chief Judge Russell on behalf of

25  the court in May, both of which prohibited federal immigration

1    officials from removing or altering the legal status of any

2    alien detainee who had filed a petition for writ of habeas

3    corpus in that court.  In a nutshell, the plaintiffs argue that

4    these orders thwart its plenary authority to police immigration

5    matters.  Specifically, the plaintiffs contend that the orders

6    are unlawful because, first, they automatically afford

7    preliminary injunctive relief to a special class of litigants,

8    removable aliens, without requiring them to satisfy the

9    prerequisites for this type of equitable relief, including

10   likelihood of success on the merits of their habeas petitions.

11        Second, that the standing orders are ultra vires or beyond

12   the power of the court given the limited statutory authority of

13   district courts generally to review immigration removals,

14   particularly those carried out under the INA rather than the

15   Alien Enemies Act; and, third, that in issuing the orders, the

16   Court violated well-established procedures for promulgating

17   local rules.

18        Following the filing of the complaint, the plaintiffs

19   moved for a preliminary injunction under Federal Rule of Civil

20   Procedure 65(a).

21        The defendants have filed a motion to dismiss and a

22   response in opposition to the motion for a preliminary

23   injunction.  In seeking dismissal across the board, they

24   contend that this matter presents a nonjusticiable dispute

25   between two co-equal branches of government.  Specifically,

1    they assert that the judicial defendants are absolutely immune

2    from suit, and the court itself is shielded by sovereign

3    immunity.

4        Alternatively, the defendants argue that the plaintiffs

5    have failed to state a claim because there is no express

6    statutory or implied right of the executive branch to sue the

7    judiciary or any coordinate branch of the federal government.

8        As for the preliminary injunction, if the Court reaches

9    the merits, the defendants contend that the defendants [sic]

10   fall well short of satisfying the requirements, including

11   demonstrating likelihood of success on the merits or

12   demonstrating irreparable harm in the absence of a preliminary

13   injunction.

14       Both motions, the motion to dismiss and the motion for

15   preliminary injunction, have been fully briefed, and they are

16   now ripe for the Court's decision.  So today the Court intends

17   first to take up the motion to dismiss, and then we will

18   address the merits or the motion for preliminary injunction.

19   Obviously if the Court grants the motion to dismiss, it's not

20   going to reach the merits on a preliminary injunction.

21       My tentative plan was to spend about an hour on each

22   motion.  As to the motion to dismiss, we'll hear from the

23   defendants, then hear from the Government and then have a reply

24   from the defendants, and then we'll reverse that on the

25   preliminary injunction.  But that assumes that the Government

intends to rely on the evidentiary record that would support --

submitted in support of its motion for preliminary injunction,

specifically, the standing order themselves and I believe the

declaration of Ms. Baker, the ERO official.

So let me ask just for planning purposes, does the

Government intend to supplement the evidentiary record?  Do you

want me to take any additional evidence, do you have any

witnesses, or are we just going to be arguing this thing?

**MS. HEDGES:**  Right, Your Honor.  We are not bringing

additional evidence today.

**THE COURT:**  Great, all right.  Okay.  So I think that

takes us to the motion to dismiss and, Mr. Clement, I'll be

happy to hear from you.

**MR. CLEMENT:**  Would you like me to address you from

here or from the podium?

**THE COURT:**  You can use the podium.

**MR. CLEMENT:**  Thank you, Your Honor.

Good morning, Your Honor.  May it please the Court.  On

the motion to dismiss, as Your Honor has already indicated, we

have a number of threshold arguments for why the motion to

dismiss should be granted, and then we also think it would be a

motion to dismiss granted even on the merits since we don't

think the Government has stated a claim for relief under

12(b)(6).

Starting with the arguments that I think go more to the

1    fundamentals of this case because this is, to state the

2    obvious, not an ordinary lawsuit.  Just as Your Honor walked

3    through the caption in this lawsuit, it is an extraordinary

4    caption.  The Executive Branch seeks to bring suit in the name

5    of the United States against a co-equal branch of government,

6    the entire judicial district of the District of Maryland.

7        There really is no precursor for this suit.  The parties

8    have obviously briefed the extent to which there is any

9    precedent for this kind of suit, and I think the fair answer is

10   there is none.  The closest that the Government can come are

11   these two First Circuit decisions, but I think those cases are

12   distinguishable on multiple levels, and I think also the

13   reasoning of the Seventh Circuit which postdates those cases is

14   actually the case -- the appellate authority that's most

15   directly on point.

16        **THE COURT:**  So let's start with that.  You're talking

17   about the *Whitehouse* and the *Stern* precedents on the First

18   Circuit.

19        **MR. CLEMENT:**  Yes.

20        **THE COURT:**  In those cases, the courts explicitly

21   held that the proper method for mounting a facial challenge to

22   a court rule is through an action for declaratory injunctive

23   relief filed in the federal district court.  Help me understand

24   those two cases.  Particularly there's no discussion, as a

25   threshold matter, judicial immunity or sovereign immunity; I

believe individual district judges were sued and the court

itself was a named defendant.

    Help me understand.  The Fourth Circuit has never held as

much.  These cases, at most, would be persuasive authority for

this particular court.  You say they can be readily

distinguished.  How are they distinguished?  I want you to

focus, Mr. Clement, on the nature of the rules at issue in

those cases versus the nature of the standing orders that are

at issue in this case.

            **MR. CLEMENT:**  So thank you, Your Honor, and what I

would say is I would do Your Honor one better in the sense of

saying those cases, I don't think, really discuss any of the

threshold issues.  I think parties may not have raised it

before the Court.  Some of them are issues the court could have

raised sua sponte but didn't.  So I think they're the classic

drive-by jurisdictional rulings that aren't binding even in the

First Circuit, let alone outside the First Circuit.

    But just to get to the nub of the question about how

they're distinguishable, all of those cases involved local

rules that were formally promulgated as such.  Both of them

involved very similar sort of local rules that effectively

incorporated by reference a state bar rule prohibiting the --

sort of the U.S. attorney from having sort of certain sort of

interactions with witnesses and the like.  I think it is

because -- to give sort of credit to the First Circuit for not

1    addressing some of these jurisdictional issues, I think in both

2    cases, the original suit named some state defendants because

3    they were concerned about the state bar rule, and I think that

4    may have just got the First Circuit off the scent of some of

5    these justiciability issues that we're raising here.  I don't

6    think there would have been a problem with bringing a suit

7    against the state officials at a minimum.

8         So I think that's a big distinction just to start with.

9    Then, of course, both of those suits were brought by the U.S.

10   attorney in the name of the U.S. attorney.

11        Now I think if I'd been litigating for the district courts

12   of Rhode Island and Massachusetts, I would have said, precisely

13   because those were challenges to a local rule, that those

14   challenges were not properly before the district court and

15   should have been brought before the judicial council of the

16   First Circuit.  That argument, as far as I can tell, wasn't

17   even raised in those cases.

18        THE COURT:  Do those cases postdate the adoption of

19   2071(c) which provided the mechanism to petition the judicial

20   council directly?

21        MR. CLEMENT:  I think at least one of them does, but

22   I think both cases predate the *Zingsheim* case from the Seventh

23   Circuit.  That's where Judge Easterbrook, joined by Judge Wood,

24   really looked at this issue and looked at the issue in the

25   context of a standing order.  That's the only case -- appellate

1    case that we have, I think, that really actually involves

2    something that's directly analogous which is a standing order.

3    And what Judge Easterbrook said for the Seventh Circuit there

4    is essentially there's at least two other ways to bring the

5    challenge that would, I think, foreclose this kind of action.

6         The first, and the one that the Court ultimately used in

7    that Court in the *Zingsheim* case, was just an ordinary appeal.

8    But the second thing that Judge Easterbrook went on at some

9    length to discuss is that to the extent the Government's theory

10   was that the standing order there was an improperly promulgated

11   local rule, that its remedy really belonged with the judicial

12   council, not with the district court in the first instance.

13        Obviously the Seventh Circuit decision is not directly

14   binding on you; it is persuasive authority, but I actually

15   think it's quite persuasive authority on this.

16        **THE COURT:**  So given the choice, go with the Seventh

17   Circuit and disregard the First Circuit?

18        **MR. CLEMENT:**  Go with the later decision that

19   actually addresses the threshold questions as opposed to the

20   drive-by jurisdictional rule of the First Circuit.  To the

21   extent you needed another tie breaker to go with Seventh

22   Circuit, the fact that case involves a standing order and not a

23   local rule, I think, is just one more reason to find that

24   decision persuasive.

25        I think one of the points though that Judge Easterbrook

1   makes for the Seventh Circuit in that case is this idea that

2   both an appeal and a kind of administrative challenge to the

3   judicial council are far less disruptive to the district court,

4   the separation of powers and everything else.  And I think I

5   only elaborate on what Judge Easterbrook said by saying some of

6   those same considerations also go to why this action -- there

7   would be no basis for preliminary injunction, and this action

8   is actually fundamentally problematic because there's just no

9   cause of action for this kind of injunction in the first place.

10  That's true historically, but it's also true in the sense that

11  the first question in any injunctive relief case is:  Do you

12  have an adequate remedy at law?

13      And the adequate remedies at law here are appeal or going

14  to the judicial council, or I suppose if the Government really

15  thinks there's some problem with an appeal, it can also go the

16  mandamus route.  The mandamus route is, of course,

17  extraordinary relief as well, but it's far less extraordinary

18  than what's at issue here.

19      So I think for all of those reasons, I think the *Zingsheim*

20  case out of the Seventh Circuit is the most persuasive

21  authority.  It is the authority that actually grapples with

22  these questions, and I would urge the Court to follow that

23  decision.

24      I think if the Court gets sort of beyond that issue and

25  wants to sort of consider kind of the next issue at least

1    logically, I think the judicial immunity question is then

2    probably next on the list.

3            On that, I'll concede that there is an issue -- not of

4    first impression but an issue that I don't think the Fourth

5    Circuit has had to wrestle with yet, and that is the question

6    of post-*Pulliam*:  Is there judicial immunity from an injunction

7    when the injunction is sought from a federal court?  I think

8    the better answer and the answer that the Ninth Circuit and the

9    Eleventh Circuit have come to in cases that really wrestled

10   with this issue --

11            **THE COURT:**  This is *Mullis* and *Bolin*?

12            **MR. CLEMENT:**  Yes, Your Honor, exactly.  Both those

13   cases wrestle with it, and I think they both come to the right

14   place at the end of the day, and that is that there is judicial

15   immunity for this kind of case.  I think if you actually go and

16   parse the *Pulliam* opinion, the majority and the four dissenting

17   justices, as we say in our briefs, the one thing they agreed on

18   is whatever is true of the King's Bench enjoining the Star

19   Chamber or the King's Bench enjoining an ecclesiastical court,

20   you just couldn't go into the King's Bench and say, "I want an

21   injunction against the King's Bench."

22            **THE COURT:**  In effect, applying that rubric, this is

23   the king suing the King's Bench and a member of the King's

24   Bench being appointed to preside over a matter involving his

25   colleagues.

1          **MR. CLEMENT:**  Absolutely.  That is --

2          **THE COURT:**  The logic undergirding *Pulliam* falls

3   apart as applied to federal district judges.

4          **MR. CLEMENT:**  Exactly.  In a way that it doesn't in

5   the context of a federal judge enjoining a state court judge

6   under the express cause of action provided by Section 1983.

7      That's another thing.  I think if you think about *Pulliam*

8   versus this case, that case you had the imprimatur of Congress

9   saying that pursuant to the reconstruction amendments, there

10  are certain situations where we, Congress, want to authorize

11  expressly a cause of action for judicial relief against state

12  officials that would include judges.  We just don't have

13  anything like that here.

14     And I think that informs the fact that the Government

15  needs a cause of action, but I think it also informs kind of

16  thinking about the judicial immunity questions here and the

17  rest.  There's just no analog to this at the common law in

18  equity and nothing that suggests that Congress has thought

19  there's some extraordinary and narrow set of circumstances that

20  would justify this kind of relief.

21          **THE COURT:**  Is *Pulliam* even good law?  Because I've

22  read a number of decisions, talks about the Federal Courts

23  Improvement Act of 1996.  If you look at the legislative

24  history, the purpose was to abrogate the holding so federal

25  courts couldn't enjoin state judges.  But if you read the text

1    of the amendment, it's not as clear.   Although I think a

2    majority of courts have said that's what that statute does, so

3    *Pulliam* really is not even precedent anymore.

4              **MR. CLEMENT:**  I think there's definitely an argument

5    to that effect.   I think it's always a little dangerous for a

6    lower court to tell the Supreme Court that one of its

7    precedents is no longer binding.   Obviously, one justification

8    for it would be an intervening act of Congress, but I think

9    probably the safer course, frankly, would be to distinguish

10   *Pulliam* which didn't deal with the federal court context.

11        The other thing that's kind of interesting about *Pulliam*

12   is one thing it's certainly predated is *Grupo Mexicano* and

13   *Trump against CASA*.  If you think about those cases -- maybe

14   this is more of an argument about the absence of cause of

15   action rather than the judicial immunity argument, they kind of

16   meet.  If you look at the Ninth Circuit case, kind of Judge

17   O'Scannlain's opinion, effectively said:  While I disagree with

18   the majority on its reasoning, I would get to the same result

19   because there's just no cause of action here.   And at the end

20   of the day, although I do think the judicial immunity argument

21   is right, I don't have a particular sort of dog in the hunt as

22   to whether the Court thinks the better argument is judicial

23   immunity or the better argument is no cause of action.   I kind

24   of think they meet in the middle.

25        If you think about all of this in light of *Grupo Mexicano*

and *Trump against CASA* where the Supreme Court in the latter

case, at the urging of the Executive Branch, has made clear

that if there wasn't a cause of action or a remedy in equity in

1789, then the federal courts have no business providing those

kind of remedies.  Well, I think the issue here is even more

lopsided than in *Trump v. CASA* in the sense that there might

have been some vague precursors of a universal injunction, but

as all nine members of the court seem to underscore in *Pulliam*,

there's just nothing like this kind of injunction against the

King's Bench or against sort of the judicial branch that you're

asking for relief.

        The other point I'd make about this -- and I want to be

conscious of the Court's interest, time and having all of

this --

            THE COURT:  I've got all of the time that we need.  I

want you-all to have a full and fair opportunity to say

whatever you want to say this morning.  I'm here all day.

            MR. CLEMENT:  Okay.  Same here, Your Honor.

Obviously I just want to be -- I'm used to having a clock

counting down in my face, so I want to be respectful of your

time.

        I did want to sort of add the point -- again, this is

something the parties have addressed in the briefing -- but the

logic of the Executive Branch's suit here would extend fully to

a suit against the Fourth Circuit.

1    THE COURT:  And they concede as much.  They say they

2  have no intention of suing the Fourth Circuit, but you have to

3  concede that if they can do this at the district court level,

4  they certainly could do it to the Fourth Circuit or another

5  appellate court, potentially the Supreme Court.

6    MR. CLEMENT:  Exactly, Your Honor.  I think the

7  Government was right to concede that.  There's nothing in the

8  theory of this lawsuit that's limited to the district court.

9  But of course if you think about this suit, Your Honor

10  presiding over the suit against the Fourth Circuit, I think it

11  would put Your Honor in an even more uncomfortable

12  circumstance, and perhaps you could solve that by getting a

13  district court judge from outside the entire circuit.  But I

14  still think it wouldn't solve the fundamental problem.

15    In some of the cases, including the various opinions in

16  *Pulliam*, they talk about one of the problems with judicial

17  injunctions is they kind of invert the normal judicial order.

18  Boy, that would be true in spades if we were sitting here in a

19  suit where I was representing the Fourth Circuit Court of

20  Appeals instead of the District Court of Maryland.

21    THE COURT:  In other words, horizontal review or

22  reverse review, the tradition of judicial review turns on its

23  head.

24    MR. CLEMENT:  Absolutely.  In ways that, of course,

25  mandamus, appeal, and an administrative action before the

1    judicial council avoid all of those problems.

2        They also avoid the problem -- I'm obviously honored and

3    happy to represent the judges of the District of Maryland and

4    the district in this matter, but retaining private counsel for

5    the judges is no ordinary matter, no easy matter.  Obviously,

6    Your Honor has traveled from Roanoke to be here.  There are all

7    these dislocations that you wouldn't have if the Executive had

8    pursued the more traditional remedies of appeal, mandamus or an

9    action before the judicial council.

10        THE COURT:  In terms of other practical

11    considerations -- and I want to ask the Government about this.

12    But let's assume I deny the motion to dismiss, I grant the

13    preliminary injunction, we set this matter for a bench trial at

14    some point in the near future, and we get into discovery.  So

15    we get into a situation where the individual judicial

16    defendants are subject to deposition.  Their internal

17    correspondence, emails and communications would be subject to

18    discovery and vice versa.  So the Secretary of the Department

19    of Homeland Security, the Attorney General of the United

20    States, potentially officials in the White House, all of their

21    correspondence and communications, the ostensible reason for

22    filing suit, potentially, the actual reasons are all at

23    issue.

24        And then inject into that the problem -- practical

25    considerations of privileges, executive privilege, judicial

1    privilege, attorney-client privilege, deliberate process

2    privilege.  How does that play out?

3                MR. CLEMENT:  I hope we never found out, Your Honor,

4    but I think everything that you've just -- kind of the litany

5    of things that could follow from this suit proceeding past

6    these preliminary stages, all of that seems to me to be fair

7    game.  There's no reason in principle, if this is treated as an

8    ordinary lawsuit as opposed to an extraordinary action that

9    should be dismissed, then all of the things that happen in an

10   ordinary lawsuit like discovery, like privilege claims, like

11   depositions and all of the rest, I think would proceed as a

12   matter of course.  And there obviously would be some kind of

13   arguments about the extent of the privileges and all of the

14   rest.

15        All of that is avoided if you sort of go the ordinary

16   routes.  I think if you went to the judicial council, I don't

17   think there would be the availability of depositions and those

18   kind of issues in that kind of administrative proceeding,

19   ordinary appeal.  There might be some debate in the briefs

20   about kind of what motivated the order or how does it apply in

21   a particular case, but you wouldn't have the ability to get

22   depositions; so too with mandamus.

23        So I think all of the alternatives that are available

24   avoid that kind of nightmare scenario.  I think that nightmare

25   scenario is part of the reason that we just don't have a

1    tradition of suits that are Executive versus Judiciary,

2    Executive versus Congress, Congress versus the Executive.

3    There's obviously more attempts at those kind of suits in the

4    Congress versus the executive sort of angle, and I think that's

5    where the law is most developed, but I think the same

6    principles kind of apply.

7        You don't really expect one branch to sue another to try

8    to vindicate its institutional interests.  There's a lot of

9    different ways to think about that; I think the justiciability

10   label sort of covers it.  But I'm not even sure the Executive

11   really properly understood, has standing here the way they

12   would in an individual appeal where the rule is being applied

13   to their detriment in a particular case.

14       Because the problem is they're asserting this very kind of

15   abstract interest just the same way that when a legislator or

16   Congress would try to sue the Executive or Executive Branch

17   agency, the Court would pour them out on the idea, no, you're

18   suing for institutional abstract injury; we're going to wait --

19   as in the later New York case -- we're going to wait for a

20   private party that has an interest in this.  We're not going to

21   let you sue in your institutional capacity.

22       I think that same logic applies to this suit, and I think

23   in large measure because of the nightmare scenarios that ensue

24   if this Court goes beyond kind of the threshold issues.

25           THE COURT:  All right.  Let's briefly turn to failure

1    to state a claim.  As I read the Government's reply brief --

2    and the Government may correct me -- but it seems like they've

3    conceded that this boils down to *Debs*; that they no longer are

4    arguing that the All Writs Act or the Declaratory Judgment Act

5    provide a basis for filing the suit, and that's correct.  But

6    they nevertheless contend that *Debs*, this 19th century Supreme

7    Court case where essentially the court held that the Executive

8    or the sovereign can sue to enjoin a public nuisance,

9    particularly one that affects interstate commerce or the U.S.

10   Mail, that somehow that authorizes this particular suit by one

11   branch of government against a coordinate branch of government.

12   So essentially the Executive becomes the sovereign and can

13   bring this type of suit.

14        I've read *Debs* a couple times.  *Debs* is a tough read, I'll

15   concede to you-all, but I'm having a hard time understanding

16   that *Debs* provides a proper foundation and a basis for this

17   suit.

18            **MR. CLEMENT:**  I would certainly agree with you on

19   everything, including it's a tough read, and the fact that I

20   don't think it provides a basis for this suit.  I think the way

21   the Government -- I think the only sort of qualification I

22   expect the Government to come up here and say is, well, we're

23   relying on *Debs* and its progeny, not just *Debs* itself.  All of

24   those cases I think are distinguishable --

25            **THE COURT:**  Because they're suing states?

1        MR. CLEMENT:  They're suing states.  They're suing --

2    I think at least one of the cases, they're suing a private

3    party, all of the rest.  None of them certainly involve kind a

4    suit against the judiciary, and I think that is a separate

5    category you'd have to have some justification for.  But I also

6    think those suits -- I'd also take a step back and say if

7    you're going to rely not just on *Debs* -- I think if you're just

8    relying on *Debs*, it doesn't get them this far.  It's just a

9    quite distinguishable case.  There's no public nuisance here or

10   anything like it.

11       As we point out in our final brief, if you take a step

12   back from *Debs*, *Debs* is a case where the theory of the Supreme

13   Court is the Executive could have unilaterally gone in and

14   cleared the rails and taken action and in a sense was doing the

15   more sort of separation-of-powers friendly and

16   liberty-protecting friendly steps of saying:  We're not going

17   to do it unilaterally.  We're going to go into court, going to

18   get an injunction, and then when you disregard the injunction,

19   we're going to bring a contempt action.

20       So that's a case where the branches are cooperating, not a

21   situation where the branches are antagonistic to one another.

22   So I think *Debs* doesn't get them there.

23       Then if you were to take a little bit of step back, at the

24   end of the day, what the Government, I think, is saying is they

25   have an implied cause of action or an inferred cause of action,

1    if you want to say the judges are the ones that are really

2    doing the inferring, but they have an implied cause of action

3    for an injunction.  If you tried to do any analysis of that,

4    you would, I think, quickly come to the conclusion that that's

5    not available here.

6         First of all, if you were thinking about it in those

7    terms, you'd probably get to something like the *Grupo Mexicano*

8    analysis and you'd say, okay, is this some sort of traditional

9    equitable remedy that would be easy for a court to imply or

10   infer?  If it's enjoining a public nuisance, you could probably

11   get there.  That's something that was happening in 1789.  But a

12   suit against the judiciary, suit against the King's Bench,

13   complete nonstarter in 1789.

14        Then, of course, if you applied the rest of the kind of

15   implied cause of action type of analysis, you'd get to the idea

16   of:  Are there special factors counseling hesitation here?

17   And, boy, are there special factors here in spades.  The Court

18   barely infers any new causes of action at all, but this seems

19   like the last context in which a court that's reluctant to

20   infer a cause of action would infer a cause of action.

21        So I think *Debs* doesn't get them there.  If you apply sort

22   of general principles, it doesn't even sort of come close, with

23   all due respect to the Government on that issue.

24             **THE COURT:**  All right.  I've interrupted you enough.

25   Anything else you want to say at this point?  I'll give you the

1    final word on the motion.

2            **MR. CLEMENT:**  I think you have my arguments.  I think

3    based on the way you're approaching it, it probably makes more

4    sense for me to address kind of the merit arguments in the

5    second half.

6            **THE COURT:**  I think so.  Thank you.

7            **MR. CLEMENT:**  Thank you.

8            **THE COURT:**  All right, Ms. Hedges.

9            **MS. HEDGES:**  Thank you, Your Honor.  I'll use the

10   podium as well if that's all right.

11           **THE COURT:**  Yeah, of course.

12       So, Ms. Hedges, one of the things about me is I don't have

13   a very good poker face.  I think you probably picked up on the

14   fact that I have some skepticism.  I want to start with

15   *Pulliam*.  You-all rely in large part on *Pulliam* as providing a

16   foundation, and then the *Whitehouse, Stern* kind of supplements

17   that.  The argument is that really this is not unprecedented;

18   at least the First Circuit 30 years ago recognized that you can

19   go to district court and challenge a district court's rule.

20       So start with that.  Start with *Pulliam* and then get into

21   this first line -- this First Circuit precedent and kind of

22   pick up where Mr. Clement left off in that respect.

23           **MS. HEDGES:**  Yes, Your Honor.  So *Pulliam* is still

24   good law and the U.S. Supreme Court has cited it as recently

25   as, I think, 2021 in the *Whole Woman's Health vs. Jackson* case.

1    In that case, the Supreme Court distinguished *Pulliam* and it

2    said there the plaintiffs sued to prevent the judge from

3    enforcing a rule of her own creation.  That's exactly what we

4    have here.

5        So to talk about the historical precedent, the historical

6    core of the judicial immunity defense, those rationales don't

7    apply to a lawsuit like this one.  I assume that's why judicial

8    immunity was never discussed in those First Circuit cases or in

9    the *Strickland* case which we also cite which is from CA4.  It's

10   because the rationale for judicial immunity is essentially to

11   protect -- I'm over simplifying a little bit -- but it's

12   essentially to protect the judge's inherent adjudicatory

13   capacity.  What we're seeing here is the use of rulemaking

14   authority albeit not through the appropriate channels.

15           **THE COURT:**  Is it rulemaking authority?  Is this

16   Judge Russell acting as an administrator promulgating a rule

17   with respect to who can appear in federal district court in

18   Maryland?  Or is this an order essentially being implemented so

19   the Court can take a breath and determine, number one, if it

20   has jurisdiction; and, number two, to make sure the parties are

21   available to actually hear the merits of that?  It seems to me

22   that's a fundamental difference.  Mr. Clement says what's at

23   issue in these First Circuit cases are rules.  These are judges

24   acting as regulators and administrators.

25       In this case, this is Chief Judge Russell entering a

standing order dealing with probably the most important writ

that a federal district court can undertake, dealing with

habeas corpus.  Isn't that a fundamental difference?

**MS. HEDGES:**  Yes, Your Honor.  So I have a few

points.  I don't think it's a fundamental difference.  We cite

a case called *Brown vs. Crawford County* out of the Eleventh

Circuit and that says -- we cite it in our briefs, and it says

basically if a practice or procedure or policy of the district

court functions as a local rule, it is a local rule.  And

there's no case law that I'm aware of to the contrary.

So this is stated to be a standing order, but it functions

as a local rule because it governs how the court manages its

business.  To Your Honor's point, I think one of the reasons

why we haven't seen that many lawsuits is because this standing

order appears to be unique.  There has never been a case -- and

this gets in the merits a little bit -- but there's never been

a case that I'm aware of where a district court has said:  You

know what we need, we need an automatic injunction in order

to -- as we're seeing in the briefing, they're saying this is a

document management exercise.

Without getting too much into the merits of whether this

is an administrative stay and it's not; this is a local rule

because it's functioning as a local rule.  It's requiring

certain things to happen in every single 2241 petition filed by

an alien detainee, and it doesn't leave the Court, in any given

1    case, discretion as to whether that order gets entered.

2            THE COURT:  So that begs the question why not file an

3    interlocutory appeal as applied in any one of these cases to

4    the Fourth Circuit, seek a stay, and then if you get an adverse

5    ruling there, go to the Supreme Court and get a ruling there?

6    If recent precedent is any guide, I think you'd already have a

7    decision.  It would have been more expeditious than the two

8    months we've spent on this in the district court.  Wouldn't it

9    have?

10           MS. HEDGES:  Your Honor, I'm not sure that that's

11    right and there's a few specific reasons why.  So, first of

12    all, as we've seen in the briefing, the other side has taken

13    the position this is an administrative stay.  So we would face

14    threshold appealability arguments that we would have to

15    litigate before we could even convince a higher court to hear

16    this.  Now I completely believe that we would certainly prevail

17    on appeal because our merits case is so strong, but we would

18    have to deal with those appealability issues.

19           Another thing that I would just point out --

20           THE COURT:  Let's talk about those appealability

21    issues that you say stand in the way.  The Supreme Court --

22    granted, it's on the so-called shadow docket -- *JGG vs. Trump*

23    and I believe *Department of Education vs. California,* just very

24    recently, the government has gone to the Supreme Court

25    appealing TROs and has won preliminary injunctive relief.  So

1    in terms of what you can appeal on an interlocutory basis, as I

2    read the law, I think you can appeal a TRO.  Help me with

3    this.

4            **MS. HEDGES:**  Right, Your Honor.  We would certainly

5    take the position in any given case that these are, in fact,

6    injunctions.  They're operating to enjoin the United States,

7    and therefore they are appealable.  However, as Your Honor I'm

8    sure is well aware, every time that these arguments have to be

9    hashed out, there are threshold arguments about whether it can

10   be classified as an injunction and so forth and so on.

11       The other thing I would point out is just the nature of

12   the interest at stake here makes even that sort of delay

13   untenable because every single time one of these orders gets

14   entered, our sovereign interests in enforcing duly enacted

15   immigration law are being inhibited.  So we have that problem.

16       We have the problem that we're going to be involved in

17   fast-paced emergency litigation over the scope of these orders,

18   whether they're valid in any given case even arguably and

19   things like that.  Another threshold question we'd have to

20   litigate is the mootness question.  So certainly capable of

21   repetition, yet evading review, is an argument that is likely

22   successful here for reasons that I think there's generally

23   agreement on.  But we would still have to litigate those

24   issues.  So there are all these things that stand in the way of

25   getting a ruling.

1          The other thing I would point out to Your Honor is that as

2     far as I know, whenever we have challenged an instance of the

3     standing order and asked a district judge in the District of

4     Maryland to lift it in a particular case, whether for

5     jurisdictional reasons or otherwise, we've been winning those

6     disputes, but it doesn't resolve the facial validity of the

7     order, and therefore the order keeps getting entered.  But that

8     creates a potential appealability problem as well --

9          **THE COURT:**  Would it be facially valid as applied in

10    Alien Enemy Act habeas petitions?

11         **MS. HEDGES:**  Your Honor, I certainly push back on the

12    use of the word "facial."  I think it's a little bit of a

13    distraction because there are a couple different meanings of

14    the word.  What I would say to Your Honor is our Section 1252

15    arguments which, again, I know this goes to the merits, but

16    those arguments do apply to INA cases.  But as far as I'm

17    aware -- and I've looked at these petitions in the cases where

18    the orders are being entered -- they're not being entered in

19    AEA cases.  In the briefing, there's the suggestion of the AEA

20    deportations are what triggered the need for this order, but

21    there aren't any in the District of Maryland.  So we're in this

22    situation where every single time the order is being entered,

23    the court doesn't have jurisdiction under the INA.

24         **THE COURT:**  It has limited habeas jurisdiction.

25         **MS. HEDGES:**  Your Honor, it has very limited habeas

1  jurisdiction in expedited removal cases, and it is limited to

2  reviewing three discrete questions --

3       **THE COURT:**  So essentially the face of the removal

4  order is this person, the person named.

5       **MS. HEDGES:**  Right, right.  Three very basic

6  threshold questions and that's the end of the district court's

7  habeas jurisdiction in an expedited removal review.  But these

8  orders go into effect --

9       **THE COURT:**  But they still have to have an

10 opportunity, right?

11      **MS. HEDGES:**  I'm sorry, Your Honor?

12      **THE COURT:**  To assess those questions, right?

13      **MS. HEDGES:**  Right, Your Honor.  To be clear, we are

14 complying with injunctions and orders in other cases that have

15 required us to give them process, and we have been giving them

16 process.  People are getting process.  They are getting the

17 opportunity to file a habeas petition.  The question here is

18 whether upon the mere filing of a habeas petition regardless of

19 whether it's asked for, an injunction gets entered restraining

20 the Executive.  Some of these cases, they don't even ask for

21 relief from removal.  A couple of them just challenge their

22 detention.

23      So we're seeing a huge problem where there's no

24 jurisdiction in the district court under the INA, and yet these

25 orders are being entered automatically without even threshold

1    screening happening.

2         So, again, I know some of this gets into the merits a

3    little, Your Honor, but I think these are unique problems that

4    we just haven't seen in other cases, and that's why we're in

5    this position.

6         But as to *Stern* and *Whitehouse*, so I believe *Stern* was

7    decided in 2000 so it was post 2071(c).

8              **THE COURT:**  *Whitehouse* was first, right?  1996-7?

9              **MS. HEDGES:**  Correct, I think it was 1995, Your

10   Honor.  And both of those cases, as Your Honor noted, there was

11   no judicial immunity problem.  The Court clearly just went to

12   the merits.

13        In *Stern* I would point out the Court even reversed the

14   district court's order saying that, well, no, I'm actually not

15   going to grant an injunction against this, and I'm not going to

16   countenance the suit because the First Circuit said this is a

17   rule that exceeded the district court's rulemaking authority,

18   and therefore it's invalid.

19        But I do want to talk about *Zingsheim* for just a second

20   because it came up.  *Zingsheim* doesn't apply here.  *Zingsheim*

21   was a mandamus case.  In that case there were actually two

22   criminal defendants and in one case the United States took an

23   appeal, and in the other case, the United States sought

24   mandamus.  What the Seventh Circuit said was, well, you're

25   appealing but even if you didn't appeal, you might be able to

1    go to the judicial council.  It didn't say you have to go to

2    the judicial council.  It didn't purport to lay out a mechanism

3    for doing that.

4        So *Zingsheim* kind of talks past the issues in this case

5    because we're not in mandamus.  Certainly if we end up in a

6    situation where we have to file a petition for mandamus, we

7    would have every right to do so, but that's not the world we're

8    in right now.  *Zingsheim* simply just didn't address the

9    declaratory and injunctive relief lawsuit that we have here and

10   that the Court dealt with in *Stern* and in the *Sheldon*

11   *Whitehouse* case.

12           **THE COURT:**  What about *Mullis* in the Ninth Circuit

13   and *Bolin,* the Eleventh Circuit case, where essentially they

14   look at *Pulliam*, and they say prospective injunctive relief

15   does not apply to federal judges?

16           **MS. HEDGES:**  Right, Your Honor.  My reading of those

17   cases is they both emphasize the availability of an appellate

18   remedy which, for all the reasons that we discuss in our briefs

19   and that you and I have discussed a little bit here this

20   morning, are not adequate here because of the nature of this

21   standing order.

22       So if that is part of the backdrop of this Court's

23   reasoning -- and it is from my review of them -- then they're

24   distinguishable from the case here, and also, of course as Your

25   Honor is aware, they're not binding on this Court.  The Fourth

1    Circuit has not issued a definitive ruling on that.  So

2    judicial immunity is not a bar.

3        I think one of the first things that was discussed here is

4    just the posture of this case.  So I do want to address very

5    head-on this distinction of, well, the United States hasn't

6    appeared in the caption of a case like *Stern* or *Whitehouse*.

7    There's no case law that I'm seeing in any of the briefing that

8    makes that a meaningful distinction.

9        The United States is a plaintiff here because the United

10   States is being harmed.  It's being directly enjoined by these

11   standing orders.  They directly say it applies to the

12   government, and so the entire U.S. Government is being enjoined

13   by the District of Maryland every single time an alien detainee

14   files a 2241 petition.  So I just -- and we push back on this

15   in our reply brief, and I didn't see any doctrinal response to

16   it after we pointed out that actually this isn't unprecedented.

17   We've seen Executive Branch lawsuits against the Judiciary

18   before, and judicial immunity wasn't an issue and

19   justiciability wasn't an issue.

20       Other point I'd make --

21           THE COURT:  I guess -- this is a minor point but

22   those lawsuits, the filing, the captions were considerably more

23   modest, right?  It's then U.S. Attorney Sheldon Whitehouse as

24   the lead plaintiff --

25           MS. HEDGES:  Right, Your Honor.

1    THE COURT:  -- against an individual judge or the

2    court.  This is taking it up about six notches, isn't it?

3        MS. HEDGES:  I don't agree with that, Your Honor.  I

4    believe in *Stern*, all of the district judges were also named

5    and --

6        THE COURT:  But it wasn't the United States of

7    America, purportedly the sovereign on behalf of the United

8    States and all of its citizens, correct?

9        MS. HEDGES:  The United States was not a named

10   plaintiff, but a senior DOJ official was.  As Your Honor

11   pointed out, the U.S. Attorney's Office was.  But, again,

12   there's nothing in the case law that makes that a meaningful

13   distinction, and I think this kind of segues into the *Debs*

14   issue.  To be very clear, we are not just resting on *Debs*.  We

15   are resting on the line of cases that started with *Debs*, goes

16   all the way up to just a few years ago.  *Arizona vs. United*

17   *States* is a more recent example where the United States sued

18   under its sovereign authority to enforce a constitutional

19   principle.

20       THE COURT:  That's helpful.  So it's *Debs* and its

21   progeny, correct?

22       MS. HEDGES:  Yes, Your Honor.

23       THE COURT:  So you-all concede that the All Writs Act

24   and Declaratory Judgment Act do not provide a basis for

25   bringing this lawsuit?

1          **MS. HEDGES:** No -- Your Honor, just to be clear,

2     we're not conceding that those statutes don't apply.  We cited

3     those statutes in our complaint as a basis for jurisdiction and

4     as a basis for this Court's authority over the lawsuit, but our

5     cause of action is under *Debs* and its progeny and our inherent

6     ability to bring a lawsuit to vindicate sovereign interests.

7     So I'm not conceding those statutes don't apply.  I'm saying

8     that goes to jurisdiction; *Debs* goes to our cause of action.

9          **THE COURT:** Okay.

10         **MS. HEDGES:** Right.  I want to make sure I address

11    everything here but...

12         **THE COURT:** Why don't you -- you were talking about

13    we have *Debs* and we have its progeny when the United States,

14    the sovereign, sues like State of Arizona, for instance, or

15    private actors.  You have applied it in this suit against a

16    co-equal branch of government, so help me with that substantial

17    step.

18         **MS. HEDGES:** Right, Your Honor.  So again, to the

19    best of my knowledge, there's nothing in the case law that says

20    this sort of suit can't proceed and that makes that a

21    meaningful distinction.  If the United States as a plaintiff is

22    being harmed, then there's nothing that says, well, you can

23    bring these sorts of suits against certain defendants but not

24    against other defendants.  Again, for all of the reasons we

25    talked about with *Stern* and those cases, there isn't a unique

immunity problem.

The other thing I would point out, Your Honor, I heard Mr. Clement talking about *Grupo* and *CASA*, I just want to be really clear when we're talking about the cause of action, it's not the scope of relief issue that we can get into under *Grupo* and *CASA*.  So *Grupo* and *CASA* are certainly relevant in the sense that they lay out restrictions on district court's injunctive powers and so that's relevant, but that doesn't go to whether we have a cause of action.  I just want to be really clear about that.

Also just to shift a little bit to Your Honor's point about suing the Fourth Circuit, first of all, the Fourth Circuit didn't enunciate a standing order like this.  There's no contemplation of suing the Fourth Circuit --

**THE COURT:**  But assume they did.  Could you sue them under the same rationale?

**MS. HEDGES:**  Your Honor, the Fourth Circuit has been sued to challenge local practices, and that's the *Strickland* case.  The Fourth Circuit -- you know, that wouldn't be unprecedented, but what I would say is the United States is not taking this lightly in any respect.  Although I'm not aware of a specific limiting principle that says we wouldn't sue -- like, no one can sue the Fourth Circuit, and we know that there isn't because of *Strickland* -- but that's just simply not on the table in this case.  The reason we know that and the reason

1   we know that lawsuits against the Supreme Court are not going

2   to be opened the floodgates to is because, again, these sorts

3   of suits have been brought in the past, and we have not seen a

4   proliferation of litigation.

5       This is an extraordinary standing order, and therefore

6   we're in this position.  But this is not a situation where this

7   is going to be opening the floodgates.  So I just want to push

8   back --

9           **THE COURT:**  So we take your word on that, right?

10  This is a one-off?

11          **MS. HEDGES:**  Your Honor, I think the Court can just

12  see from the decades of case law that this almost never happens

13  and that's because, again, I think these standing orders are

14  unique.  So this is a lawsuit to settle differences.  This is

15  how we resolve differences when there is an irreconcilable

16  difference.  This is not an assault on the separation of

17  powers.  This is about an aggrieved party coming to court to

18  settle its differences.  I certainly wouldn't concede or bind

19  ourselves to anything, but I can't contemplate that this is the

20  sort of thing that would occur more than once in a generation

21  because this is just a unique situation.

22      Also similar thing on the discovery, Your Honor.  As we

23  said in our brief, I just want to be really clear.  This case

24  raises issues of law.  So there's just no realistic likelihood

25  of delving into people's mental processes, things like that.

1    Again, I don't want to dwell on it because we're at this

2    threshold stage, but I think we need to be cognizant that (a)

3    this is a precedented type of lawsuit and (b) the floodgates

4    concerns are just not present here.

5        So if Your Honor doesn't have additional questions, I can

6    reserve my merits arguments for the merits piece of this.

7            **THE COURT:**  I don't have additional questions.  Thank

8    you very much.

9            **MS. HEDGES:**  Thank you, Your Honor.

10           **THE COURT:**  Mr. Clement.

11           **MR. CLEMENT:**  Thank you, Your Honor.  Just a few

12   quick points in rebuttal.  My friend's first response on the

13   judicial immunity was to say, well, this isn't a classic

14   judicial act, and this is a local rule and there's no immunity

15   in that context.  First of all, I would push back on that and

16   say the standing order is not a local rule and is a judicial

17   act, not an administrative action.

18       But, second of all, I think that argument is ultimately

19   self-defeating because if the Government's best answer on why

20   there might not be judicial immunity here is that local rules

21   are different, and this is just a disguised improperly

22   promulgated local rule, then, boy, they should bring this

23   action under -- to the judicial council under 2071.  I think

24   essentially by trying to make this more of a local rule to get

25   around the judicial immunity problem, they sort of plead

1    themselves right out of court.  I think if they brought this in

2    the right form against a judicial council, the judicial

3    immunity argument wouldn't arise at all.

4        Second point I would make is my friend talks about these

5    threshold justiciability issues.  That seems like a pretty weak

6    argument, that they don't have an appellate argument when they

7    say, "But we think we're right; we just think the other side

8    will raise some objections."

9        I guess my reaction in hearing that colloquy -- far be it

10   from me to give advice to the Government which is exceptionally

11   well-represented -- but if they simply coupled their

12   interlocutory appeal with a mandamus request in the alternative

13   and say, "We think we have an appeal here, but in the event we

14   don't, that will show that we satisfy the mandamus standard

15   because appeal is not available," they'd be up in the Court of

16   Appeals.  As Your Honor indicated, by all accounts, we'd

17   probably have a resolution from the Supreme Court already.

18       The third point I would make is simply that my friend

19   suggests that the United States being in the caption isn't that

20   big a deal, it's just a matter of how we styled the lawsuit.  I

21   can tell you from personal experience that if we had named the

22   President of the United States in a lawsuit or in any order or

23   in any way, my friend would be up here and saying "No, that is

24   a complete no-no.  You have to sue the agency head.  You can

25   never sue the President of the United States.  That's a

1  separation of powers violation."  I think there's the same

2  fundamental difference between suing in the name of the United

3  States and suing in the name of an office or a department.

4         There's a separate, I think, more substantive reason why

5  it's important to police that distinction because there's

6  well-established law for the general proposition that every

7  Executive Branch of the government can only operate when it is

8  authorized by Congress.  It has no inherent authority, can only

9  operate pursuant to Congressional sanction.  The United States

10 that probably doesn't apply to, but that's why you don't get to

11 circumvent that law by suing in the name of the United States.

12 And if you think about this just as an action by the Department

13 of Homeland Security, then the fact that there's no statutory

14 cause of action, no statutory authorization for this lawsuit,

15 are front and center.

16        Fourth and penultimate point in rebuttal, Your Honor, is

17 just on this issue of *Debs* and its progeny.  The United States

18 against Arizona I think is part of the progeny they have in

19 mind.  As we already discussed though, there is a history of

20 suing the states and suing private parties and those kind of

21 actions.  Even then in *United States vs. Arizona*, the cause of

22 action issues wasn't raised; Arizona didn't raise it and the

23 Supreme Court didn't address it.  So I really don't think that

24 there is anything in the progeny of *Debs* that allows for a suit

25 like this.

1    I would push back on the notion that *Grupo Mexicano* and

2  CASA have no relevance here.  I think when you are in a

3  situation where the Government is saying we have an implied

4  cause of action, I think they have to point to some cause of

5  action that was available traditionally at equity.  And that's

6  really the same question as in *Grupo Mexicano*.  It's a very

7  strange argument, frankly, to say, well, we can bring this

8  action for injunctive and declaratory relief as a matter of our

9  cause of action because we're the United States, but when you

10 get past that threshold issue, whether it wouldn't be an

11 injunctive remedy or declaratory remedy available because it

12 wasn't available in 1789.  I think it's a much more logical way

13 to approach this is to essentially join those inquiries

14 together.

15    Then the last point I would raise is my friend raised the

16 *Strickland* case.  *Strickland* case, I think, is fundamentally

17 distinguishable for multiple reasons but I think there, if you

18 look at the judicial immunity cases, there is a

19 well-established sort of limitation on those cases which they

20 apply to judicial acts.  And there's a whole body of

21 jurisprudence that when you're having issues about sexual

22 harassment and the rest, which is what *Strickland* was about,

23 those are conceived of as nonjudicial acts, so the immunity

24 doesn't apply in that instance.  It's not a holding that

25 there's no judicial immunity for judicial acts, and that's at

1    the core of this case.

2      I think the standing order is a classic judicial act.  I

3    think there is judicial immunity for that, but I think equally

4    fundamentally, there's just no injunctive relief against a

5    court like this.  Thank you, Your Honor.

6           **THE COURT:**  Thank you, Mr. Clement.

7      All right.  I think that concludes round one.  We've been

8    going for about an hour.  I'd like to take a 15-minute recess,

9    and we'll come back and we'll argue the merits of preliminary

10    injunction.

11           THE CLERK:  All rise.  This Honorable Court stands in

12    recess.

13      (Recess taken at 10:24 a.m. until 10:40 a.m.)

14           **THE COURT:**  Please be seated.  All right.  Turning to

15    the motion for preliminary injunction, Ms. Hedges, are you

16    going to take the lead on that?

17           **MS. HEDGES:**  Yes, Your Honor.  Thank you.

18           **THE COURT:**  Okay.

19           **MS. HEDGES:**  Your Honor, the first reason why these

20    automatic injunctions that the standing orders require are

21    invalid is because they violate basic requirements for

22    preliminary equitable relief.  Under Federal Rule of Civil

23    Procedure 83(b), a judge can only regulate practice in any

24    manner consistent with federal law, rules adopted under 28

25    U.S.C. 2072 and 2075, and the district's local rules.  And the

orders violate federal law.  They violate both the federal rules and the U.S. Supreme Court's mandatory injunction factors as laid out in cases like *Winter*.

So, first of all, they don't require assessing the alien petitioner's likelihood of success on the merits.  They don't require assessing whether he'll suffer irreparable harm absent preliminary relief.  They don't require whether the balance of equities favors relief.  They don't require assessing whether injunctive relief is in the public interest.

Just to zero in quickly on two of those factors, just the fact that irreparable harm is not a prerequisite to issuance of these orders makes them invalid.  Indeed, because of the jurisdictional bars that we've been discussing and that I'll get into more later, the detainees who petition are actually unlikely to succeed on the merits because in most, if not all, of these cases, the district court simply doesn't have jurisdiction over their petition.

On irreparable harm, the U.S. Supreme Court said in *Nken* that deportation or removal is not categorically irreparable harm.  But I would also just point out that because these orders are not being entered upon a request for such an order by the petitioner, the reasons that are listed in the amended standing order for why these orders are being entered don't even go to the petitioner's harms.  They go to things like scheduling difficulties, hurried and frustrated hearings and so

1    forth and so on.  But to the extent that even arguably the

2    interest of the petitioner were in the mix here, even though

3    it's not being asserted, it's not sufficient under the U.S.

4    Supreme Court's precedent.

5              THE COURT:  So all this assumes that these act or

6    operate as TROs essentially, correct?

7              MS. HEDGES:  Or preliminary injunction, Your Honor.

8              THE COURT:  Or preliminary injunction, okay.

9              MS. HEDGES:  But I would also say not only that

10   because if it's not a TRO and it's not a preliminary

11   injunction, then we get into whether this is some brand new

12   hybrid form of relief, and something telling in the most recent

13   submission by the other side is they say, well, whether this is

14   an injunction or a TRO or a stay or some combination thereof.

15   Well, under *Grupo*, district courts don't get to come up with

16   new combinations of equitable relief.  So really the only

17   defense that's being asserted is the administrative stay

18   defense.  These are not administrative stays for several

19   reasons.

20             THE COURT:  Before you get to that, essentially what

21   you just outlined, couldn't that also apply to the stays that

22   are entered by the appellate courts?  Essentially it implies

23   very temporarily that this particular petitioner has satisfied

24   the prerequisites for a TRO.

25             MS. HEDGES:  Your Honor, it might imply that but a

1   stay is different because it operates to suspend the

2   enforcement of a court order or an order -- like an order of

3   removal.  It does not operate in personam like an injunction,

4   like this injunction that enjoins the government explicitly.

5   So, no, it's not like an appellate stay and for reasons that we

6   explain in our brief --

7           THE COURT:  And Mr. Clement would, I think, come back

8   and say, "Well, that's incidental.  That's because they're

9   being entered by district courts versus appellate courts";

10  right?  So there is not going to be a prior order.

11          MS. HEDGES:  Well, Your Honor, there are orders of

12  removal and that just kind of bleeds into the jurisdictional

13  bars under immigration law which is that district courts are

14  not supposed to be dealing with petitions for review of removal

15  orders at all except in very limited circumstances -- well,

16  petitions for review not at all.  Habeas only in very limited

17  circumstances.

18      Back to the administrative stay point, though, let's not

19  forget the orders don't even purport to be stays.  It says the

20  government is restrained and enjoined.  It was not until this

21  litigation that we heard anything about an administrative stay.

22  So now we're in this world where it's like, well, maybe it's a

23  stay, maybe it's an injunction, maybe it's a combination.

24      And what *Grupo* says is, as we've been discussing, you

25  can't come up with a new form of equitable relief that doesn't

have a historical analog.  So the combination theory goes out

and then the administrative stay theory doesn't work either.

Because even in the few district court cases that are cited in

the briefing where the Court purported to enter an

administrative stay, there was at least some looking at the

case itself or some request for relief, some sort of screening

is happening.  But by and large, there's no historical analog

for district courts to enter something that purports to be an

administrative stay, especially here where it purports to be an

injunction on its face.

THE COURT:  That's one of the differences you cite

between the appellate court stays is there is a preliminary

screening, that that occurs.

MS. HEDGES:  Yes, Your Honor.  In the Ninth Circuit

which might be one of the places where there isn't always

screening -- and we can talk about other examples too, I'm

happy to do that.  But in the Ninth Circuit there's been a

couple of examples where that screening didn't take place, and

it resulted in us having to go to the court on an emergency

basis twice in one week to get these stays lifted because there

was no jurisdiction.  I believe what the issue was there was no

jurisdiction, but I don't want to hold myself to that.  We

describe it in our brief.

Basically there was no basis for the order.  We

immediately had to go to the Ninth Circuit and say please lift

1    this.  The Ninth Circuit had to lift it on an emergency basis.

2        So what we see is in the limited circumstances where there

3    isn't screening, we have these huge problems like we have here.

4    I would just point out quickly on that, we have been moving to

5    dismiss in individual cases where these standing orders have

6    been applied, and we've been winning in some of those

7    challenges.  In fact, I'm not aware of anywhere we've lost

8    those challenges which kind of ties into another appealability

9    issue which is how you appeal if you win, but in the meantime,

10   we're being irreparably harmed.

11       But to circle back to the Rules of Civil Procedure.  I

12   just went through why these orders are invalid under *Winter*,

13   but they're also invalid under Rule 65.  Because if you issue

14   an ex parte TRO, which is one way we can potentially think

15   about these orders, the Court has to analyze specific things.

16   It has to explain why there's irreparable harm absent the

17   relief.  It has to explain why notice couldn't have been

18   provided.  None of that has to take place.  The orders just say

19   this gets entered automatically in every 2241 petition if the

20   alien detainee is located in Maryland.

21       So it doesn't meet the requirements for a TRO.  Also

22   doesn't meet Rule 65(a)'s requirements for a preliminary

23   injunction, doesn't require notice to the adverse party prior

24   to entry, doesn't require a statement of reasons for the

25   injunction.  Purports to bind parties beyond the immediate

8/13/2025 Motions Hearing
46

1    defendant in the case.  There's no security requirement.  All

2    of these problems are independently sufficient to defeat on the

3    merits the validity of the standing orders.

4         So I think that kind of is what I want to say on the

5    injunctive relief issue.  We can go right into the

6    jurisdictional bars.  As I previewed earlier, the

7    jurisdictional bars under § 1252 of Title 8, there are several

8    problems here.  First of all, the orders purport to grant

9    basically class-wide relief because if you're a member of the

10   class that is an alien detainee in Maryland filing a 2241

11   petition without more, this injunction gets entered in your

12   case.  But under 1252(f)(1) of Title 8, courts are not allowed

13   to enjoin provisions of the INA, including those relating to

14   removal proceedings on a class-wide basis.  So right out of the

15   gate, that's a problem with every single one of these cases

16   because the standing order automatically applies just because

17   someone is a member of the class.

18        Also we have the 1252(b)(9) argument.  This is an

19   independently sufficient reason to strike down the orders.

20   That's the zipper clause, and it basically says that only out

21   of a petition for review can you raise questions of law or fact

22   relating to basically the validity of the final removal order.

23        So in the cases where there's a final removal order at

24   issue, their remedy is through a PFR, a petition for review.

25   It is not in federal district court.  And indeed the statute

explicitly excludes habeas, and it also excludes § 1651 of

Title 28, I believe, which is the All Writs Act.  So that's

another independent jurisdictional bar.

Another one that we site in our brief is § 1252(g).  That

section strips the federal courts of jurisdiction to hear any

cause or claim by or on behalf of any alien arising from the

decision or action by the Attorney General to commence

proceedings, adjudicate cases, or execute removal orders

against any alien under the INA, other than in a petition for

review.

Just to zoom out here because I know we might not all be

super used to immigration law -- I wasn't until this case --

but you go through § 1252, and there are multiple independent

jurisdictional limitations on the district court's

jurisdiction.  Not to belabor it, but we also cite in our

complaint there's two other sections that they don't explicitly

use the word "jurisdiction" in the same way, but they limit the

court's review power.  One of them is in the expedited removal

context which we were talking about earlier.  Habeas review is

only available of these three specific questions.  The orders

are invalid because they apply regardless of whether those

questions are being raised.

Then 8 U.S.C. 1226(e) says the discretionary judgments

regarding release and detention shall not be subject to review.

So there's at least five different bases under § 1252

1    under which the district courts do not have power to review in

2    these cases, and yet the standing order is being entered

3    regardless of that in every single 2241 petition.

4            **THE COURT:**  So essentially the district court's

5    authority is severely circumscribed and what's left is that

6    perfunctory habeas review, so they start on shaky ground --

7            **MS. HEDGES:**  They start on completely shaky ground,

8    Your Honor.  The thing that I think I need to kind of push back

9    on here that came up on the briefs is this specter of the Alien

10   Enemies Act.  Of course, the Alien Enemies Act is a separate

11   statute.  As I mentioned to Your Honor earlier, that statute is

12   not at issue in these cases.  These are cases that arise under

13   the INA.  So the suggestion I saw in the briefs of the Alien

14   Enemies Act is what precipitated the need for these orders.  I

15   think the word might have been triggered, triggered the need

16   for these orders.  Well, they apply far, far, far beyond the

17   Alien Enemies Act.

18        So at a bare minimum, I just want to be clear, these

19   orders are invalid on their face as to any case that's not an

20   AEA case.  And so --

21           **THE COURT:**  But the orders themselves don't specify

22   INA versus AEA, correct?

23           **MS. HEDGES:**  They don't, Your Honor.  That's actually

24   a huge problem because if the rationale is that, well, there

25   were some AEA cases -- which, again, by the way, there aren't

any in Maryland that I'm aware of right now.  And there aren't

any proceedings under the AEA, period, right now because it's

been enjoined.  But there aren't any in Maryland.  To the

extent that that's a rationale, then why wasn't the order

tailored to that rationale?

Instead the order is being entered in these cases where

the district court has no jurisdiction to do anything which,

again, goes into the appealability issues because how are you

supposed to get a final order adjudicating the validity of the

standing order in a case where the court can't do anything?

And some of the courts are realizing this, and when we file a

motion to dismiss the petition, they're dismissing the

petition.

So to the courts' credit, when we raise these issues and

they get a chance to look at it, they're dismissing the cases.

But in the meantime, we're being enjoined and not only can we

not remove anyone, it also uses this broad language of "alter

their legal status."  Well, what does that mean?  We walk

through in our brief a number of reasons why that very broad

language is hampering the Attorney General's discretion in an

area -- or DHS's authority in areas where Congress has

committed that authority to those entities.

THE COURT:  So is there evidence in the record in

support of the motion for preliminary injunction that, for

instance, INA administrative proceedings have stopped, right?

So you have a habeas petitioner who files prematurely -- I
think you alluded to this in your brief -- and the Government's
position is we can't do anything, not only in the district
court but also administratively in immigration proceedings.
Has that actually occurred?

        **MS. HEDGES:**  So two responses, Your Honor.  First, I
would point Your Honor to the Baker declaration that talks
about some of the practical concerns, but I'll also give you an
example in a specific cause that I believe arose subsequent to
the most recent brief that we filed so I just learned about it.
But my understanding is that there is a petition that was filed
last week by someone who separately had -- I believe it's
called an I-30 proceeding pending which is basically if you
have a relative who's a U.S. citizen, you might be entitled to
some sort of relief.

    So the way that we interpreted the standing order which
got entered in that case is that we were -- temporarily felt
that we were unable to move forward with adjudicating that.
That's one example, Your Honor.  The reason it's not in the
briefing or anything is because it's basically brand new.  It
kind of goes to the point that these orders are continuing to
be entered in cases to the present day, and they're continuing
to stymie our authority in these cases.

    But I can move on from that and just very briefly touch on
the local rules.  So under 2071 -- this is our third count, I

1    believe, in the complaint.  § 2071 says if you have a local

2    rule, then you have to adopt it by notice-and-comment

3    rulemaking.  And that's -- yeah.  The *Brown vs. Crawford County*

4    case which I spoke about earlier says:  If the purpose of a

5    local procedure, practice or policy is to control practice in a

6    district court, such procedures effectively are local rules.

7         So we've got our Federal Rule of Civil Procedure 83

8    problem which is that these rules don't comply with federal

9    law, but they also don't comply with the specific statute that

10    says notice-and-comment rulemaking.  There's no dispute there

11    wasn't notice and comment.  By the way, if there had been, we

12    would have had some comments, and it kind of ties into this

13    issue of, well, go to the judicial council because the rule

14    should have also been submitted to the judicial council.  To

15    the best of my knowledge, it wasn't.  So that's a whole other

16    problem because the district court entered this order without

17    the judicial council.

18         I guess the point I'm trying to make is there's the

19    suggestion of, well, there was an immediate need for the

20    orders.  Okay.  Even if there's an immediate need for the

21    orders, you still have to provide opportunity for notice and

22    comment on the back end under § 2071.

23              **THE COURT:**  What about that -- I can't quote you the

24    specific section.  Essentially it's the exigent circumstances

25    exception where you don't have to go through notice and

1    comment.  If the situation is dire, you can go ahead and

2    promulgate a rule.

3         **MS. HEDGES:**  Right, Your Honor.  I think that's what

4    we're talking about.  There is a provision in § 2071 that says

5    if the Court determines that there is an immediate need -- I

6    think I have it.  But it basically says if the Court determines

7    that there is an immediate need, then it can move forward, but

8    then there has to be notice and comment on the back end.  So

9    subsection (e) of 2071, "If the prescribing court determines

10   that there is an immediate need for a rule, such court may

11   proceed under this section without public notice and

12   opportunity for comment, but such court shall promptly

13   thereafter afford such notice and opportunity for comment."

14        I haven't seen anything in the briefs, the record,

15   publicly online that there's ever been notice and comment.  The

16   initial version of this order came out in May so here we are in

17   August, and short of this litigation, there hasn't been an

18   opportunity to really deal with the substantive issues with

19   this order.

20        So I would just point your Court to the *Baylson* case

21   under -- it was the Third Circuit affirmed a ruling of the

22   Eastern District of Pennsylvania that invalidated a local rule.

23   And the Court cited 2071 and it walks through in detail why

24   basically 2071 admits some facial challenges, so, in other

25   words, it doesn't require you to go through the judicial

council.  It allows you to bring a lawsuit.  And it held that
substantively the rule was invalid.  That's a really good
example of where substantive discrepancies between a rule or a
standing order and § 2071 is fatal to the validity of an
order.

        If Your Honor has no further questions, I'll reserve for
rebuttal anything that I might need to say.  I would just urge
the Court that there has been no real substantive defense of
these orders under the grounds that we put forward, and
therefore they're invalid.

                **THE COURT:**  Thank you.  Mr. Clement.

                **MR. CLEMENT:**  Thank you, Your Honor.  May it please
the Court.  I'm going to run through the three objections that
the Government has made to the standing order, but then I'm
also going to spend a moment talking about the other factors
that the Government would need to satisfy to get a preliminary
injunction in this case.

        So as I understand the Government's first objection, it
really goes to the idea that the standing order provides some
interim relief without walking through the traditional four
factor test that you're supposed to walk through for a
preliminary injunction or a TRO.  And with all respect to the
Government, I think that argument is fundamentally misplaced
because it ignores the basic purpose of this rule which is not
to provide sort of injunctive relief for the benefit of one of

1    the parties, but really it is an administrative order that is

2    designed to create a brief interval for the court to

3    essentially ascertain its own jurisdiction and decide whether

4    the case can sort of go forward and whether some more permanent

5    relief or even temporary relief is appropriate.

6              THE COURT:  Well, that may be the well-intended

7    purpose but, in effect, I think the Government makes a fair

8    point that for at least two days, it operates as a TRO directed

9    at federal immigration officials, does it not?

10             MR. CLEMENT:  I mean, you could analogize it to a TRO

11   but I think the critical thing is, you know, in a sense, what

12   they complain about shows you what it's not which is it does

13   not reflect a preliminary assessment that a TRO is appropriate.

14   It simply reflects the fact that the Court needs an interim

15   period of time in order to resolve whether some kind of further

16   relief is appropriate.

17        My friend suggests that somehow this is some new animal

18   that doesn't exist or the Supreme Court in the *Nken* case would

19   frown on this.  I think if that's the case, somebody better

20   tell the Supreme Court.  Because in the *AARP* case that we cite

21   in our briefs, the Court in a per curiam opinion issued an

22   interim order injunction.  It called it an injunction, it

23   operated like an injunction.  But the whole point of it was to

24   preserve the Court's jurisdiction to decide whether some more

25   permanent relief was appropriate.  That is what characterizes

1    all of the administrative stays in the appellate process.  It

2    is what characterizes the various standing rules and local

3    rules that the courts of appeals have applied in the petition

4    for review context.

5        My friend on the other side points to some slight

6    differences between the way the Fourth Circuit standing order

7    operates, for example, and the district court rule operates,

8    but they don't go to the gravamen of their complaint.  Their

9    complaint is you can't give relief without walking through the

10    four factor tests.  And the reality is that's just not the

11    case, and the whole point of a variety of these cases that

12    arise in different contexts -- this is also what Justice

13    Barrett said in her opinion in the Texas case is don't think of

14    these as sort of junior varsity injunctions because they don't

15    operate directly on the party in the sense that they are the

16    court's assessment of preliminary relief.  They are instead

17    just an administrative mechanism designed as an exercise of the

18    Court's inherent authority to provide an interval to decide the

19    issue.

20        Once you accept that that's what's going on here, then I

21    think there's no material difference between an administrative

22    stay and an administrative injunction or other administrative

23    order --

24            THE COURT:  What about the potential collateral

25    consequences?  You have a petitioner who is not subject to a

1    final order of removal, albeit it's just two days, but that

2    process has to stop in its tracks.  That's how I read the

3    order.  I think the Government's right; they can't take a

4    position.  Essentially the underlying removal proceeding would

5    have to be stayed, would it not?  So it does have that

6    effect.

7              MR. CLEMENT:  It may.  I'm not sure I read the order

8    quite the same way.  I think the Government could proceed in

9    the process without sort of changing status, so I actually

10   think they could go forward.  At the end of the day, even if

11   the Government is right in reading the rule that way, I don't

12   think that makes a material difference.  The classic

13   administrative stay, the classic administrative injunction,

14   it's designed to actually have an effect in the real world.  If

15   you sort of go back to almost the cartoonish example, but you

16   get sort of a stay or injunction pending some disposition

17   because there's a belief that at midnight the spendthrift

18   nephew is going to deplete all of the corpus of the trust, so

19   you get an injunction for that.  It has an effect.  That's the

20   whole point.

21        At least in the very first instance for the first 48

22   hours, let's say, there wouldn't be a determination that, oh,

23   well, the nephew has no basis to inherit.  It would just be:

24   Boy, this case just landed on my desk.  I have to figure out

25   whether I have jurisdiction, whether there's a basis for this

1    suit to go forward.  And I'm going to stay the proverbial

2    linebacker or enjoin the proverbial linebacker -- it doesn't

3    matter -- just for 48 hours so I can get my head around this

4    case and figure out can I get the parties in here as a

5    practical matter.  Can I figure out is there any "there" there

6    to this lawsuit.

7         That seems to me to be the classic use of administrative

8    order, whether it's a stay in the court of appeals or it's an

9    injunction.  I would say there are circumstances -- and the

10   *AARP* case is one -- where even in order for the appellate court

11   to preserve its jurisdiction, it has to issue a temporary 48

12   hours' administrative injunction because there's been no relief

13   granted in the lower court so there's nothing to stay.

14        So I just think the Government's effort to say, well, the

15   big distinction is between stays and injunction doesn't cut it.

16   And I think the reality is the distinction is between a

17   temporary preservation of the status quo in order to preserve

18   an interval to decide the first issues in the case, including

19   whether you have jurisdiction and getting the parties into

20   court.  That is an administrative order, and what distinguishes

21   it from a TRO or a PI is at a certain point if it lasts too

22   long, then it sort of crosses the line.  I think that's the one

23   thing you don't have to worry about with the standing order.

24        Of course, in practice -- I mean, the Government is right,

25   the Executive is right that, in practice, this order in some of

1    these cases after the 48 hours, the parties get into the court,

2    and the court realizes that there's no jurisdiction to proceed.

3    And so everything takes place, the standing order is relaxed,

4    and the habeas petition is dismissed.  Hard to see where the

5    Government's irreparable injury is in those cases.  Obviously,

6    if there's a case where they really think the 48 hours is

7    critical, that's precisely when they could file an appeal,

8    slash, mandamus and try to get the Fourth Circuit to decide

9    that with dispatch, so I think they do have those remedies.

10        But the critical point is we are talking about an

11    administrative relief order to allow the court to decide

12    matters.  It is not an injunction that has to satisfy the four

13    factor test.

14        Just a couple of subsidiary points about that.  I mean,

15    one is the Executive tries to distinguish the Fourth Circuit

16    order because in the context of the Fourth Circuit, there has

17    to be a request by the petitioner for a stay.  But I think that

18    simply reflects the fact that not all petitions for review even

19    go to questions of needing a stay of removal.  There are other

20    petitions for review that don't implicate that, so it would be

21    a little odd to have an automatic rule in that context.

22        But it's different in the habeas context because the

23    reason the standing order doesn't distinguish between petitions

24    in cases of removal under the AEA and habeas petitions where

25    it's an INA case is both of them share the same fundamental

1    problem which is, unlike the petition for review context, here

2    the Executive can unilaterally effectively destroy the court's

3    jurisdiction by moving the alien out of the jurisdiction.  Of

4    course, there's been one very high-profile situation where that

5    not only defeats jurisdiction, but it defeats the ability to

6    provide any meaningful remedy under the Great Writ.  I think

7    that applies in every one of these habeas petitions.  There is

8    that risk in every one of the habeas petitions, so it makes

9    sense that the administrative relief order applies to all of

10    these habeas petitions.

11                 **THE COURT:**  In other words, habeas is habeas.

12                 **MR. CLEMENT:**  Habeas is habeas, and habeas uniquely,

13    as we've unfortunately learned in this context, has this

14    characteristic that it is a territorial writ, so if you move

15    the habeas petitioner outside of the jurisdiction, then you

16    defeat the court's jurisdiction to provide relief.  Of course,

17    if you remove him from the jurisdiction into a foreign country,

18    then there may be no ability to provide relief in a case where

19    there is a fundamental mistake under the AEA or even a

20    fundamental mistake under the INA.

21         I'll take one last -- two last observations here.  One is

22    the Government's position is that there's no screening

23    whatsoever under this order.  That's actually not true.  The

24    *Cardona* case which is actually cited in the Government's reply

25    brief at note 3, that's the case where the original habeas

1    petition didn't have the application number which is a

2    requirement under the amended standing order.  The clerk

3    noticed that, flagged it for the court.  Then the court issued

4    an order that had the same effect as the standing order but was

5    not an application of the standing order because the

6    application number was missing.  That may be a different level

7    of screening than the Fourth Circuit does, but there is some

8    screening here.

9         I think the more fundamental point, though, is that the

10   Government's objection doesn't have anything to do with

11   screening.  It doesn't have anything to do with whether the

12   petitioner requests a stay.  It has everything to do with

13   providing some measure of relief without walking through the

14   four factor test.  That would take out the rules that have been

15   applied by multiple circuits.  It would suggest that the

16   Supreme Court made some horrible error in the *AARP* case.  I

17   just don't think that argument works.

18        Then we get to their second argument which focuses on the

19   limitations under the immigration laws to habeas petitions in

20   the INA context.  I think the answer to that is kind of

21   twofold.  One is this is a facial challenge and indeed at

22   various points, the Government, the Executive Branch will tell

23   you that the whole reason they needed to bring this

24   extraordinary action rather than an as-applied case where they

25   would have an appeal or mandamus or something like that is that

they wanted to bring a facial challenge, that their problem
isn't limited to particular applications.

But, boy, if they're bringing a facial challenge, then I
think *Salerno* applies to the Executive Branch just like it
applies to everybody else.  If their position is, well, at a
minimum, you should narrow this to the AEA, that's already a
big problem because they've just admitted that there is a class
of cases where this would be permissible.

And the same is true with respect to the INA exceptions
for habeas petitions.  They're narrow but they exist, and the
Court has to be in a position to ascertain whether it has
jurisdiction.  And my friend suggested, well, you know, either
in all of these applications or in most of them, the Court is
acting without jurisdiction altogether.  But that's wrong in
every case because one of the fundamental principles is a court
always has jurisdiction to ascertain its jurisdiction.  That's
essentially what you can do in 48 hours.  You can figure out
whether this is in the ballpark or not, and sometimes you need
to bring the parties in front of you to clarify some questions.

And this relatively modest administrative stay order gives
the possibility to have all that happen while you preserve the
court's jurisdiction.  It seems like a classic use of the -- of
an administrative relief order, and I don't see anything in the
INA that's inconsistent with it.

The third argument is this local rules argument.  And that

1    argument seems to me, again, to be one that pleads them right

2    out of this court.  As I understand the argument, they are

3    essentially saying that this standing order isn't a valid sort

4    of exercise of inherent authority or standing order of power of

5    the court.  It is de facto a local rule.  If they are right

6    about that, then they really should bring that claim to the

7    judicial council.  We happen to think they're wrong about that,

8    and that explains why notice and comment hasn't happened.  They

9    are right about that.  The district has amended the order, it

10   had promulgated the standing order.

11        We certainly take the position in the briefs that they

12   would have been justified with doing that under the kind of

13   emergency exception for local rules, but the reason they

14   haven't followed up with that and said, "Okay, now let's have

15   notice and comment" is because our position is it's not a local

16   rule; we don't need to do that, we don't need to provide for

17   that notice and comment.  I think that ultimately is a complete

18   answer.

19        If they're right that it's a de facto local rule, then

20   they should go to the judicial council.  Of course, if they had

21   gone that route, I think there would have been an opportunity

22   for a back and forth that would have been kind of less public,

23   less confrontational.  I'm not here to tell you that my clients

24   would have trimmed their sails or focused it on certain cases

25   or said one business day rather than two business days, but

1   there would have at least been a possibility for that dialogue

2   before the kind of battle lines had been drawn in the kind of

3   definitive way you get with this kind of lawsuit.

4        Let me just talk briefly about the other factors that

5   influence whether there's a preliminary injunction.  On this I

6   would say the first threshold question in any time you have a

7   request for a preliminary injunction is:  Do you have an

8   adequate remedy at law?  We think they do.  We think that's a

9   complete answer.  We think that is a reason to dismiss the

10  complaint entirely, but it's also a reason to reject the

11  preliminary injunction.

12       Then once you get beyond that, you still have discretion

13  any time you're asked to issue a preliminary injunction.  It's

14  always an extraordinary remedy, and I think for all of the same

15  reasons we think there are extraordinary special factors

16  counseling hesitation here that would cause you not to infer a

17  cause of action, we think even if you thought the PI factors

18  might otherwise be satisfied, this would be a perfect case to

19  exercise your equitable discretion.

20       Then there are the other factors, irreparable injury and

21  the balance of the equities.  On irreparable injury, again with

22  all due respect to the Executive -- certainly take their

23  prerogatives over immigration very seriously, but if you look

24  at how this is applied in practice, it really hasn't imposed

25  much of an injury at all.  In some of these cases, including

1    some of the cases that they complain about, the government

2    ultimately prevailed in the case, the petition was dismissed

3    but after the standing order was extended by agreement of the

4    parties for five days or seven days.  That is not the stuff of

5    irreparable injury.

6         Then again, if they come and find a case where "this is

7    really vexing us, this is really stopping us from processing

8    somebody who we think is a danger," or "this is somebody where

9    we'd actually like to give them relief and this is perversely

10   getting in the way of that," that's a perfect context for an

11   as-applied challenge.  That would be a situation where perhaps

12   mandamus would make sense.  If there really is a situation

13   where this is working against the habeas petitioner, my sense

14   is if they actually teed that up in that way, the habeas

15   petitioner might agree with them and drop the habeas petition.

16   There's plenty of room still for an as-applied challenge in the

17   small universe of cases where there's irreparable injury.  But

18   in the mine-run case, there's no irreparable injury here.

19        The balance of equities I think strongly counsels against

20   this.  There's no denying the fact, I think -- the Government

21   itself has been clear -- that if a habeas petitioner even with

22   a valid habeas petition is removed from the United States to

23   certain countries, the best they can do is to try to facilitate

24   the return; they can't do any better than that.  That has to

25   be -- the possibility of that irreparable injury which is

1    averted by this kind of standing order has to go into the

2    calculus.

3    　　　Then there's all the disruption to the defendants in this

4    case because of the nature of this action that would be

5    exacerbated by a preliminary injunction.  I suppose the one

6    thing -- maybe I should have said this earlier in response to

7    Your Honor's colloquy about discovery and all of that, but if

8    you were to enter a preliminary injunction and then somehow the

9    defendants continued to do something that the Government

10   perceived as violating that preliminary injunction, you would

11   then be in the even more extraordinary position of having to

12   hold a hearing about whether the judicial defendants in this

13   case are in contempt of their own court which just seems to me

14   to be one more flag that we're in the wrong forum in this

15   situation with the wrong kind of lawsuit.

16   　　　Then just the last thing I'll say before I sit down, just

17   to be clear, our arguments in the motion to dismiss also go to

18   these merits arguments, so I think we've divided things up in

19   terms of jurisdiction versus merits for purposes of

20   facilitating the argument, but just to be clear, we think under

21   12(b)(6), you should dismiss the complaint not just because

22   they lack a cause of action but because they're just sort of

23   wrong on the motion to dismiss record.

24   　　　Thank you, Your Honor.

25   　　　　　THE COURT:  Thank you, Mr. Clement.

1          All right, Ms. Hedges, final thoughts.

2              **MS. HEDGES:**  Thank you, Your Honor.

3      So, Your Honor, I just want to start with a few specific

4  case examples just to address a few things that came up during

5  Mr. Clement's presentation.  So I believe it was the Ghamelian

6  case that was referenced with respect to an alleged agreement

7  to extend the standing order.  My understanding -- I understand

8  there's an order that says, quote, without objection of the

9  parties.  My understanding is that that order just followed a

10  teleconference and that we did not concede to the extension.  I

11  just wanted to get that out of the way.  I understand that

12  sometimes docket orders are entered and they might say

13  something of that nature, but my understanding is we did not

14  concede the extension was acceptable.

15          Also I did want to circle back to something I was saying

16  earlier about a specific example of where the "or altering

17  legal status" language kept us from proceeding and that -- the

18  case is Darwin Aguirre, A-g-u-i-r-r-e.  That is case number

19  25-2537.  And I believe that was a petition filed last week.

20  So the standing order was entered on the 3rd of August, I

21  believe.  Just some housekeeping matters.

22          I do want to push back on this notion that this is a

23  modest injunction.  I believe that's the word that I heard.

24  Again, the injunction enjoins the entire government

25  automatically so it's not a modest injunction.  The other thing

1    I would say about the idea of jurisdiction to determine the

2    court's jurisdiction, so a few points on that.

3        One, again, *Nken* and *Winter* require a probability of

4    success.  They don't just require possibility of jurisdiction

5    to enter equitable relief.  Also the All Writs Act, there's a

6    case called *Shoop v. Twyford* we cite in our briefs, I believe

7    that's the case.  It says the All Writs Act can't be used to

8    circumvent other procedural rules.  So this is a situation

9    where the All Writs Act is being cited as the authority to go

10    around these otherwise mandatory procedural requirements, but

11    what the U.S. Supreme Court has said is that that is not

12    acceptable.

13        I also want to again reiterate under *Nken*, removal is not

14    automatically categorically irreparable.  As to this issue --

15    and it's not before this Court but I do need to, I think,

16    briefly respond -- this issue of whether people wrongly

17    deported can be brought back.  We have seen people brought

18    back.  Again, the United States government is complying with

19    injunctions in court orders in other cases; they're not before

20    this court.  But I just need to push back that under the U.S.

21    Supreme Court's case law, we're not dealing with a

22    categorically irreparable harm on the petitioner's side in any

23    given habeas case.

24        The facial versus as applied, I want to be really clear.

25    So our 1252(f)(1) argument is probably our broadest argument in

1    terms of this issue of the district courts not being allowed to

2    grant class-wide relief.  However, we also make very clear in

3    our motion, we're also bringing an -- we're also bringing a

4    challenge that's more in the nature of these orders are invalid

5    as applied to the many, many cases, potentially almost all of

6    them, in which 1252(b)(9) applies or 1252(g) applies.  I just

7    want to be really clear we have not said we're not bringing an

8    as-applied challenge.

9         I think, again, there's a bit of a terminology question

10   with what does the use of the word "facial" mean.  This is a

11   facial lawsuit in the sense that it's a challenge to the order

12   as it stands, but it's also as applied in individual cases is

13   where the invalidity might come out depending on what the

14   nature of the petition is.  So I just want to be really clear

15   about that.  We make that clear in our PI motion too.  In

16   paragraph 89 of the complaint, we explain one of the more

17   specific ways in which this lawsuit is challenging the orders

18   as applied in particular cases.

19        Just to quickly hit some other points.  The *AARP* case,

20   that was an injunction that the U.S. Supreme Court entered.  I

21   believe it said that it was entering injunctive relief.  The

22   Court also looked at the specific facts of the case.  The Court

23   said that a certain level of process was required; therefore,

24   it looked at the merits.  So that was not an administrative

25   stay situation.

1          But also just to zoom out, as I said before, if there's an

2     administrative stay practice in any given appeals court or in

3     the Supreme Court, it does not follow that this order which

4     requires an injunction on its own terms to be entered, it does

5     not follow that that is appropriate for reasons that we discuss

6     in our briefs.

7          And the screening issue is only one of the issues.  I

8     really want to be clear about that.  One of the things we say

9     in our briefs is at least in the appeals courts, there's some

10    sort of screening that goes on.

11         But that's not our only issue with this.  Our issue is

12    that this is not, in fact, an administrative stay.  It's an

13    in personam injunction and all of the other reasons that we've

14    discussed and that we discuss in our briefs.

15         On the irreparable harm point, so we have many reasons why

16    we're being irreparably harmed.  Just as a very high-level

17    doctrinal matter, the U.S. Supreme Court just recognized in

18    *CASA* that the Government was likely to succeed in showing that

19    it was being irreparably harmed by an injunction that was

20    likely invalid.  So every time an injunction is entered that

21    transgresses jurisdictional boundaries and enters into area

22    where authority is reserved to us by Congress, that's an

23    irreparable harm.

24         And then, of course, we also have these other irreparable

25    harms that we discuss in our briefing that might arise in

1    particular cases.  So I just want to be clear about the scope

2    of that.

3         The 48 hours, as I think Mr. Clement recognized, often

4    these orders are, in fact, being extended for broader than 48

5    hours, but even on the face of the order, it says until

6    4:00 p.m. the following business day.  So if we're on a Friday,

7    that could be till Tuesday.  I just want to be clear this is

8    several days of an in personam injunction automatically

9    issuing, and then it is getting extended in some cases.

10         The point about, "Well, if there's a case where you

11   actually critically need to move very quickly, you can just go

12   to the Fourth Circuit," I think that that flips on its head the

13   burden in these types of cases because ordinarily it's the

14   movant for the injunction that has to establish entitlement to

15   relief.  But if the answer is, "Well, if the Government really

16   needs to move quickly, it can just go to an appeals court or it

17   can file an expedited motion to lift," make no mistake, we will

18   do that if we think it's necessary.  And, again, we have been

19   moving to dismiss some of these cases, but that's not an answer

20   to the problem of the injunction being invalid for all of these

21   reasons.

22         I think with that, Your Honor, I don't think I had

23   anything else specific that I wanted to say.  With respect to

24   the equities in the public interest, I'm going to rest on my

25   briefing as to that.  The U.S. Supreme Court has long

1   recognized the unique role for the political branches in

2   dealing with the diplomatic concerns and the other

3   considerations that go into enforcement of the immigration law.

4   So we do have a harm and the equities do weigh in our favor,

5   but as to the details, I'm going to rest on my briefing.

6       I would just reiterate to this Court, again, these orders

7   are invalid in three separate substantive ways, and the Court

8   should deny the motion to dismiss and it should grant the

9   preliminary injunction.  Thank you.

10       **THE COURT:**  Thank you, Ms. Hedges.  All right.

11   First, let me commend counsel in terms of the briefing and the

12   arguments presented today.  Well done on both sides.  The

13   briefs were enormously helpful, enabled the Court to try to

14   understand these issues going into the hearing, and then

15   through my questions and your answers, you've helped me better

16   understand the issues and what ultimately is at stake.

17       This lonely district judge, we're working on our own on

18   this and I'm going to move as expeditiously as I can.  My hope

19   is to issue a memorandum opinion before Labor Day, recognizing

20   that whatever I say will not be the last word on this matter,

21   and this matter can be taken up however it comes out in another

22   court.  So I'm going to endeavor to decide this as quickly as I

23   can, certainly by Labor Day.

24       So with that, I think we're concluded so we'll adjourn

25   court, and I'm going to come down and meet counsel before I

1    step back.  Thank you-all very much.

2              THE CLERK:  All rise.  This Honorable Court stands

3    adjourned.

4         (Proceedings concluded at 11:26 a.m.)

5

6

7                   CERTIFICATE OF OFFICIAL REPORTER

8              I, Patricia G. Mitchell, Registered Merit Reporter,

9    Certified Realtime Reporter, in and for the United States

10   District Court for the District of Maryland, do hereby certify,

11   pursuant to 28 U.S.C. § 753, that the foregoing is a true and

12   correct transcript of the stenographically-reported proceedings

13   held in the above-entitled matter and the transcript page

14   format is in conformance with the regulations of the Judicial

15   Conference of the United States.

16             Dated this 28th day of August 2025.

17

18                   *Patricia G. Mitchell*

19        _____

20             Patricia G. Mitchell, RMR, CRR
                  Federal Official Reporter

21

22

23

24

25

**< Dates >.**

**28th day of August 2025.**
72:16 .

**3rd of August,** 66:20 .

**August 13, 2025** 1:18 .

**August,** 52:17 .

**June 24th,** 2:18 .

**May** 5:18, 52:16, 53:12 .

**May,** 2:25 .

.

.

**< 0 >.**

**00** 70:6 .

.

**< 1 >.**

**10** 40:13 .

**11** 72:4 .

**12(b)(6** 5:24, 65:21 .

**1226(e** 47:23 .

**1252** 27:14, 46:7, 47:13, 47:25 .

**1252(b)(9** 46:18, 68:6 .

**1252(f)(1** 46:12, 67:25 .

**1252(g** 47:4, 68:6 .

**15-minute** 40:8 .

**1651** 47:1 .

**1789** 14:4, 21:11, 21:13, 39:12 .

**1983** 12:6 .

**1995** 29:9 .

**1996** 12:23 .

**1996-7** 29:8 .

**19th** 19:6 .

**1:** 1:10 .

.

**< 2 >.**

**2000** 29:7 .

**20001** 1:36 .

**2021** 22:25 .

**20530** 1:31 .

**2071** 36:23, 50:25, 51:1, 51:22, 52:4, 52:9, 52:23, 52:24, 53:4 .

**2071(c** 8:19, 29:7 .

**2072** 40:25 .

**2075** 40:25 .

**22314** 1:47 .

**2241** 24:24, 31:14, 45:19, 46:10,

**48:3** .

**24** 40:13 .

**25-2537** 66:19 .

**26** 72:4 .

**28** 40:24, 47:2, 72:11 .

.

.

**< 3 >.**

**3** 59:25 .

**30** 1:19, 22:18 .

**32** 2:2 .

.

.

**< 4 >.**

**4** 70:6 .

**40** 40:13 .

**405** 1:35 .

**48** 56:21, 57:3, 57:11, 58:1, 58:6, 61:17, 70:3, 70:4 .

.

.

**< 5 >.**

**5-cv-02029-ttc** 1:10 .

**5th** 1:35 .

.

**< 6 >.**

**65** 45:13 .

**65(a** 3:20 .

**65(a)** 45:22 .

.

.

**< 7 >.**

**706** 1:46 .

**753** 72:11 .

.

**< 8 >.**

**8** 46:7, 46:12, 47:23 .

**83** 51:7 .

**83(b** 40:23 .

**89** 68:16 .

.

.

**< 9 >.**

**9** 1:19, 2:2 .

**950** 1:30 .

**[sic]** 4:9 .

.

.

**< A >.**

**A-g-u-i-r-r-e** 66:18 .

**A.** 1:33 .

**a.m.** 1:19, 2:2, 40:13, 72:4 .

**AARP** 54:20, 57:10, 60:16, 68:19 .

**ability** 17:21, 33:6, 59:5, 59:18 .

**able** 29:25 .

**above-entitled** 72:13 .

**abrogate** 12:24 .

**absence** 4:12, 13:14 .

**absent** 41:6, 45:16 .

**Absolutely** 4:1, 12:1, 15:24 .

**abstract** 18:15, 18:18 .

**accept** 55:20 .

**acceptable** 66:14, 67:12 .

**accounts** 37:16 .

**across** 3:23 .

**Act** 3:15, 12:23, 13:8, 19:4, 27:10, 32:23, 32:24, 36:14, 36:17, 40:2, 42:5, 47:2, 48:10, 48:14, 48:17, 67:5, 67:7, 67:9 .

**acting** 23:16, 23:24, 61:14 .

**actions** 38:21 .

**active** 2:20 .

**actors** 33:15 .

**acts** 39:20, 39:23, 39:25 .

**actual** 16:22 .

**actually** 6:14, 9:1, 9:14, 9:19, 10:8, 10:21, 11:15, 23:21, 29:14, 29:21, 31:16, 41:14, 48:23, 50:5, 56:9, 56:14, 59:23, 59:24, 64:9, 64:14, 70:11 .

**add** 14:22 .

**additional** 5:7, 5:10, 36:5, 36:7 .

**address** 4:18, 5:14, 22:4, 30:8, 31:4, 33:10, 38:23, 66:4 .

**addressed** 14:23 .

**addresses** 9:19 .

**addressing** 8:1 .

**adequate** 10:12, 10:13, 30:20, 63:8 .

**adjourn** 71:24 .

**adjourned** 72:3 .

**adjudicate** 47:8 .

**adjudicating** 49:9, 50:18 .

**adjudicatory** 23:12 .

**administrative** 10:2, 15:25, 17:18, 24:22, 25:13, 36:17, 42:17, 42:18, 43:18, 43:21, 44:2, 44:5, 44:9, 49:25, 54:1, 55:1, 55:17, 55:21, 55:22, 56:13, 57:7, 57:12, 57:20, 58:11, 59:9, 61:20, 61:23, 68:24, 69:2, 69:12 .

**administratively** 50:4 .

**administrator** 23:16 .

**administrators** 23:24 .

**admits** 52:24 .

**admitted** 61:7 .

**adopt** 51:2 .

**adopted** 40:24 .

**adoption** 8:18 .

**adverse** 25:4, 45:23 .

**advice** 37:10 .

**AEA** 27:19, 48:20, 48:22, 48:25, 49:2, 58:24, 59:19, 61:6 .

**affects** 19:9 .

**affirmed** 52:21 .

**afford** 3:6, 52:13 .

**agency** 18:17, 37:24 .

**aggrieved** 35:17 .

**ago** 22:18, 32:16 .

**agree** 19:18, 32:3, 64:15 .

**agreed** 11:17 .

**agreement** 26:23, 64:3, 66:6 .

**Aguirre** 66:18 .

**ahead** 52:1 .

**al** 1:5, 1:11, 2:6 .

**albeit** 23:14, 56:1 .

**Alexandria** 1:47 .

**Alien** 3:2, 3:15, 24:25, 27:10, 31:13, 41:4, 45:20, 46:10, 47:6, 47:9, 48:9, 48:10, 48:13, 48:17, 59:3 .

**aliens** 3:8 .

**alleged** 66:6 .

**allow** 58:11 .

**allowed** 46:12, 68:1 .

**allows** 38:24, 53:1 .

**alluded** 50:2 .

**almost** 35:12, 56:15, 68:5 .

**alone** 7:17 .

**already** 5:19, 25:6, 37:17, 38:19, 61:6 .

**alter** 49:17 .

**altering** 3:1, 66:16 .

alternative 37:12 .
**Alternatively** 4:4 .
alternatives 17:23 .
**Although** 13:1, 13:20, 34:21 .
altogether 61:14 .
amended 41:22, 60:2, 62:9 .
amendment 13:1 .
amendments 12:9 .
**America** 1:5, 2:6, 2:18, 32:7 .
analog 12:17, 44:1, 44:7 .
analogize 54:10 .
analogous 9:2 .
analysis 21:3, 21:8, 21:15 .
analyze 45:15 .
**ANDREW** 1:41 .
angle 18:4 .
animal 54:17 .
answer 6:9, 11:8, 36:19, 60:20,
   62:18, 63:9, 70:15,
   70:19 .
answers 71:15 .
antagonistic 20:21 .
apart 12:3 .
appeal 9:7, 10:2, 10:13, 10:15,
   15:25, 16:8, 17:19, 18:12,
   25:3, 25:17, 26:1, 26:2, 29:23,
   29:25, 37:12, 37:13, 37:15,
   45:9, 58:7, 60:25 .
appealability 25:14, 25:18, 25:20,
   27:8, 45:8, 49:8 .
appealable 26:7 .
appealing 25:25, 29:25 .
**Appeals** 15:20, 37:16, 55:3, 57:8,
   69:2, 69:9, 70:16 .
appear 23:17 .
appearance 2:9 .
appeared 31:6 .
appears 24:15 .
appellate 6:14, 8:25, 15:5, 30:17,
   37:6, 42:22, 43:5, 43:9, 44:12,
   55:1, 57:10 .
application 60:1, 60:5, 60:6 .
applications 61:2, 61:13 .
applied 12:3, 18:12, 21:14, 25:3,
   27:9, 33:15, 45:6, 55:3, 60:15,
   63:24, 67:24, 68:5, 68:12,
   68:18 .
applies 18:22, 31:11, 46:16, 59:7,
   59:9, 61:4, 61:5, 68:6 .
apply 17:20, 18:6, 21:21, 23:7,

27:16, 29:20, 30:15, 33:2,
   33:7, 38:10, 39:20, 39:24,
   42:21, 47:21, 48:16 .
applying 11:22 .
appointed 11:24 .
approach 39:13 .
approaching 22:3 .
appropriate 23:14, 54:5, 54:13,
   54:16, 54:25, 69:5 .
area 49:21, 69:21 .
areas 49:21 .
arguably 26:18, 42:1 .
argue 3:3, 4:4, 40:9 .
arguing 5:8, 19:4 .
argument 8:16, 13:4, 13:14,
   13:15, 13:20, 13:22, 13:23,
   22:17, 26:21, 36:18, 37:3,
   37:6, 39:7, 46:18, 53:23,
   60:17, 60:18, 61:25, 62:1,
   62:2, 65:20, 67:25 .
arguments 5:20, 5:25, 17:13,
   22:2, 22:4, 25:14, 26:8, 26:9,
   27:15, 27:16, 36:6, 65:17,
   65:18, 71:12 .
arise 37:3, 48:12, 55:12,
   69:25 .
arising 47:6 .
**Arizona** 32:16, 33:14, 38:18,
   38:21, 38:22 .
arose 50:9 .
around 36:25, 57:3, 67:10 .
as-applied 60:24, 64:11, 64:16,
   68:8 .
ascertain 54:3, 61:11, 61:16 .
assault 35:16 .
assert 4:1 .
asserted 42:3, 42:17 .
asserting 18:14 .
assess 28:12 .
assessing 41:4, 41:6, 41:8 .
assessment 54:13, 55:16 .
assume 16:12, 23:7, 34:15 .
assumes 4:25, 42:5 .
attempts 47:25 .
**Attorney** 7:23, 8:10, 16:19, 31:23,
   32:11, 47:7, 49:20 .
attorney-client 17:1 .
authority 3:4, 3:12, 6:14, 7:4,
   9:14, 9:15, 10:21, 23:14,
   23:15, 29:17, 32:18, 33:4,

38:8, 48:5, 49:21, 49:22,
   50:23, 55:18, 62:4, 67:9,
   69:22 .
authorization 38:14 .
authorize 12:10 .
authorized 38:8 .
authorizes 19:10 .
automatic 24:18, 40:20,
   58:21 .
automatically 3:6, 28:25, 45:19,
   46:16, 66:25, 67:14,
   70:8 .
availability 17:17, 30:17 .
available 17:23, 21:5, 23:21,
   37:15, 39:5, 39:11, 39:12,
   47:20 .
**Ave** 1:30 .
averted 65:1 .
avoid 16:1, 16:2, 17:24 .
avoided 17:15 .
aware 24:10, 24:17, 26:8, 27:17,
   30:25, 34:21, 45:7, 49:1 .

.

**< B >.**
**Back** 20:6, 20:12, 20:23, 27:11,
   31:14, 35:8, 36:15, 39:1, 40:9,
   43:7, 43:18, 45:11, 48:8,
   51:22, 52:8, 56:15, 62:22,
   66:15, 66:22, 67:17, 67:18,
   67:20, 72:1 .
backdrop 30:22 .
**Baker** 5:4, 50:7 .
balance 47:1, 63:21, 64:19 .
ballpark 61:18 .
**Baltimore** 1:17 .
bar 7:22, 8:3, 31:2, 47:3 .
bare 48:18 .
barely 21:18 .
**Barrett** 55:13 .
bars 41:13, 43:13, 46:6,
   46:7 .
based 22:3 .
bases 47:25 .
basic 28:5, 40:21, 53:24 .
**Basically** 24:8, 44:24, 46:9, 46:20,
   46:22, 50:13, 50:20, 52:6,
   52:24 .
basis 10:7, 19:5, 19:16, 19:20,
   26:1, 32:24, 33:3, 33:4, 44:20,

44:24, 45:1, 46:14, 56:23,
   56:25 .
battle 63:2 .
**Baylson** 52:20 .
becomes 19:12 .
begs 25:2 .
behalf 2:12, 2:24, 32:7, 47:6 .
belabor 47:15 .
belief 56:17 .
believe 5:3, 7:1, 25:16, 25:23,
   29:6, 32:4, 44:21, 47:2, 50:9,
   50:12, 51:1, 66:5, 66:19,
   66:21, 66:23, 67:6,
   68:21 .
belonged 9:11 .
**Bench** 11:18, 11:19, 11:20, 11:23,
   11:24, 14:10, 16:13,
   21:12 .
**Bench.** 11:21 .
benefit 53:25 .
best 33:19, 36:19, 51:15,
   64:23 .
better 7:11, 11:8, 13:22, 13:23,
   54:19, 64:24, 71:15 .
beyond 3:11, 10:24, 18:24, 45:25,
   46:18, 63:12 .
big 8:8, 37:20, 57:15, 61:7 .
bind 35:18, 45:25 .
binding 7:16, 9:14, 13:7,
   30:25 .
bit 20:23, 23:11, 24:16, 27:12,
   30:19, 34:11, 68:9 .
bleeds 43:12 .
board 3:23 .
body 39:20 .
boils 19:3 .
**Bolin** 11:10, 30:13 .
boundaries 69:21 .
**Boy** 15:18, 21:17, 36:22, 56:24,
   61:3 .
**Branch** 4:6, 4:7, 6:4, 6:5, 14:2,
   14:10, 14:24, 18:7, 18:16,
   19:11, 31:17, 33:16, 38:7,
   60:22, 61:4 .
branches 3:25, 20:20, 20:21,
   71:1 .
brand 42:11, 50:20 .
breaker 9:21 .
breath 23:19 .
brief 19:1, 20:11, 31:15, 35:23,

43:6, 44:23, 47:4, 49:19, 50:2,
50:10, 54:2, 59:25 .
**briefed** 4:15, 6:8 .
**briefing** 14:23, 24:19, 25:12,
27:19, 31:7, 44:4, 50:20,
69:25, 70:25, 71:5, 71:11 .
**briefly** 2:15, 18:25, 50:24, 63:4,
67:16 .
**briefs** 11:17, 17:19, 24:7, 30:18,
48:9, 48:13, 52:14, 54:21,
62:11, 67:6, 69:6, 69:9, 69:14,
71:13 .
**bring** 6:4, 9:4, 19:13, 20:19, 33:6,
33:23, 36:22, 39:7, 53:1,
60:23, 61:1, 61:19, 62:6 .
**bringing** 5:9, 8:6, 32:25, 61:3,
68:3, 68:7 .
**broad** 49:17, 49:19 .
**broader** 70:4 .
**broadest** 67:25 .
**brought** 8:9, 8:15, 35:3, 37:1,
67:17 .
**Brown** 24:6, 51:3 .
**burden** 70:13 .
**business** 14:4, 24:13, 62:25,
70:6 .

.

.

**< C >.**
**C.** 40:25, 47:23, 72:11 .
**CA4** 23:9 .
**calculus** 65:2 .
**California** 25:23 .
**call** 2:4 .
**called** 2:7, 24:6, 50:13, 54:22,
67:6 .
**Calling** 2:5 .
**capable** 26:20 .
**capacity** 1:11, 18:21, 23:13 .
**caption** 6:3, 6:4, 31:6, 37:19 .
**captions** 31:22 .
**CARDIN** 1:33 .
**Cardona** 59:24 .
**Carrick** 2:4 .
**carried** 3:14 .
**cartoonish** 56:15 .
**CASA** 13:13, 14:1, 14:6, 34:3,
34:6, 39:2, 69:18 .
**categorically** 41:19, 67:14,
67:22 .

**category** 20:5 .
**cause** 10:9, 12:6, 12:11, 12:15,
13:14, 13:19, 13:23, 14:3,
20:25, 21:2, 21:15, 21:20,
33:5, 33:8, 34:4, 34:9, 38:14,
38:21, 39:4, 39:9, 47:6, 50:9,
63:16, 63:17, 65:22 .
**causes** 21:18 .
**center** 38:15 .
**century** 19:6 .
**certain** 7:23, 12:10, 24:24, 33:23,
57:21, 62:24, 64:23,
68:23 .
**Certainly** 13:12, 15:4, 19:18, 20:3,
25:16, 26:4, 26:20, 27:11,
30:5, 34:6, 35:18, 62:11,
63:22, 71:23 .
**CERTIFICATE** 72:7 .
**Certified** 72:9 .
**certify** 72:10 .
**challenge** 6:21, 9:5, 10:2, 22:19,
28:21, 34:18, 60:21, 61:1,
61:3, 64:11, 64:16, 68:4, 68:8,
68:11 .
**challenged** 27:2 .
**challenges** 8:13, 8:14, 45:7, 45:8,
52:24 .
**challenging** 68:17 .
**Chamber** 11:19 .
**chance** 49:15 .
**changing** 56:9 .
**channels** 23:14 .
**characteristic** 59:14 .
**characterizes** 54:25, 55:2 .
**Chief** 1:10, 2:19, 2:24, 23:25 .
**choice** 9:16 .
**circle** 45:11, 66:15 .
**circuits** 60:15 .
**circumscribed** 48:5 .
**circumstance** 15:12 .
**circumstances** 12:19, 43:15,
43:17, 45:2, 51:24, 57:9 .
**circumvent** 38:11, 67:8 .
**cite** 23:9, 24:5, 24:7, 44:11, 47:15,
54:20, 67:6 .
**cited** 22:24, 33:2, 44:3, 52:23,
59:24, 67:9 .
**citizen** 50:14 .
**citizens** 32:8 .
**Civil** 1:9, 1:29, 1:34, 3:19, 40:22,

45:11, 51:7 .
**claim** 4:5, 5:23, 19:1, 47:6,
62:6 .
**claims** 17:10 .
**clarify** 61:19 .
**class** 3:7, 46:10, 46:17, 61:7 .
**class-wide** 46:9, 46:14, 68:2 .
**classic** 7:15, 36:13, 40:2, 56:12,
56:13, 57:7, 61:22 .
**classified** 26:10 .
**clause** 46:20 .
**clear** 13:1, 14:2, 28:13, 32:14,
33:1, 34:4, 34:10, 35:23,
48:18, 64:21, 65:17, 65:20,
67:24, 68:2, 68:7, 68:14,
68:15, 69:8, 70:1, 70:7 .
**cleared** 20:14 .
**clearly** 29:11 .
**CLERK** 2:5, 2:21, 40:11, 60:2,
72:2 .
**clients** 62:23 .
**clock** 14:19 .
**close** 21:22 .
**closest** 6:10 .
**co-equal** 3:25, 6:5, 33:16 .
**cognizant** 36:2 .
**collateral** 55:24 .
**colleagues** 11:25 .
**colloquy** 37:9, 65:7 .
**combination** 42:14, 43:23,
44:1 .
**combinations** 42:16 .
**comes** 51:21 .
**coming** 35:17 .
**commence** 47:7 .
**commend** 71:11 .
**comment** 51:11, 51:22, 52:1, 52:8,
52:12, 52:15, 62:8, 62:15,
62:17 .
**comment.** 52:13 .
**comments** 51:12 .
**commerce** 19:9 .
**committed** 49:22 .
**common** 12:17 .
**communications** 16:17,
16:21 .
**complain** 54:12, 64:1 .
**complaint** 3:18, 33:3, 47:16, 51:1,
55:8, 55:9, 63:10, 65:21,
68:16 .

**complete** 21:13, 37:24, 62:17,
63:9 .
**completely** 25:16, 48:7 .
**comply** 51:8, 51:9 .
**complying** 28:14, 67:18 .
**Computer-aided** 1:50 .
**concede** 11:3, 15:1, 15:3, 15:7,
19:15, 32:23, 35:18, 66:10,
66:14 .
**conceded** 19:3 .
**conceding** 33:2, 33:7 .
**conceived** 39:23 .
**concerned** 8:3 .
**concerns** 36:4, 50:8, 71:2 .
**concluded** 71:24, 72:4 .
**concludes** 40:7 .
**conclusion** 21:4 .
**Conference** 72:15 .
**conformance** 72:14 .
**confrontational** 62:23 .
**Congress** 12:8, 12:10, 12:18,
13:8, 18:2, 18:4, 18:16, 38:8,
49:21, 69:22 .
**Congressional** 38:9 .
**conscious** 14:13 .
**consequences** 55:25 .
**consider** 10:25 .
**considerably** 31:22 .
**considerations** 10:6, 16:11,
16:25, 71:3 .
**consistent** 40:24 .
**constitutional** 32:18 .
**contemplate** 35:19 .
**contemplation** 34:14 .
**contempt** 20:19, 65:13 .
**contend** 3:5, 3:24, 4:9, 19:6 .
**context** 8:25, 12:5, 13:10, 21:19,
36:15, 47:19, 55:4, 58:16,
58:21, 58:22, 59:1, 59:13,
60:20, 64:10 .
**contexts** 55:12 .
**continued** 65:9 .
**continuing** 50:21, 50:22 .
**contrary** 24:10 .
**control** 51:5 .
**convince** 25:15 .
**cooperating** 20:20 .
**coordinate** 4:7, 19:11 .
**core** 23:6, 40:1 .
**corpus** 3:3, 24:3, 56:18 .

**Correct** 19:2, 19:5, 29:9, 32:8, 32:21, 42:6, 48:22, 72:12 .
**correspondence** 16:17, 16:21 .
**council** 8:15, 8:20, 9:12, 10:3, 10:14, 16:1, 16:9, 17:16, 30:1, 30:2, 36:23, 37:2, 51:13, 51:14, 51:17, 53:1, 62:7, 62:20 .
**Counsel** 2:9, 2:14, 16:4, 71:11, 71:25 .
**counseling** 21:16, 63:16 .
**counsels** 64:19 .
**count** 50:25 .
**countenance** 29:16 .
**counting** 14:20 .
**countries** 64:23 .
**country** 59:17 .
**County** 24:6, 51:3 .
**couple** 19:14, 27:13, 28:21, 44:18, 58:14 .
**coupled** 37:11 .
**course** 8:9, 10:16, 13:9, 15:9, 15:24, 17:12, 21:14, 22:11, 30:24, 48:10, 57:24, 59:4, 59:16, 62:20, 69:24 .
**Courts** 3:13, 6:20, 8:11, 12:22, 12:25, 13:2, 14:4, 42:15, 42:22, 43:9, 43:13, 44:8, 46:12, 47:5, 48:1, 49:11, 49:14, 55:3, 68:1, 69:9 .
**covers** 18:10 .
**Crawford** 24:6, 51:3 .
**create** 54:2 .
**creates** 27:8 .
**creation** 23:3 .
**credit** 7:25, 49:14 .
**criminal** 29:22 .
**critical** 54:11, 58:7, 58:10 .
**critically** 70:11 .
**crosses** 57:22 .
**CRR** 72:22 .
**CULLEN** 1:23 .
**curiam** 54:21 .
**cut** 57:15 .
.

**< D >.**
**D.** 1:40, 1:42 .

**danger** 64:8 .
**dangerous** 13:5 .
**Darwin** 66:18 .
**Dated** 72:16 .
**Day** 11:14, 13:20, 14:17, 20:24, 50:22, 56:10, 62:25, 70:6, 71:19, 71:23 .
**days** 54:8, 56:1, 62:25, 64:4, 70:8 .
**DC** 1:31, 1:36 .
**de** 62:5, 62:19 .
**deal** 13:10, 25:18, 37:20, 52:18 .
**dealing** 24:1, 24:2, 43:14, 67:21, 71:2 .
**dealt** 30:10 .
**debate** 17:19 .
**Debs** 19:3, 19:6, 19:14, 19:16, 19:23, 20:7, 20:8, 20:12, 20:22, 21:21, 32:13, 32:14, 32:15, 32:20, 33:5, 33:8, 33:13, 38:17, 38:24 .
**decades** 35:12 .
**decide** 54:3, 54:24, 55:18, 57:18, 58:8, 58:11, 71:22 .
**decided** 29:7 .
**decision** 4:16, 9:13, 9:18, 9:24, 10:23, 25:7, 47:7 .
**decisions** 6:11, 12:22 .
**declaration** 5:4, 50:7 .
**Declaratory** 2:23, 6:22, 19:4, 30:9, 32:24, 39:8, 39:11 .
**defeat** 46:2, 59:16 .
**defeats** 59:5 .
**defendant** 7:2, 46:1 .
**Defendants** 1:13, 1:38, 2:13, 3:21, 4:1, 4:4, 4:9, 4:23, 4:24, 8:2, 16:16, 29:22, 33:23, 33:24, 65:3, 65:9, 65:12 .
**defense** 23:6, 42:17, 42:18, 53:8 .
**definitely** 13:4 .
**definitive** 31:1, 63:3 .
**delay** 26:12 .
**deliberate** 17:1 .
**delving** 35:25 .
**demonstrating** 4:11, 4:12 .
**deny** 16:12, 71:8 .
**denying** 64:20 .
**Department** 1:29, 1:34, 2:12, 2:19,

16:18, 25:23, 38:3, 38:12 .
**depending** 68:13 .
**deplete** 56:18 .
**deportation** 41:19 .
**deportations** 27:20 .
**deported** 67:17 .
**deposition** 16:16 .
**depositions** 17:11, 17:17, 17:22 .
**describe** 44:23 .
**designed** 54:2, 55:17, 56:14 .
**desk** 56:24 .
**destroy** 59:2 .
**detail** 52:23 .
**details** 71:5 .
**detainee** 3:2, 24:25, 31:13, 45:20, 46:10 .
**detainees** 41:14 .
**detention** 28:22, 47:24 .
**determination** 56:22 .
**determine** 23:19, 67:1 .
**determines** 52:5, 52:6, 52:9 .
**detriment** 18:13 .
**developed** 18:5 .
**DHS** 49:21 .
**dialogue** 63:1 .
**difference** 23:22, 24:3, 24:5, 35:16, 38:2, 55:21, 56:12 .
**differences** 35:14, 35:15, 35:18, 44:11, 55:6 .
**different** 18:9, 27:13, 36:21, 43:1, 47:25, 55:12, 58:22, 60:6 .
**difficulties** 41:25 .
**diplomatic** 71:2 .
**dire** 52:1 .
**directed** 54:8 .
**directly** 6:15, 8:20, 9:2, 9:13, 31:10, 31:11, 55:15 .
**disagree** 13:17 .
**discovery** 16:14, 16:18, 17:10, 35:22, 65:7 .
**discrepancies** 53:3 .
**discrete** 28:2 .
**discretion** 25:1, 49:20, 63:12, 63:19 .
**discretionary** 47:23 .
**discuss** 7:12, 9:9, 30:18, 69:5,

69:14, 69:25 .
**discussed** 23:8, 30:19, 31:3, 38:19, 69:14 .
**discussing** 41:13, 43:24 .
**discussion** 6:24 .
**disguised** 36:21 .
**dislocations** 16:7 .
**dismiss** 3:21, 4:14, 4:17, 4:19, 4:22, 5:12, 5:19, 5:21, 5:22, 16:12, 45:5, 49:12, 63:9, 65:17, 65:21, 65:23, 70:19, 71:8 .
**dismissal** 3:23 .
**dismissed** 17:9, 58:4, 64:2 .
**dismissing** 49:12, 49:15 .
**dispatch** 58:9 .
**disposition** 56:16 .
**dispute** 3:24, 51:10 .
**disputes** 27:6 .
**disregard** 9:17, 20:18 .
**disruption** 65:3 .
**disruptive** 10:3 .
**dissenting** 11:16 .
**distinction** 8:8, 31:5, 31:8, 32:13, 33:21, 38:5, 57:15, 57:16 .
**distinguish** 13:9, 58:15, 58:23 .
**distinguishable** 6:12, 7:19, 19:24, 20:9, 30:24, 39:17 .
**distinguished** 7:6, 23:1 .
**distinguishes** 57:20 .
**distraction** 27:13 .
**divided** 65:18 .
**Division** 1:3, 1:29, 1:34 .
**docket** 25:22, 66:12 .
**doctrinal** 31:15, 69:17 .
**document** 24:20 .
**dog** 13:21 .
**doing** 20:14, 21:2, 30:3, 62:12 .
**DOJ** 32:10 .
**done** 71:12 .
**down** 14:20, 19:3, 46:19, 65:16, 71:25 .
**drawn** 63:2 .
**drive-by** 7:16, 9:20 .
**drop** 64:15 .
**due** 21:23, 63:22 .
**Duke** 1:46 .

**duly** 26:14 .

**during** 66:4 .

**dwell** 36:1 .

.

**< E >.**

**E.** 1:43 .

**earlier** 46:6, 47:19, 48:11, 51:4, 65:6, 66:16 .

**Easterbrook** 8:23, 9:3, 9:8, 9:25, 10:5 .

**Eastern** 52:22 .

**easy** 16:5, 21:9 .

**ecclesiastical** 11:19 .

**Education** 25:23 .

**effect** 11:22, 13:5, 28:8, 54:7, 56:6, 56:14, 56:19, 60:4 .

**effectively** 7:21, 13:17, 51:6, 59:2 .

**effort** 57:14 .

**either** 44:2, 61:12 .

**elaborate** 10:5 .

**Eleventh** 11:9, 24:6, 30:13 .

**Elizabeth** 1:27, 2:11 .

**emails** 16:17 .

**emergency** 26:17, 44:19, 45:1, 62:13 .

**emphasize** 30:17 .

**enabled** 71:13 .

**enacted** 26:14 .

**end** 11:14, 13:19, 20:24, 28:6, 30:5, 51:22, 52:8, 56:10 .

**endeavor** 71:22 .

**Enemies** 3:15, 48:10, 48:14, 48:17 .

**Enemy** 27:10 .

**enforce** 32:18 .

**enforcement** 43:2, 71:3 .

**enforcing** 23:3, 26:14 .

**enjoin** 12:25, 19:8, 26:6, 46:13, 57:2 .

**enjoined** 31:10, 31:12, 43:20, 49:3, 49:16 .

**enjoining** 11:18, 11:19, 12:5, 21:10 .

**enjoins** 43:4, 66:24 .

**enormously** 71:13 .

**enough** 21:24 .

**ensue** 18:23 .

**enter** 44:4, 44:8, 65:8, 67:5 .

**entered** 2:24, 25:1, 26:14, 27:7, 27:18, 27:22, 28:19, 28:25, 41:21, 41:23, 42:22, 43:9, 45:19, 46:11, 48:2, 49:6, 50:17, 50:22, 51:16, 66:12, 66:20, 68:20, 69:4, 69:20 .

**entering** 23:25, 68:21 .

**enters** 69:21 .

**entire** 6:6, 15:13, 31:12, 66:24 .

**entirely** 63:10 .

**entities** 49:22 .

**entitled** 50:14 .

**entitlement** 70:14 .

**entry** 45:24 .

**enunciate** 34:13 .

**equally** 40:3 .

**equitable** 3:9, 21:9, 40:22, 42:16, 43:25, 63:19, 67:5 .

**equities** 41:8, 63:21, 64:19, 70:24, 71:4 .

**equity** 12:18, 14:3, 39:5 .

**ERIN** 1:43 .

**ERO** 5:4 .

**error** 60:16 .

**especially** 44:9 .

**Esquire** 1:27, 1:28, 1:33, 1:40, 1:41, 1:42, 1:43, 1:44 .

**Essentially** 9:4, 19:7, 19:12, 23:10, 23:12, 23:18, 28:3, 30:13, 36:24, 39:13, 42:6, 42:20, 42:22, 48:4, 51:24, 54:3, 56:4, 61:17, 62:3 .

**establish** 70:14 .

**et** 1:5, 1:11, 2:6 .

**evading** 26:21 .

**event** 37:13 .

**everybody** 61:5 .

**everything** 10:4, 17:4, 19:19, 33:11, 58:3, 60:12 .

**evidence** 5:7, 5:10, 49:23 .

**evidentiary** 5:1, 5:6 .

**ex** 45:14 .

**exacerbated** 65:5 .

**Exactly** 11:12, 12:4, 15:6, 23:3 .

**example** 32:17, 50:9, 50:19, 53:3, 55:7, 56:15, 66:16 .

**examples** 44:16, 44:18,

66:4 .

**exceeded** 29:17 .

**except** 43:15 .

**exception** 51:25, 62:13 .

**exceptionally** 37:10 .

**exceptions** 61:9 .

**excludes** 47:1 .

**execute** 47:8 .

**Executive** 4:6, 6:4, 14:2, 14:24, 16:7, 16:25, 18:1, 18:2, 18:4, 18:10, 18:16, 19:7, 19:12, 20:13, 28:20, 31:17, 38:7, 57:25, 58:15, 59:2, 60:22, 61:4, 63:22 .

**exercise** 24:20, 55:17, 62:4, 63:19 .

**exigent** 51:24 .

**exist** 54:18, 61:10 .

**expect** 18:7, 19:22 .

**expedited** 28:1, 28:7, 47:18, 70:17 .

**expeditious** 25:7 .

**expeditiously** 71:18 .

**experience** 37:21 .

**explain** 43:6, 45:16, 45:17, 68:16 .

**explains** 62:8 .

**explicitly** 6:20, 43:4, 47:1, 47:16 .

**express** 4:5, 12:6 .

**expressly** 12:11 .

**extend** 14:24, 66:7 .

**extended** 64:3, 70:4, 70:9 .

**extension** 66:10, 66:14 .

**extent** 6:8, 9:9, 9:21, 17:13, 42:1, 49:4 .

**extraordinary** 6:3, 10:17, 12:19, 17:8, 35:5, 60:24, 63:14, 63:15, 65:11 .

.

**< F >.**

**face** 14:20, 22:13, 25:13, 28:3, 44:10, 48:19, 70:5 .

**facial** 6:21, 27:6, 52:24, 60:21, 61:1, 61:3, 67:24, 68:10, 68:11 .

**facial.** 27:12 .

**facially** 27:9 .

**facilitate** 64:23 .

**facilitating** 65:20 .

**fact** 9:22, 12:14, 19:19, 22:14, 26:5, 38:13, 41:11, 45:7, 46:21, 54:14, 58:18, 64:20, 69:12, 70:4 .

**facto** 62:5, 62:19 .

**factor** 53:21, 55:10, 58:13, 60:14 .

**factors** 21:16, 21:17, 41:2, 41:10, 53:15, 63:4, 63:15, 63:17, 63:20 .

**facts** 68:22 .

**failed** 4:5 .

**failure** 18:25 .

**fair** 6:9, 14:16, 17:6, 54:7 .

**fall** 4:10 .

**falls** 12:2 .

**far** 8:16, 10:3, 10:17, 20:8, 27:2, 27:16, 37:9, 48:16 .

**fast-paced** 26:17 .

**fatal** 53:4 .

**favor** 71:4 .

**favors** 41:8 .

**Federal** 2:25, 3:19, 4:7, 6:23, 11:7, 12:3, 12:5, 12:22, 12:24, 13:10, 14:4, 23:17, 24:2, 30:15, 40:22, 40:24, 41:1, 46:25, 47:5, 51:7, 51:8, 54:9, 72:23 .

**felt** 50:17 .

**few** 24:4, 25:11, 32:16, 36:11, 44:3, 66:3, 66:4, 67:2 .

**figure** 56:24, 57:4, 57:5, 61:17 .

**file** 25:2, 28:17, 30:6, 49:11, 58:7, 70:17 .

**filed** 2:19, 3:2, 3:21, 6:23, 24:24, 50:10, 50:11, 66:19 .

**files** 31:14, 50:1 .

**filing** 3:18, 16:22, 19:5, 28:18, 31:22, 46:10 .

**final** 20:11, 22:1, 46:22, 46:23, 49:9, 56:1, 66:1 .

**find** 9:23, 64:6 .

**five** 47:25, 64:4 .

**flag** 65:14 .

**flagged** 60:3 .

**flips** 70:12 .

**floodgates** 35:2, 35:7, 36:3 .

**focus** 7:7 .

focused 62:24 .
focuses 60:18 .
follow 10:22, 17:5, 69:3,
  69:5 .
followed 62:14, 66:9 .
Following 3:18, 70:6 .
foreclose 9:5 .
foregoing 72:11 .
foreign 59:17 .
forget 43:19 .
form 37:2, 42:12, 43:25 .
formally 7:20 .
format 72:14 .
forth 26:10, 42:1, 62:22 .
forum 65:14 .
forward 50:18, 52:7, 53:9, 54:4,
  56:10, 57:1 .
found 17:3 .
foundation 19:16, 22:16 .
four 11:16, 53:20, 55:10, 58:12,
  60:14 .
Fourth 7:3, 11:4, 14:25, 15:2,
  15:4, 15:10, 15:19, 25:4,
  30:25, 34:12, 34:14, 34:17,
  34:19, 34:23, 38:16, 55:6,
  58:8, 58:15, 58:16, 60:7,
  70:12 .
frankly 13:9, 39:7 .
Friday 70:6 .
friend 36:12, 37:4, 37:18, 37:23,
  39:15, 54:17, 55:5,
  61:12 .
friendly 20:15, 20:16 .
front 38:15, 61:19 .
frown 54:19 .
frustrated 41:25 .
full 14:16 .
fully 4:15, 14:24 .
functioning 24:23 .
functions 24:9, 24:11 .
fundamental 15:14, 23:22, 24:3,
  24:5, 38:2, 58:25, 59:19,
  59:20, 60:9, 61:15 .
fundamentally 10:8, 39:16, 40:4,
  53:23 .
fundamentals 6:1 .
future 16:14 .
  .
  .
< G > .

G. 72:8, 72:22 .
game 17:7 .
gate 46:15 .
General 16:19, 21:22, 38:6, 47:7,
  49:20 .
generally 3:13, 26:22 .
generation 35:20 .
GEORGE 1:10 .
gets 10:24, 24:16, 25:1, 26:13,
  28:19, 29:2, 45:19, 46:11 .
getting 15:12, 24:21, 26:25, 27:7,
  28:16, 57:19, 64:10,
  70:9 .
Ghamelian 66:5 .
give 7:25, 21:25, 28:15, 37:10,
  50:8, 55:9, 64:9 .
given 3:12, 9:16, 24:25, 26:5,
  26:18, 67:23, 69:2 .
gives 61:20 .
giving 28:15 .
governs 24:12 .
grant 16:12, 29:15, 46:8, 68:2,
  71:8 .
granted 5:21, 5:22, 25:22,
  57:13 .
grants 4:19 .
grapples 10:21 .
gravamen 55:8 .
Great 5:11, 59:6 .
ground 48:6, 48:7 .
grounds 53:9 .
Grupo 13:12, 13:25, 21:7, 34:3,
  34:5, 34:6, 39:1, 39:6, 42:15,
  43:24 .
guess 31:21, 37:9, 51:18 .
guide 25:6 .
  .
  .
< H > .
half 22:5 .
hampering 49:20 .
happen 17:9, 24:24, 61:21,
  62:7 .
happened 62:8 .
happening 21:11, 29:1, 44:7 .
happens 35:12 .
happy 5:13, 16:3, 44:17 .
harassment 39:22 .
Hard 19:15, 58:4 .
harm 4:12, 41:6, 41:11, 41:18,

41:20, 45:16, 67:22, 69:15,
  69:23, 71:4 .
harmed 31:10, 33:22, 45:10,
  69:16, 69:19 .
harms 41:24, 69:25 .
hashed 26:9 .
he'll 41:6 .
head 15:23, 37:24, 57:3,
  70:12 .
head-on 31:5 .
Health 22:25 .
hear 4:22, 4:23, 5:13, 23:21,
  25:15, 47:5 .
heard 34:2, 43:21, 66:23 .
HEARING 1:22, 2:8, 37:9, 65:12,
  71:14 .
hearings 41:25 .
held 6:21, 7:3, 19:7, 53:1,
  72:13 .
Help 6:23, 7:3, 26:2, 33:16 .
helped 71:15 .
helpful 2:15, 32:20, 71:13 .
hereby 72:10 .
hesitation 21:16, 63:16 .
high-level 69:16 .
high-profile 59:4 .
higher 25:15 .
historical 23:5, 44:1, 44:7 .
historically 10:10 .
history 2:17, 12:24, 38:19 .
hit 68:19 .
hold 44:22, 65:12 .
holding 12:24, 39:24 .
Homeland 2:19, 16:19,
  38:13 .
Honorable 1:23, 40:11, 72:2 .
honored 16:2 .
hope 17:3, 71:18 .
horizontal 15:21 .
horrible 60:16 .
hour 4:21, 40:8 .
hours 56:22, 57:3, 57:12, 58:1,
  58:6, 61:17, 70:3, 70:5 .
House 16:20 .
housekeeping 66:21 .
huge 28:23, 45:3, 48:24 .
hunt 13:21 .
hurried 41:25 .
hybrid 42:12 .
  .

  .
< I > .
I-30 50:13 .
idea 10:1, 18:17, 21:15, 53:19,
  67:1 .
ignores 53:24 .
III 1:10 .
immediate 45:25, 51:19, 51:20,
  52:5, 52:7, 52:10 .
immediately 44:25 .
immigration 2:25, 3:4, 3:13,
  26:15, 43:13, 47:12, 50:4,
  54:9, 60:19, 63:23, 71:3 .
immune 4:1 .
immunity 4:3, 6:25, 11:1, 11:6,
  11:15, 12:16, 13:15, 13:20,
  13:23, 23:6, 23:8, 23:10,
  29:11, 31:2, 31:18, 34:1,
  36:13, 36:14, 36:20, 36:25,
  37:3, 39:18, 39:23, 39:25,
  40:3 .
implemented 23:18 .
implicate 58:20 .
implied 4:6, 20:25, 21:2, 21:15,
  39:3 .
implies 42:22 .
imply 21:9, 42:25 .
important 24:1, 38:5 .
imposed 63:24 .
impression 11:4 .
imprimatur 12:8 .
improperly 9:10, 36:21 .
Improvement 12:23 .
INA 3:14, 27:16, 27:23, 28:24,
  46:13, 47:9, 48:13, 48:22,
  49:25, 58:25, 59:20, 60:20,
  61:9, 61:24 .
incidental 43:8 .
include 12:12 .
including 3:9, 4:10, 15:15, 19:19,
  46:13, 57:18, 63:25 .
inconsistent 61:24 .
incorporated 7:22 .
independent 47:3, 47:13 .
independently 46:2, 46:19 .
indicated 5:19, 37:16 .
individual 7:1, 16:15, 18:12, 32:1,
  45:5, 68:12 .
infer 21:10, 21:20, 63:16 .
inferred 20:25 .

inferring 21:2 .

infers 21:18 .

influence 63:5 .

informs 12:14, 12:15 .

inherent 23:12, 33:5, 38:8, 55:18, 62:4 .

inherit 56:23 .

inhibited 26:15 .

initial 52:16 .

inject 16:24 .

injunctions 15:17, 26:6, 28:14, 40:20, 55:14, 67:19 .

injunctive 2:23, 3:7, 6:22, 10:11, 25:25, 30:9, 30:14, 34:8, 39:8, 39:11, 40:4, 41:9, 46:5, 53:25, 68:21 .

injury 18:18, 58:5, 63:20, 63:21, 63:25, 64:5, 64:17, 64:18, 64:25 .

inquiries 39:13 .

instance 9:12, 27:2, 33:14, 39:24, 49:25, 56:21 .

Instead 15:20, 49:6, 55:16 .

institutional 18:8, 18:18, 18:21 .

intend 5:6 .

intends 4:16, 5:1 .

intention 15:2 .

interactions 7:24 .

interest 14:13, 18:15, 18:20, 26:12, 41:9, 42:2, 70:24 .

interesting 13:11 .

interests 18:8, 26:14, 33:6 .

interim 53:20, 54:14, 54:22 .

interlocutory 25:3, 26:1, 37:12 .

internal 16:16 .

interpreted 50:16 .

interrupted 21:24 .

interstate 19:9 .

interval 54:2, 55:18, 57:18 .

intervening 13:8 .

invalid 29:18, 40:21, 41:12, 45:12, 45:13, 47:21, 48:19, 53:2, 53:10, 68:4, 69:20, 70:20, 71:7 .

invalidated 52:22 .

invalidity 68:13 .

invert 15:17 .

involve 20:3 .

involved 7:19, 7:21, 26:16 .

involves 9:1, 9:22 .

involving 11:24 .

irreconcilable 35:15 .

irreparable 4:12, 41:6, 41:11, 41:18, 41:19, 45:16, 58:5, 63:20, 63:21, 64:5, 64:17, 64:18, 64:25, 67:14, 67:22, 69:15, 69:23, 69:24 .

irreparably 45:10, 69:16, 69:19 .

Island 8:12 .

issuance 41:11 .

issued 31:1, 54:21, 60:3 .

issues 7:13, 7:14, 8:1, 8:5, 17:18, 18:24, 25:18, 25:21, 26:24, 30:4, 35:24, 37:5, 38:22, 39:21, 49:8, 49:14, 52:18, 57:18, 69:7, 71:14, 71:16 .

issuing 3:15, 70:9 .

itself 2:22, 4:2, 7:2, 19:23, 44:6, 64:21 .

.

.

< J > .

Jackson 22:25 .

JGG 25:22 .

join 39:13 .

joined 8:23 .

Judge 1:10, 2:20, 2:24, 8:23, 9:3, 9:8, 9:25, 10:5, 12:5, 13:16, 15:13, 23:2, 23:12, 23:16, 23:25, 27:3, 32:1, 40:23, 71:17 .

judges 2:21, 7:1, 12:3, 12:12, 12:25, 16:3, 16:5, 21:1, 23:23, 30:15, 32:4 .

Judgment 19:4, 32:24 .

judgments 47:23 .

Judiciary 4:7, 18:1, 20:4, 21:12, 31:17 .

junior 55:14 .

jurisdictional 7:16, 8:1, 9:20, 27:5, 41:13, 43:12, 46:6, 46:7, 47:3, 47:14, 69:21 .

jurisprudence 39:21 .

Justice 1:29, 1:34, 2:12, 55:12 .

justices 11:17 .

justiciability 8:5, 18:9, 31:19, 37:5 .

justification 13:7, 20:5 .

justified 62:12 .

justify 12:20 .

.

.

< K > .

keeps 27:7 .

kept 66:17 .

KEVIN 1:44 .

King 11:18, 11:19, 11:20, 11:21, 11:23, 14:10, 21:12 .

knowledge 33:19, 51:15 .

.

.

< L > .

L. 1:10 .

label 18:10 .

Labor 71:19, 71:23 .

lack 65:22 .

laid 41:3 .

landed 56:24 .

language 49:17, 49:20, 66:17 .

large 18:23, 22:15, 44:7 .

last 21:19, 39:15, 50:12, 59:21, 65:16, 66:19, 71:20 .

lasts 57:21 .

later 18:18, 18:19, 41:14 .

latter 14:1 .

law 10:12, 10:13, 12:17, 12:21, 18:5, 22:24, 24:10, 26:2, 26:15, 31:7, 32:12, 33:19, 35:12, 35:24, 38:6, 38:11, 40:24, 41:1, 43:13, 46:21, 47:12, 51:9, 63:8, 67:21, 71:3 .

LAWRENCE 1:41 .

laws 60:19 .

lawsuit 6:2, 6:3, 15:8, 17:8, 17:10, 23:7, 30:9, 32:25, 33:4, 33:6, 35:14, 36:3, 37:20, 37:22, 38:14, 53:1, 57:6, 63:3, 65:15, 68:11, 68:17 .

lawsuits 24:14, 31:17, 31:22, 35:1 .

lay 30:2, 34:7 .

lead 31:24, 40:16 .

learned 50:10, 59:13 .

least 8:21, 9:4, 10:25, 20:2, 22:18, 44:5, 47:25, 54:8, 56:21, 63:1, 69:9 .

leave 24:25 .

left 22:22, 48:5 .

legal 3:1, 49:18, 66:17 .

legislative 12:23 .

legislator 18:15 .

length 9:9 .

less 10:3, 10:17, 62:22, 62:23 .

level 15:3, 60:6, 68:23 .

levels 6:12 .

liberty-protecting 20:16 .

lift 27:4, 44:25, 45:1, 70:17 .

lifted 44:20 .

light 13:25 .

lightly 34:21 .

likelihood 3:10, 4:11, 35:24, 41:5 .

likely 26:21, 69:18, 69:20 .

limit 47:17 .

limitation 39:19 .

limitations 47:14, 60:19 .

limited 3:12, 15:8, 27:24, 27:25, 28:1, 43:15, 43:16, 45:2, 61:2 .

limiting 34:22 .

line 22:21, 32:15, 57:22 .

linebacker 57:2 .

lines 63:2 .

list 11:2 .

listed 41:22 .

litany 17:4 .

litigants 3:7 .

litigate 25:15, 26:20, 26:23 .

litigating 8:11 .

litigation 26:17, 35:4, 43:21, 52:17 .

little 13:5, 20:23, 23:11, 24:16, 27:12, 29:3, 30:19, 34:11, 58:21 .

local 3:17, 7:19, 7:21, 8:13, 9:11, 9:23, 24:9, 24:12, 24:22, 24:23, 34:18, 36:14, 36:16, 36:20, 36:22, 36:24, 40:25, 50:25, 51:1, 51:5, 51:6, 52:22, 55:2, 61:25, 62:5, 62:13, 62:15, 62:19 .

located 45:20 .

**logic** 12:2, 14:24, 18:22 .
**logical** 39:12 .
**logically** 11:1 .
**lonely** 71:17 .
**long** 57:22, 70:25 .
**longer** 13:7, 19:3 .
**look** 12:23, 13:16, 30:14, 39:18, 49:15, 63:23 .
**looked** 8:24, 27:17, 68:22, 68:24 .
**looking** 44:5 .
**lopsided** 14:6 .
**lost** 45:7 .
**lot** 18:8 .
**lower** 13:6, 57:13 .
.
.
**< M >** .
**Mail** 19:10 .
**majority** 11:16, 13:2, 13:18 .
**management** 24:20 .
**manages** 24:12 .
**mandamus** 10:16, 15:25, 16:8, 17:22, 29:21, 29:24, 30:5, 30:6, 37:12, 37:14, 58:8, 60:25, 64:12 .
**mandatory** 41:2, 67:10 .
**manner** 40:24 .
**Maryland** 1:2, 1:17, 2:21, 2:22, 6:6, 15:20, 16:3, 23:18, 27:4, 27:21, 31:13, 45:20, 46:10, 49:1, 49:3, 72:10 .
**Massachusetts** 8:12 .
**material** 55:21, 56:12 .
**matter** 3:24, 6:25, 11:24, 16:4, 16:5, 16:13, 17:12, 37:20, 39:8, 57:3, 57:5, 69:17, 71:20, 71:21, 72:13 .
**matters** 3:5, 58:12, 66:21 .
**MATTHEW** 1:42 .
**mean** 49:18, 54:10, 57:24, 58:14, 68:10 .
**meaningful** 31:8, 32:12, 33:21, 59:6 .
**meanings** 27:13 .
**meantime** 45:9, 49:16 .
**measure** 18:23, 60:13 .
**mechanism** 8:19, 30:2, 55:17 .
**meet** 13:16, 13:24, 45:21, 45:22,

71:25 .
**member** 11:23, 46:9, 46:17 .
**members** 14:8 .
**memorandum** 71:19 .
**mental** 35:25 .
**mentioned** 48:11 .
**mere** 28:18 .
**Merit** 22:4, 72:8 .
**merits** 3:10, 4:9, 4:11, 4:18, 4:20, 5:22, 23:21, 24:16, 24:21, 25:17, 27:15, 29:2, 29:12, 36:6, 40:9, 41:5, 41:15, 46:3, 65:18, 65:19, 68:24 .
**method** 6:21 .
**Mexicano** 13:12, 13:25, 21:7, 39:1, 39:6 .
**middle** 13:24 .
**midnight** 56:17 .
**mind** 38:19 .
**mine-run** 64:18 .
**minimum** 8:7, 48:18, 61:6 .
**minor** 31:21 .
**misplaced** 53:23 .
**missing** 60:6 .
**mistake** 59:19, 59:20, 70:17 .
**Mitchell** 72:8, 72:22 .
**mix** 42:2 .
**modest** 31:23, 61:20, 66:23, 66:25 .
**moment** 53:15 .
**months** 25:8 .
**mootness** 26:20 .
**morning** 2:3, 2:14, 5:18, 14:17, 30:20 .
**motion** 3:21, 3:22, 4:14, 4:17, 4:18, 4:19, 4:22, 5:2, 5:12, 5:19, 5:20, 5:22, 16:12, 22:1, 40:15, 49:12, 49:24, 65:17, 65:23, 68:3, 68:15, 70:17, 71:8 .
**MOTIONS** 1:22, 4:14 .
**motivated** 17:20 .
**mounting** 6:21 .
**movant** 70:14 .
**move** 50:18, 50:24, 52:7, 59:14, 70:11, 70:16, 71:18 .
**moved** 3:19 .
**moving** 45:4, 59:3, 70:19 .
**Mullis** 11:11, 30:12 .
**multiple** 6:12, 39:17, 47:13,

60:15 .
**Murphy** 1:43, 1:45 .
**myself** 44:22 .
.
.
**< N >** .
**name** 6:4, 8:10, 38:2, 38:3, 38:11 .
**named** 7:2, 8:2, 28:4, 32:4, 32:9, 37:21 .
**narrow** 12:19, 61:6, 61:10 .
**nature** 7:7, 7:8, 26:11, 30:20, 65:4, 66:13, 68:4, 68:14 .
**near** 16:14 .
**necessary** 70:18 .
**need** 14:15, 24:18, 27:20, 36:2, 48:8, 48:14, 48:15, 51:19, 51:20, 52:5, 52:7, 52:10, 53:7, 53:16, 61:18, 62:16, 67:15, 67:20, 70:11 .
**needed** 9:21, 60:23 .
**needing** 58:19 .
**needs** 12:15, 54:14, 70:16 .
**nephew** 56:18, 56:23 .
**nevertheless** 19:6 .
**New** 18:19, 21:18, 42:11, 42:16, 43:25, 50:20, 54:17 .
**next** 10:25, 11:2 .
**nightmare** 17:24, 18:23 .
**nine** 14:8 .
**Ninth** 11:8, 13:16, 30:12, 44:14, 44:17, 44:25, 45:1 .
**Nken** 41:18, 54:18, 67:3, 67:13 .
**no-no** 37:24 .
**NO.** 1:9 .
**None** 6:10, 20:3, 45:18 .
**nonjudicial** 39:23 .
**nonjusticiable** 3:24 .
**nonstarter** 21:13 .
**normal** 15:17 .
**NORTHERN** 1:3 .
**notches** 32:2 .
**note** 2:17, 59:25 .
**noted** 29:10 .
**notes** 1:50 .
**nothing** 12:18, 14:9, 15:7, 32:12, 33:19, 33:22, 57:13 .
**notice** 45:17, 45:23, 51:11, 51:21, 51:25, 52:8, 52:11, 52:13,

52:15, 62:8, 62:15, 62:17 .
**notice-and-comment** 51:2, 51:10 .
**noticed** 60:3 .
**notion** 39:1, 66:22 .
**nub** 7:18 .
**nuisance** 19:8, 20:9, 21:10 .
**number** 2:7, 5:20, 12:22, 23:19, 23:20, 49:19, 60:1, 60:6, 66:18 .
**nutshell** 3:3 .
**NW** 1:30, 1:35 .
.
.
**< O >** .
**O'scannlain** 13:17 .
**objection** 53:18, 60:10, 66:8 .
**objections** 53:13 .
**objections.** 37:8 .
**observations** 59:21 .
**obvious** 6:2 .
**Obviously** 4:19, 6:8, 9:13, 13:7, 14:19, 16:2, 16:5, 17:12, 18:3, 58:5 .
**occur** 35:20 .
**occurred** 50:5 .
**occurs** 44:13 .
**odd** 58:21 .
**Office** 32:11, 38:3 .
**Official** 1:11, 5:4, 32:10, 72:7, 72:23 .
**officials** 3:1, 8:7, 12:12, 16:20, 54:9 .
**often** 70:3 .
**Okay** 5:11, 14:18, 21:8, 33:9, 40:18, 42:8, 51:20, 62:14 .
**Once** 35:20, 55:20, 63:12 .
**one-off** 35:10 .
**ones** 21:1 .
**online** 52:15 .
**opened** 35:2 .
**opening** 35:7 .
**operate** 38:7, 38:9, 42:6, 43:3, 55:15 .
**operated** 54:23 .
**operates** 43:1, 54:8, 55:7 .
**operating** 26:6 .
**opinion** 11:16, 13:17, 54:21,

55:13, 71:19 .
**opinions** 15:15 .
**opportunity** 14:16, 28:10, 28:17,
51:21, 52:12, 52:13, 52:18,
62:21 .
**opposed** 9:19, 17:8 .
**opposition** 3:22 .
**ordinarily** 70:13 .
**ordinary** 6:2, 9:7, 16:5, 17:8,
17:10, 17:15, 17:19 .
**original** 8:2, 59:25 .
**ostensible** 16:21 .
**otherwise** 27:5, 63:18,
67:10 .
**ourselves** 35:19 .
**outlined** 42:21 .
**outside** 7:17, 15:13, 59:15 .
**own** 23:3, 54:3, 65:13, 69:4,
71:17 .
.
.
**< P >.**
**p.m.** 70:6 .
**page** 72:13 .
**paragraph** 68:16 .
**parse** 11:16 .
**part** 17:25, 22:15, 30:22,
38:18 .
**parte** 45:14 .
**particular** 7:5, 13:21, 17:21,
18:13, 19:10, 27:4, 42:23,
61:2, 68:18, 70:1 .
**Particularly** 3:14, 6:24, 19:9 .
**parties** 6:7, 7:13, 14:23, 23:20,
38:20, 45:25, 54:1, 57:4,
57:19, 58:1, 61:19, 64:4,
66:9 .
**party** 18:20, 20:3, 35:17, 45:23,
55:15 .
**past** 17:5, 30:4, 35:3, 39:10 .
**Patricia** 72:8, 72:22 .
**Paul** 1:40, 2:13 .
**pending** 50:13, 56:16 .
**Pennsylvania** 1:30, 52:22 .
**penultimate** 38:16 .
**People** 28:16, 35:25, 67:16,
67:17 .
**per** 54:21 .
**perceived** 65:10 .
**perfect** 63:18, 64:10 .

**perfunctory** 48:6 .
**perhaps** 15:12, 64:11 .
**period** 49:2, 54:15 .
**permanent** 54:4, 54:25 .
**permissible** 61:8 .
**person** 28:4 .
**personal** 37:21 .
**personam** 43:3, 69:13, 70:8 .
**persuasive** 7:4, 9:14, 9:15, 9:24,
10:20 .
**perversely** 64:9 .
**petition** 3:2, 8:19, 24:24, 28:17,
28:18, 30:6, 31:14, 41:14,
41:17, 45:19, 46:11, 46:21,
46:24, 47:9, 48:3, 49:12,
49:13, 50:11, 55:3, 58:4, 59:1,
60:1, 64:2, 64:15, 64:22,
66:19, 68:14 .
**petitioner** 41:5, 41:22, 41:24,
42:2, 42:23, 50:1, 55:25,
58:17, 59:15, 60:12, 64:13,
64:15, 64:21, 67:22 .
**petitions** 3:10, 27:10, 27:17,
43:14, 43:16, 58:18, 58:20,
58:23, 58:24, 59:7, 59:8,
59:10, 60:19, 61:10 .
**PFR** 46:24 .
**PI** 57:21, 63:17, 68:15 .
**pick** 22:22 .
**picked** 22:13 .
**piece** 36:6 .
**place** 10:9, 11:14, 44:18, 45:18,
58:3 .
**places** 44:15 .
**plaintiff** 2:9, 31:9, 31:24, 32:10,
33:21 .
**Plaintiffs** 1:7, 1:25, 2:18, 2:23,
3:3, 3:5, 3:18, 4:4, 23:2 .
**plan** 4:21 .
**planning** 5:5 .
**play** 17:2 .
**plead** 36:25 .
**pleads** 62:1 .
**Please** 2:10, 5:18, 40:14, 44:25,
53:12 .
**plenary** 3:4 .
**plenty** 64:16 .
**PLLC** 1:45 .
**podium** 5:15, 5:16, 22:10 .
**pointed** 31:16, 32:11 .

**points** 9:25, 24:5, 36:12, 55:5,
58:14, 60:22, 67:2,
68:19 .
**poker** 22:13 .
**police** 3:4, 38:5 .
**policy** 24:8, 51:5 .
**political** 71:1 .
**position** 25:13, 26:5, 29:5, 35:6,
50:3, 56:4, 59:22, 61:5, 61:11,
62:11, 62:15, 65:11 .
**possibility** 61:21, 63:1, 64:25,
67:4 .
**post** 29:7 .
**post-pulliam** 11:6 .
**postdate** 6:18 .
**postdates** 6:13 .
**posture** 31:4 .
**potential** 27:8, 55:24 .
**potentially** 15:5, 16:20, 16:22,
45:14, 68:5 .
**pour** 18:17 .
**power** 3:12, 47:18, 48:1,
62:4 .
**powers** 10:4, 34:8, 35:17,
38:1 .
**practical** 16:10, 16:24, 50:8,
57:5 .
**practice** 24:8, 40:23, 51:5, 57:24,
57:25, 63:24, 69:2 .
**practices** 34:18 .
**precedent** 6:9, 13:3, 22:21, 23:5,
25:6, 42:4 .
**precedented** 36:3 .
**precedents** 6:17, 13:7 .
**precipitated** 48:14 .
**precisely** 8:12, 58:7 .
**precursor** 6:7 .
**precursors** 14:7 .
**predate** 8:22 .
**predated** 13:12 .
**prematurely** 50:1 .
**prerequisite** 41:11 .
**prerequisites** 3:9, 42:24 .
**prerogatives** 63:23 .
**prescribing** 52:9 .
**present** 36:4, 50:22 .
**presentation** 66:5 .
**presented** 71:12 .
**presents** 3:24 .
**preservation** 57:17 .

**preserve** 54:24, 57:11, 57:17,
61:21 .
**preside** 11:24 .
**President** 37:22, 37:25 .
**presiding** 15:10 .
**pretty** 37:5 .
**prevail** 25:16 .
**prevailed** 64:2 .
**prevent** 23:2 .
**previewed** 46:6 .
**principle** 17:7, 32:19, 34:22 .
**principles** 18:6, 21:22,
61:15 .
**prior** 43:10, 45:23 .
**private** 16:4, 18:20, 20:2, 33:15,
38:20 .
**privilege** 16:25, 17:1, 17:2,
17:10 .
**privileges** 16:25, 17:13 .
**probability** 67:3 .
**probably** 11:2, 13:9, 21:7, 21:10,
22:3, 22:13, 24:1, 37:17,
38:10, 67:25 .
**problem** 8:6, 10:15, 15:14, 16:2,
16:24, 18:14, 26:15, 26:16,
27:8, 28:23, 29:11, 34:1,
36:25, 46:15, 48:24, 51:8,
51:16, 59:1, 61:1, 61:7,
70:20 .
**problematic** 10:8 .
**problems** 15:16, 16:1, 29:3, 45:3,
46:2, 46:8 .
**procedural** 2:17, 67:8,
67:10 .
**Procedure** 3:20, 24:8, 40:23,
45:11, 51:5, 51:7 .
**procedures** 3:16, 51:6 .
**proceed** 17:11, 33:20, 52:11, 56:8,
58:2 .
**proceeding** 17:5, 17:18, 50:13,
56:4, 66:17 .
**Proceedings** 1:21, 46:14, 47:8,
49:2, 49:25, 50:4, 72:4,
72:12 .
**process** 17:1, 28:15, 28:16, 55:1,
56:2, 56:9, 68:23 .
**processes** 35:25 .
**processing** 64:7 .
**progeny** 19:23, 32:21, 33:5, 33:13,
38:17, 38:18, 38:24 .

**prohibited** 2:25 .
**prohibiting** 7:22 .
**proliferation** 35:4 .
**promptly** 52:12 .
**promulgate** 52:2 .
**promulgated** 7:20, 9:10, 36:22,
　62:10 .
**promulgating** 3:16, 23:16 .
**proper** 6:21, 19:16 .
**properly** 8:14, 18:11 .
**proposition** 38:6 .
**prospective** 30:14 .
**protect** 23:11, 23:12 .
**proverbial** 57:1, 57:2 .
**provide** 19:5, 32:24, 51:21, 53:25,
　55:18, 59:6, 59:16, 59:18,
　62:16 .
**provided** 8:19, 12:6, 45:18 .
**provides** 19:16, 19:20,
　53:19 .
**providing** 14:4, 22:15,
　60:13 .
**provision** 52:4 .
**provisions** 46:13 .
**public** 19:8, 20:9, 21:10, 41:9,
　52:11, 62:22, 70:24 .
**publicly** 52:15 .
**Pulliam** 11:16, 12:2, 12:7, 12:21,
　13:3, 13:10, 13:11, 14:8,
　15:16, 22:15, 22:20, 22:23,
　23:1, 30:14 .
**purport** 30:2, 43:19, 46:8 .
**purported** 44:4 .
**purportedly** 32:7 .
**Purports** 44:8, 44:9, 45:25 .
**purpose** 12:24, 51:4, 53:24,
　54:7 .
**purposes** 5:5, 65:19 .
**pursuant** 12:9, 38:9, 72:11 .
**pursued** 16:8 .
**push** 27:11, 31:14, 35:7, 36:15,
　39:1, 48:8, 66:22, 67:20 .
**put** 2:9, 15:11, 53:9 .
　.
　.
**< Q >.**
**qualification** 19:21 .
**question** 7:18, 10:11, 11:1, 11:5,
　25:2, 26:19, 26:20, 28:17,
　39:6, 63:6, 68:9 .

**questions** 9:19, 10:22, 12:16,
　28:2, 28:6, 28:12, 36:5, 36:7,
　46:21, 47:20, 47:22, 53:6,
　58:19, 61:19, 71:15 .
**quick** 36:12 .
**quickly** 21:4, 41:10, 45:4, 68:19,
　70:11, 70:16, 71:22 .
**quite** 9:15, 20:9, 56:8 .
**quo** 57:17 .
**quote** 51:23, 66:8 .
　.
**< R >.**
**rails** 20:14 .
**raise** 37:8, 38:22, 39:15, 46:21,
　49:14 .
**raised** 7:13, 7:15, 8:17, 38:22,
　39:15, 47:22 .
**raises** 35:24 .
**raising** 8:5 .
**rather** 3:14, 13:15, 60:24,
　62:25 .
**rationale** 23:10, 34:16, 48:24,
　49:4, 49:5 .
**rationales** 23:6 .
**reach** 4:20 .
**reaches** 4:8 .
**reaction** 37:9 .
**read** 12:22, 12:25, 19:1, 19:14,
　19:19, 26:2, 56:2, 56:7 .
**readily** 7:5 .
**reading** 30:16, 56:11 .
**real** 53:8, 56:14 .
**realistic** 35:24 .
**reality** 55:10, 57:16 .
**realizes** 58:2 .
**realizing** 49:11 .
**Realtime** 72:9 .
**reason** 9:23, 16:21, 17:7, 17:25,
　34:25, 38:4, 40:19, 46:19,
　50:19, 58:23, 60:23, 62:13,
　63:9, 63:10 .
**reasoning** 6:13, 13:18,
　30:23 .
**reasons** 10:19, 16:22, 24:13,
　25:11, 26:22, 27:5, 30:18,
　33:24, 39:17, 41:22, 42:19,
　43:5, 45:24, 49:19, 63:15,
　69:5, 69:13, 69:15,
　70:21 .

**rebuttal** 36:12, 38:16, 53:7 .
**recent** 25:6, 32:17, 42:12,
　50:10 .
**recently** 22:24, 25:24 .
**Recess** 40:8, 40:12, 40:13 .
**recognized** 22:18, 69:17, 70:3,
　71:1 .
**recognizing** 71:19 .
**reconstruction** 12:9 .
**record** 2:10, 5:1, 5:6, 49:23,
　52:14, 65:23 .
**reference** 7:22 .
**referenced** 66:6 .
**reflect** 54:13 .
**reflects** 54:14, 58:18 .
**regarding** 47:24 .
**regardless** 28:18, 47:21,
　48:3 .
**Registered** 72:8 .
**regulate** 40:23 .
**regulations** 72:14 .
**regulators** 23:24 .
**reiterate** 67:13, 71:6 .
**reject** 63:10 .
**relating** 46:13, 46:22 .
**relative** 50:14 .
**relatively** 61:20 .
**relaxed** 58:3 .
**release** 47:24 .
**relevance** 39:2 .
**relevant** 2:17, 34:6, 34:8 .
**reluctant** 21:19 .
**rely** 5:1, 20:7, 22:15 .
**relying** 19:23, 20:8 .
**remedies** 10:13, 14:5, 16:8,
　58:9 .
**remedy** 9:11, 10:12, 14:3, 21:9,
　30:18, 39:11, 46:24, 59:6,
　63:8, 63:14 .
**removable** 3:8 .
**removal** 28:1, 28:3, 28:7, 28:21,
　41:19, 43:3, 43:12, 43:14,
　46:14, 46:22, 46:23, 47:8,
　47:18, 56:1, 56:4, 58:19,
　58:24, 67:13 .
**removals** 3:13 .
**remove** 49:17, 59:17 .
**removed** 64:22 .
**removing** 3:1 .
**repetition** 26:21 .

**reply** 4:23, 19:1, 31:15,
　59:24 .
**Reporter** 72:7, 72:8, 72:9,
　72:23 .
**represent** 16:3 .
**representing** 15:19 .
**request** 37:12, 41:21, 44:6, 58:17,
　63:7 .
**requests** 60:12 .
**require** 40:20, 41:4, 41:6, 41:7,
　41:8, 45:23, 45:24, 52:25,
　67:3, 67:4 .
**required** 28:15, 68:23 .
**requirement** 46:1, 60:2 .
**requirements** 4:10, 40:21, 45:21,
　45:22, 67:10 .
**requires** 69:4 .
**requiring** 3:8, 24:23 .
**reserve** 36:6, 53:6 .
**reserved** 69:22 .
**resolution** 37:17 .
**resolve** 27:6, 35:15, 54:15 .
**respect** 21:23, 22:22, 23:17,
　34:21, 53:22, 61:9, 63:22,
　66:6, 70:23 .
**respectful** 14:20 .
**respond** 67:16 .
**response** 3:22, 31:15, 36:12,
　65:6 .
**responses** 50:6 .
**rest** 12:17, 17:11, 17:14, 20:3,
　21:14, 39:22, 70:24,
　71:5 .
**resting** 32:14, 32:15 .
**restrained** 43:20 .
**restraining** 28:19 .
**restrictions** 34:7 .
**result** 13:18 .
**resulted** 44:19 .
**retaining** 16:4 .
**return** 64:24 .
**reverse** 4:24, 15:22 .
**reversed** 29:13 .
**review** 3:13, 15:21, 15:22, 26:21,
　28:7, 30:23, 43:14, 43:16,
　46:21, 46:24, 47:10, 47:18,
　47:19, 47:24, 48:1, 48:6, 55:4,
　58:18, 58:20, 59:1 .
**reviewing** 28:2 .
**Rhode** 8:12 .

ripe 4:16 .
rise 40:11, 72:2 .
risk 59:8 .
RMR 72:22 .
Roanoke 16:6 .
role 71:1 .
room 64:16 .
round 40:7 .
route 10:16, 62:21 .
routes 17:16 .
ROWEN 1:42 .
rubric 11:22 .
rulemaking 23:13, 23:15, 29:17,
    51:3, 51:10 .
Rules 3:17, 7:7, 7:20, 7:21, 23:23,
    36:20, 40:24, 40:25, 41:2,
    45:11, 50:25, 51:6, 51:8, 55:2,
    55:3, 60:14, 61:25, 62:13,
    67:8 .
ruling 25:5, 26:25, 31:1,
    52:21 .
rulings 7:16 .
run 53:13 .
Russell 1:10, 2:6, 2:20, 2:24,
    23:16, 23:25 .

.

< S >.
safer 13:9 .
sails 62:24 .
Salerno 61:4 .
sanction 38:9 .
SARAH 1:28 .
satisfied 42:23, 63:18 .
satisfy 3:8, 37:14, 53:16,
    58:12 .
satisfying 4:10 .
saw 48:13 .
saying 7:12, 10:5, 12:9, 20:16,
    20:24, 24:19, 29:14, 33:7,
    37:23, 39:3, 62:3, 66:15 .
says 23:22, 24:7, 33:19, 33:22,
    34:22, 43:19, 43:24, 46:20,
    47:23, 51:1, 51:4, 51:10, 52:4,
    52:6, 66:8, 67:7, 70:5 .
scenario 17:24, 17:25 .
scenarios 18:23 .
scent 8:4 .
scheduling 41:25 .
scope 26:17, 34:5, 70:1 .

screening 29:1, 44:6, 44:13,
    44:16, 44:18, 45:3, 59:22,
    60:7, 60:8, 60:11, 69:7,
    69:10 .
seated 2:3, 40:14 .
Second 3:11, 9:8, 22:5, 29:19,
    36:18, 37:4, 60:18 .
Secretary 16:18 .
Section 12:6, 27:14, 47:5, 51:24,
    52:11 .
sections 47:16 .
Security 2:19, 16:19, 38:13,
    46:1 .
seeing 23:13, 24:19, 28:23,
    31:7 .
seek 2:23, 25:4 .
seeking 3:23 .
seeks 6:4 .
seem 14:8 .
seems 17:6, 19:2, 21:18, 23:21,
    37:5, 57:7, 61:22, 62:1,
    65:13 .
seen 24:14, 25:12, 29:4, 31:17,
    35:3, 52:14, 67:17 .
segues 32:13 .
self-defeating 36:19 .
senior 2:20, 32:10 .
sense 7:11, 10:10, 14:6, 20:14,
    22:4, 34:7, 54:11, 55:15, 59:9,
    64:12, 64:13, 68:11 .
separate 20:4, 38:4, 48:10,
    71:7 .
separately 50:12 .
separation 10:4, 35:16, 38:1 .
separation-of-powers
    20:15 .
seriously 63:23 .
set 12:19, 16:13 .
settle 35:14, 35:18 .
seven 64:4 .
Seventh 6:13, 8:22, 9:3, 9:13,
    9:16, 9:21, 10:1, 10:20,
    29:24 .
several 42:18, 46:7, 70:8 .
severely 48:5 .
sexual 39:21 .
shadow 25:22 .
shaky 48:6, 48:7 .
shall 47:24, 52:12 .
share 58:25 .

Sheldon 30:10, 31:23 .
shielded 4:2 .
shift 34:11 .
Shoop 67:6 .
short 4:10, 52:17 .
show 37:14 .
showing 69:18 .
shows 54:12 .
side 25:12, 37:7, 42:13, 55:5,
    67:22 .
sides 71:12 .
similar 7:21, 35:22 .
simplifying 23:11 .
simply 30:8, 34:24, 37:11, 37:18,
    41:16, 54:14, 58:18 .
single 24:24, 26:13, 27:22, 31:13,
    46:15, 48:3 .
sit 65:16 .
site 47:4 .
sitting 15:18 .
situation 16:15, 20:21, 27:22,
    30:6, 35:6, 35:21, 39:3, 52:1,
    59:4, 64:11, 64:12, 65:15,
    67:8, 68:25 .
situations 12:10 .
six 32:2 .
skepticism 22:14 .
slash 58:8 .
slight 55:5 .
small 64:17 .
so-called 25:22 .
solve 15:12, 15:14 .
somebody 54:19, 64:8 .
somehow 19:10, 54:17,
    65:8 .
someone 46:17, 50:12 .
sometimes 61:18, 66:12 .
sorry 28:11 .
sorts 33:23, 35:2 .
sought 11:7, 29:23 .
sovereign 4:2, 6:25, 19:8, 19:12,
    26:14, 32:7, 32:18, 33:6,
    33:14 .
spades 15:18, 21:17 .
special 3:7, 21:16, 21:17,
    63:15 .
specific 25:11, 34:22, 45:15,
    47:20, 50:9, 51:9, 51:24, 66:3,
    66:16, 68:17, 68:22,
    70:23 .

Specifically 3:5, 3:25, 5:3 .
specify 48:21 .
specter 48:9 .
spend 4:21, 53:15 .
spendthrift 56:17 .
spent 25:8 .
spoke 51:4 .
sponte 7:15 .
stage 36:2 .
stages 17:6 .
stake 26:12, 71:16 .
stand 25:21, 26:24 .
standard 37:14 .
stands 40:11, 68:12, 72:2 .
Star 11:18 .
Start 6:16, 8:8, 22:14, 22:20, 48:6,
    48:7, 66:3 .
started 32:15 .
Starting 5:25 .
State 4:5, 6:1, 7:22, 8:2, 8:3, 8:7,
    12:5, 12:11, 12:25, 19:1,
    33:14 .
stated 5:23, 24:11 .
statement 45:24 .
status 3:1, 56:9, 57:17,
    66:17 .
status. 49:18 .
statute 13:2, 46:25, 48:11,
    51:9 .
statutes 33:2, 33:3, 33:7 .
statutory 3:12, 4:6, 38:13,
    38:14 .
stay 24:22, 25:4, 25:13, 42:14,
    42:17, 43:1, 43:5, 43:18,
    43:21, 43:23, 44:2, 44:5, 44:9,
    55:22, 56:13, 56:16, 57:1,
    57:8, 57:13, 58:17, 58:19,
    60:12, 61:20, 68:25, 69:2,
    69:12 .
stayed 56:5 .
stays 42:18, 42:21, 43:19, 44:12,
    44:20, 55:1, 57:15 .
stenographically-reported
    72:12 .
stenotype 1:50 .
step 20:6, 20:11, 20:23, 33:17,
    72:1 .
steps 20:16 .
Stern 6:17, 22:16, 29:6, 29:13,
    30:10, 31:6, 32:4, 33:25 .

stop 56:2 .
stopped 49:25 .
stopping 64:7 .
strange 39:7 .
Street 1:35, 1:46 .
Strickland 23:9, 34:18, 34:24,
    39:16, 39:22 .
strike 46:19 .
strips 47:5 .
strong 25:17 .
strongly 64:19 .
stuff 64:4 .
styled 37:20 .
stymie 50:23 .
sua 7:15 .
subject 16:16, 16:17, 47:24,
    55:25 .
submission 42:13 .
submitted 5:2, 51:14 .
subsection 52:9 .
subsequent 50:9 .
subsidiary 58:14 .
substantial 33:16 .
substantive 38:4, 52:18, 53:3,
    53:8, 71:7 .
substantively 53:2 .
succeed 41:15, 69:18 .
success 3:10, 4:11, 41:5,
    67:4 .
successful 26:22 .
sue 4:6, 18:7, 18:16, 18:21, 19:8,
    34:15, 34:22, 34:23, 37:24,
    37:25 .
sued 7:1, 23:2, 32:17, 34:18 .
sues 33:14 .
suffer 41:6 .
sufficient 42:3, 46:2, 46:19 .
suggest 60:15 .
suggested 61:12 .
suggestion 27:19, 48:13,
    51:19 .
suggests 12:18, 37:19,
    54:17 .
suing 11:23, 15:2, 18:18, 19:25,
    20:1, 20:2, 34:12, 34:14, 38:2,
    38:3, 38:11, 38:20 .
suit 2:19, 4:2, 6:4, 6:7, 6:9, 8:2,
    8:6, 14:24, 14:25, 15:9, 15:10,
    15:19, 16:22, 17:5, 18:22,
    19:5, 19:10, 19:13, 19:17,

19:20, 20:4, 21:12, 29:16,
    33:15, 33:20, 38:24,
    57:1 .
suits 8:9, 18:1, 18:3, 20:6, 33:23,
    35:3 .
summarize 2:16 .
super 47:12 .
supplement 5:6 .
supplements 22:16 .
support 5:1, 5:2, 49:24 .
suppose 10:14, 65:5 .
supposed 43:14, 49:9,
    53:21 .
Supreme 13:6, 14:1, 15:5, 19:6,
    20:12, 22:24, 23:1, 25:5,
    25:21, 25:24, 35:1, 37:17,
    38:23, 41:2, 41:18, 42:4,
    54:18, 54:20, 60:16, 67:11,
    67:21, 68:20, 69:3, 69:17,
    70:25 .
suspend 43:1 .

.

< T >.

T. 1:23, 1:27 .
table 34:25 .
tailored 49:5 .
talked 33:25 .
talks 12:22, 30:4, 37:4, 50:7 .
teed 64:14 .
teleconference 66:10 .
temporarily 42:23, 50:17 .
temporary 54:5, 57:11,
    57:17 .
tentative 4:21 .
terminology 68:9 .
terms 2:17, 16:10, 21:7, 26:1,
    65:19, 68:1, 69:4, 71:11 .
territorial 59:14 .
test 53:21, 58:13, 60:14 .
tests 59:16 .
Texas 55:13 .
text 12:25 .
themselves 5:3, 37:1, 48:21 .
theory 9:9, 15:8, 20:12, 44:1,
    44:2 .
thereafter 52:13 .
thereof 42:14 .
they've 19:2, 61:7 .
thinking 12:16, 21:6 .

thinks 10:15, 13:22 .
Third 3:15, 37:18, 50:25, 52:21,
    61:25 .
THOMAS 1:23 .
though 9:25, 38:19, 42:2, 43:18,
    60:9 .
thoughts 66:1 .
Three 28:2, 28:5, 47:20, 53:13,
    71:7 .
threshold 5:20, 6:25, 7:13, 9:19,
    18:24, 25:14, 26:9, 26:19,
    28:6, 28:25, 36:2, 37:5, 39:10,
    63:6 .
thwart 3:4 .
tie 9:21 .
ties 45:8, 51:12 .
till 70:7 .
Title 46:7, 46:12, 47:2 .
today 2:16, 4:16, 5:10,
    71:12 .
together 39:14 .
took 29:22 .
touch 50:24 .
tough 19:14, 19:19 .
tracks 56:2 .
tradition 15:22, 18:1 .
traditional 16:8, 21:8, 53:20 .
traditionally 39:5 .
TRANSCRIPT 1:21, 72:12,
    72:13 .
transcription 1:50 .
transgresses 69:21 .
traveled 16:6 .
treated 17:7 .
trial 16:13 .
tried 21:3 .
tries 58:15 .
triggered 27:20, 48:15 .
trimmed 62:24 .
TRO 26:2, 42:10, 42:14, 42:24,
    45:14, 45:21, 53:22, 54:8,
    54:10, 54:13, 57:21 .
Tros 25:25, 42:6 .
true 10:10, 11:18, 15:18, 59:23,
    61:9, 72:11 .
Trump 13:13, 14:1, 14:6,
    25:22 .
trust 56:18 .
try 18:7, 18:16, 58:8, 64:23,
    71:13 .

trying 36:24, 51:18 .
Ttc-25-cv-2029 2:7 .
Tuesday 70:7 .
turn 18:25 .
Turning 40:14 .
turns 15:22 .
twice 44:20 .
two 2:24, 3:25, 6:11, 6:24, 9:4,
    23:20, 25:7, 29:21, 41:10,
    47:16, 50:6, 54:8, 56:1, 59:21,
    62:25 .
twofold 60:21 .
Twyford 67:6 .
type 3:9, 19:13, 21:15, 36:3 .
types 70:13 .

.

< U >.

U.S. 2:20, 7:23, 8:9, 8:10, 19:9,
    22:24, 31:12, 31:23, 32:11,
    41:2, 41:18, 42:3, 50:14,
    67:11, 67:20, 68:20, 69:17,
    70:25 .
ultimately 9:6, 36:18, 62:17, 64:2,
    71:16 .
ultra 3:11 .
unable 50:18 .
uncomfortable 15:11 .
undergirding 12:2 .
underlying 56:4 .
underscore 14:8 .
understand 6:23, 7:3, 53:18, 62:2,
    66:7, 66:11, 71:14, 71:16 .
understanding 19:15, 50:11, 66:7,
    66:9, 66:13 .
understood 18:11 .
undertake 24:2 .
unfortunately 59:13 .
unilaterally 20:13, 20:17,
    59:2 .
unique 24:15, 29:3, 33:25, 35:14,
    35:21, 71:1 .
uniquely 59:12 .
universal 14:7 .
universe 64:17 .
unlawful 3:6 .
unlike 59:1 .
unlikely 41:15 .
unprecedented 22:17, 31:16,
    34:20 .

**untenable** 26:13 .
**until** 40:13, 43:20, 47:12,
     70:5 .
**urge** 10:22, 53:7 .
**urging** 14:2 .
**uses** 49:17 .
     .
     .
**< V > .**
**v.** 14:6, 67:6 .
**VA** 1:47 .
**vague** 14:7 .
**valid** 26:18, 27:9, 62:3,
     64:22 .
**validity** 27:6, 46:3, 46:22, 49:9,
     53:4 .
**variety** 55:11 .
**various** 15:15, 55:2, 60:22 .
**varsity** 55:14 .
**versa** 16:18 .
**version** 52:16 .
**versus** 2:6, 7:8, 12:8, 18:1, 18:2,
     18:4, 43:9, 48:22, 65:19,
     67:24 .
**vexing** 64:7 .
**vice** 16:18 .
**vindicate** 18:8, 33:6 .
**violate** 40:21, 41:1 .
**violated** 3:16 .
**violating** 65:10 .
**violation.** 38:1 .
**vires** 3:11 .
**vs** 1:8, 22:25, 24:6, 25:22, 25:23,
     32:16, 38:21, 51:3 .
     .
     .
**< W > .**
**wait** 18:18, 18:19 .
**walk** 49:18, 53:21 .
**walked** 6:2 .
**walking** 53:20, 55:9, 60:13 .
**walks** 52:23 .
**wanted** 61:1, 66:11, 70:23 .
**wants** 10:25 .
**Washington** 1:31, 1:36 .
**ways** 9:4, 15:24, 18:9, 68:17,
     71:7 .
**weak** 37:5 .
**week** 44:20, 50:12, 66:19 .
**weigh** 71:4 .

**WELCH** 1:28 .
**well-established** 3:16, 38:6,
     39:19 .
**well-intended** 54:6 .
**well-represented** 37:11 .
**whatever** 11:18, 14:17,
     71:20 .
**whatsoever** 59:23 .
**whenever** 27:2 .
**whether** 13:22, 24:21, 25:1, 26:9,
     26:18, 27:4, 28:18, 28:19,
     34:9, 39:10, 41:6, 41:7, 41:8,
     42:11, 42:13, 47:21, 54:3,
     54:4, 54:15, 54:24, 56:25,
     57:8, 57:19, 60:11, 61:11,
     61:18, 63:5, 65:12,
     67:16 .
**White** 16:20 .
**Whitehouse** 6:17, 22:16, 29:6,
     29:8, 30:11, 31:6, 31:23 .
**Whole** 22:25, 39:20, 51:15, 54:23,
     55:11, 56:20, 60:23 .
**will** 4:17, 37:8, 37:14, 60:22,
     70:17, 71:20 .
**win** 45:9 .
**winning** 27:5, 45:6 .
**Winter** 41:3, 45:12, 67:3 .
**Without** 3:8, 24:21, 28:25, 46:11,
     51:16, 52:11, 53:20, 55:9,
     56:9, 60:13, 61:14, 66:8 .
**witnesses** 5:8, 7:24 .
**Woman** 22:25 .
**won** 25:25 .
**Wood** 8:23 .
**word** 22:1, 27:12, 27:14, 35:9,
     47:17, 48:15, 66:23, 68:10,
     71:20 .
**words** 15:21, 52:25, 59:11 .
**work** 44:2 .
**working** 64:13, 71:17 .
**works** 60:17 .
**world** 30:7, 43:22, 56:14 .
**worry** 57:23 .
**wrestle** 11:5, 11:13 .
**wrestled** 11:9 .
**Writ** 3:2, 24:1, 59:6, 59:14 .
**Writs** 19:4, 32:23, 47:2, 67:5, 67:7,
     67:9 .
**wrongly** 67:16 .
**WYNOSKY** 1:44 .

     .
**< Y > .**
**years** 22:18, 32:16 .
**York** 18:19 .
**You-all** 2:3, 14:16, 19:15, 22:15,
     32:23, 72:1 .
     .
**< Z > .**
**ZACHARY** 1:33 .
**zero** 41:10 .
**Zingsheim** 8:22, 9:7, 10:19,
     29:19, 29:20, 30:4, 30:8 .
**zipper** 46:20 .
**zoom** 47:11, 69:1 .